IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF IOWA, EASTERN DIVISION

| | |
|---|---|
| CTM HOLDINGS, LLC, an Iowa limited liability company,<br><br>　　　　*Plaintiff,*<br><br>vs.<br><br>THE UNITED STATES DEPARTMENT OF AGRICULTURE; THOMAS J. VILSACK, in his official capacity as the Secretary of the United States Department of Agriculture; THE NATURAL RESOURCES CONSERVATION SERVICE; TERRY COSBY, in his official capacity as Chief of the Natural Resources Conservation Service; and JON HUBBERT, in his official capacity as Iowa State Conservationist,<br><br>　　　　*Defendants.* | CIVIL NO._____<br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; SUMMONS** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. This is a challenge to a federal law that requires farmers to forfeit all uses of a portion of their property to receive federal agricultural benefits. Under the "Swampbuster" statute, farmers must obtain a wetlands determination for their farmland to determine whether they are eligible for U.S. Department of Agriculture ("USDA") farming benefits, such as loans, payments, and insurance. If the government designates any part of a farmer's land as a wetland, it effectively obtains a conservation easement over that portion of the property. *Cf.* Iowa Code §457A.2 (defining conservation easement as "an easement in, servitude upon, restriction upon the use of, or other interest in land owned by another created for any of the purposes set forth in section 457.1); *id.* § 457A.1 (listing, *inter alia*, purposes of conservation easements "to preserve … riparian land [and] wetlands[,]"). If the farmer develops, drains, dredges, fills, or farms the wetland, the farmer will lose USDA benefits—not only for the property in question, but also potentially for *all* farmland owned by that farmer. In this way, the USDA conditions federal benefits on the relinquishment of farmland for conservation easements—without providing just compensation for the

2

taking. It will continue to do so unless and until a court orders them to stop.

2.  Plaintiff CTM Holdings, LLC ("CTM") is a family-owned company, whose managing member was raised in Iowa. CTM owns a 71.85 acre parcel of farmland in Delaware County, Iowa, that the USDA has deemed to contain nine acres of "wetland." To obtain any USDA benefits, CTM must treat those nine acres as a conservation easement that cannot be used for farming or anything else. If CTM uses those nine acres, then it will lose all USDA benefits for all of its farmland, including other properties owned by CTM and CTM's principals.

3.  By forcing a USDA benefit recipient to effectively give the government a conservation easement over sections of its property for a public purpose—which would otherwise be a *per se* physical taking entitling the owner to just compensation—the USDA imposes an unconstitutional condition on those benefits. In addition, the USDA's rule defining a wetland conversion to include the removal of woody vegetation and the rule defining when a redetermination can be requested exceeds the agency's statutory authority. Plaintiff seeks declaratory and injunctive relief, as well as an order holding unlawful

3

and setting aside the applicable USDA regulations, to prevent the USDA from unlawfully constraining the use of farmland in this way.

## JURISDICTION AND VENUE

4.  Plaintiffs seek declaratory (28 U.S.C. § 2201) and injunctive relief (28 U.S.C. § 2202) against federal "Swampbuster" statutes, 16 U.S.C. §§ 3801, 3821-3824, under 42 U.S.C. § 1983, on the basis that they impose unconstitutional conditions.

5.  Plaintiff is also seeking to hold unlawful and set aside two USDA administrative rules (5 U.S.C. § 706) that define actions that constitute a conversion of wetland (7 C.F.R. § 12.2(a)) and define when a redetermination can be requested (7 C.F.R. § 12.30(c)(6)) because they exceed the agency's statutory authority. Plaintiff also seeks to hold unlawful and set aside the final agency action determining that Plaintiff's property contains 9 acres of wetland. The federal government has waived sovereign immunity to this action under 5 U.S.C. § 702.

6.  This Court has jurisdiction over these federal claims under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) (redress for deprivation of civil rights), and 5 U.S.C. § 702 (judicial review of agency action – rulemaking).

4

7. Venue lies in this Court under 28 U.S.C. § 1391(b)(2) and (e)(1) because the Property is located in this judicial district; the actions complained of took place in this judicial district; documents and records relevant to the allegations are maintained in this judicial district; and the Defendants are present in and regularly conduct affairs in this judicial district.

## PARTIES

8. Plaintiff CTM is an Iowa limited liability company. CTM is a manager-managed limited liability company. The principal and managing member of CTM owns, through CTM and another affiliate entity, approximately 1,075 acres of Iowa farmland.

9. Defendant United States Department of Agriculture ("USDA") is a cabinet-level agency of the United States government and is responsible for administering 16 U.S.C. §§ 3821-3822.

10. Defendant Thomas J. Vilsack is the Secretary of the USDA and is sued in his official capacity only.

11. Defendant Natural Resources Conservation Service ("NRCS") is a component agency of Defendant USDA. Administration of 16 U.S.C. §§ 3821-3822 is delegated from the USDA to NRCS.

5

12.     Defendant Terry Cosby is the Chief of NRCS and is sued in his official capacity only.

13.     Defendant Jon Hubbert is the Iowa State Conservationist for Defendant NRCS and is sued in his official capacity only.

## FACTS

### The Swampbuster Act

14.     In 1985, Congress passed the Food Security Act, a comprehensive framework to administer agriculture and food programs. Within the Food Security Act, and tied to the agricultural programs, Congress established a conservation program titled the Erodible Land and Wetland Conservation and Reserve Program, 16 U.S.C. § 3801, et seq., the conservation and reserve components of which are referred to as "Sodbuster" and "Swampbuster," respectively. The stated purpose of Sodbuster and Swampbuster is to conserve and preserve highly erodible land and wetlands to protect natural resources for a public purpose,[1] to

_____

[1] https://www.fsa.usda.gov/programs-and-services/environmental-cultural-resource/water-resources/wetlands/index, *last visited* March 16, 2024.

"[a]ssist in preserving the values, acreage, and functions of the Nation's wetlands."[2]

15.     To achieve its conservation aims, Swampbuster bars producers who convert wetlands to cropland from receiving USDA benefits.

16.     Swampbuster imposes compulsory conservation: it conditions USDA agricultural benefits on a farmer keeping "wetlands" in conservation, with no payment of rent to the farmer. 16 U.S.C. §§ 3801, 3821-3824.

17.     Conversely, Sodbuster is a voluntary program that pays farmers market rent to keep their "highly erodible land" acreage in conservation. 16 U.S.C. §§ 3801, 3811-3814.

18.     Swampbuster prohibits recipients of USDA agricultural benefits from converting "wetlands" into tillable land to be used for agricultural purposes. 16 U.S.C. §§ 3821-3822. Under Swampbuster, a "wetland" is defined as land that combines wetland hydrology, hydric

---

[2] https://www.nrcs.usda.gov/getting-assistance/financial-help/conservation-compliance, *last visited* March 22, 2024.

soils, and the ordinary production of plants that grow well in wet conditions. 16 U.S.C. § 3801(a)(27), *id*. § 3801(a)(12), (13).

19. Producers seeking any U.S. Department of Agriculture benefits must submit a completed AD-1026 form to certify compliance with the highly erodible land (Sodbuster) and wetland (Swampbuster) conservation provisions as a condition of eligibility for certain USDA programs. 7 C.F.R. § 12.7.

20. After submission of an AD-1026 form, the USDA, through the local Natural Resource Conservation Service ("NRCS") office, conducts a site inspection to determine and delineate the presence of a wetland in a person's farm field through a formal process called a "certification." 16 U.S.C. § 3822(a)(1)-(3). Final certifications "remain valid and in effect as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification by the Secretary" of the USDA. *Id*. at (a)(4).

21. If farmland is used for crop production and no wetland conversions occur, then a wetland certification remains effective in perpetuity. This is because the administrative rules limit review of a prior certification. "A person may request review of a certification only

if a natural event alters the topography or hydrology of the subject land to the extent that the final certification is no longer a reliable indication of site conditions, or if NRCS concurs with an affected person that an error exists in the current wetland determination." 7 C.F.R. § 12.30(c)(6).

22. Once an area of a farmer's property has been designated a "wetland," it cannot be "drained, dredged, filled, leveled, or otherwise manipulated (including any activity that results in impairing or reducing the flow, circulation, or reach of water)…." 16 U.S.C. § 3801(a)(7)(A).

23. Through an administrative rule, the USDA has added another prohibition, by defining a converted wetland as one "that has been drained, dredged, filled, leveled, or otherwise manipulated (including *the removal of woody vegetation* or any activity that results in impairing or reducing the flow and circulation of water) . . . ." 7 C.F.R. § 12.2(a) (emphasis added).

24. If the wetlands are converted (drained, dredged, filled, or otherwise manipulated), whether an agricultural commodity is subsequently produced or not, then all affiliated people lose USDA

9

agricultural benefits. 16 U.S.C. § 3823. Ineligibility disqualifies a person from a wide variety of federally authorized agricultural benefit programs, including USDA loans, payment programs, and crop insurance assistance. 16 U.S.C. § 3821.

25. "[A]ny person who in any crop year produces an agricultural commodity on converted wetland, . . . , shall be (1) in violation of this section; and (2) ineligible for loans or payments in an amount determined by the Secretary to be proportionate to the severity of the violation." 16 U.S.C. § 3821(a).

26. "If a person is determined to have committed a violation under subsection (a) during a crop year, the Secretary shall determine which of, and the amount of, the following loans and payments for which the person shall be ineligible . . . ." 16 U.S.C. § 3821(b).

27. This includes "Contract payments under a production flexibility contract, marketing assistance loans, and any type of price support or payment made available under the Agricultural Market Transition Action, the Commodity Credit Corporation Charter Act[], or any other Act." 16 U.S.C. § 3821(b)(1).

28. It also includes "[a] loan made or guaranteed under the Consolidated Farm and Rural Development Act [] or any other provision of law administered by the Consolidated Farm Service Agency, if the Secretary determines that the proceeds of the loan will be used for a purpose that will contribute to conversion of a wetland . . . to produce an agricultural commodity." 16 U.S.C. § 3821(b)(2).

29. It also includes ineligibility from payments made pursuant to "a contract entered into under the environmental quality incentives program," "any other provision of subtitle D," "section 401 or 402 of the Agricultural Credit Act of 1978," and "section 3 or 8 of the Watershed Protection and Flood Prevention Act." 16 U.S.C. § 3821(b)(3)(A)-(D).

30. "If a person is determined to have committed a violation under subsection (a) or (d) during a crop year, the person shall be ineligible to receive any payment of any portion of premium paid by the Federal Crop Insurance Corporation for a plan or policy of insurance under the Federal Crop Insurance Act . . . ." 16 U.S.C. § 3821(c)(1)(A).

31. In summary, failure to comply will render a person ineligible for "any price-support loans, purchase, and payments; farm storage facility loans; Federal crop insurance; disaster payments; new loans

made, insured, or guaranteed by Farmers Home Administration ("FmHA") if the loan would contribute to wetlands conversion; or payments for the storage of CCC-owned commodities."[3]

32.     This ineligibility for benefits is not limited to a single person, entity, or property: "Ineligibility of an individual or entity under this part for benefits shall also be an ineligibility for benefits for 'affiliated persons.'" 7 C.F.R. § 12.8(a). "If a person is affected by a reduction in benefits under [] [16 U.S.C. § 3821] and the affected person is affiliated with other persons for the purpose of receiving the benefits, the benefits of each affiliated person shall be reduced under [] [16 U.S.C. § 3821] in proportion to the interest held by the affiliated person." 16 U.S.C. § 3823.

33.     Affiliated persons of an individual include: a spouse, minor child, guardian of minor child; a partnership, joint venture, or enterprise in which the person has an ownership interest or financial interest; and any trust in which the individual, business, or person is a beneficiary or has a financial interest. 7 C.F.R. § 12.8(b)(1)-(3).

---

[3] Provisions of the Food Security Act of 1985, Agriculture Information Bulletin No. 498, p.46-47, *available at* https://www.ers.usda.gov/webdocs/publications/41995/15133_aib498_1_.pdf?v=8775.4, *last visited* March 16, 2024.

34. Affiliated persons of an entity are any participants or stockholders of the corporation, partnership, or other joint venture. 7 C.F.R. § 12.8(c).

## The Plaintiff

35. The managing member of Plaintiff CTM Holdings, LLC, was raised in Iowa. He comes from a line of farmers. His father was a farmer, and his grandfather was a farmer. Once he was financially able to do so, he purchased his grandparents' farm in 1990.

36. Since the purchase of his grandparents' farm, CTM's managing member has gone on to acquire approximately 1,075 acres of Iowa farmland. CTM owns land in Delaware, Benton, Linn, and Johnson counties in Iowa. CTM's principal and managing member, through another affiliate entity, owns farmland in Linn, Jackson, and Dubuque counties in Iowa. Between CTM and affiliated entities, CTM's managing member owns approximately 1,075 acres of Iowa farmland.

## The Property

37. On September 30, 2022, CTM purchased three contiguous parcels (Nos. 480-403300, 480-403400, and 480-403410) consisting of

71.85 acres of farmland located at Corner of 217th Street and 1st Street in Delaware, Iowa ("Property"). Of the 71.85 acres, approximately 39.83 acres were tilled and being used for agriculture; 10.4 acres were designated as erodible land and in the Conservation Reserve Program ("CRP") by the prior owner; and 21.62 acres were forested, of which the USDA had previously designated 9 acres as "wetland".

38.     The USDA pays for the 10.4 acres of CRP land to be conserved as "highly erodible land" through a 10-year program under the Sodbuster legislation. Under the CRP program, owners of highly erodible land bid offers for the price they would accept from the government to take the land out of production. If the government accepts, it effectively rents the land to keep the owner from tilling it. The program allows the farmer to plant grass and trim the CRP area. It also gives the landowner the option to enter into the CRP program and then compensates for use of the land as a conservation easement. The 10.4 acres were entered into the CRP program by the prior owner in 2015 and expire on September 30, 2024.

39.     The 21.62 acres of forest are in five separate areas spread over the Property. The 21.62 acres of forest is arable land that consists

of trees and overgrowth. The 21.62 acres of forest does not contain any standing water, is not visibly wet, is not connected to any water body, and is not permanently or seasonally saturated or inundated by water at any time of the year. The forested acreage contains the same crop high quality suitability rating of 84/85 as the rest of the Property.

40. The following image shows a portion of CTM's tillable acreage in the foreground, with a portion designated wetland in the background, on the lefthand side:



41.     The following image depicts a closer view of the prior photo and shows CTM's Property with tillable acreage in the foreground, trees cut down from forested acreage designated as "nonwetland", with the area designated as "wetland" in the background encircling the "nonwetland".



42.     The following image depicts an even closer view of the prior image and provides an indication of the soil dryness in previously

forested area designated as "nonwetland" directly next to and encircled by the "wetland" forested area.



43.     CTM rents the 39.83 tillable acres to a tenant. Every spring the tenant plants either feed corn or soybeans and harvests the crops in the fall.

## Wetland Determination

44.     On October 14, 2022, CTM submitted to the USDA office a completed form AD-1026 requesting USDA benefits eligibility for CTM's

newly acquired Property and requesting a redetermination of the prior wetlands determination that was completed before CTM's ownership of the Property.

45.     On January 23, 2023, the NRCS field office issued a letter to CTM providing a "Wetland Preliminary Technical Determination" for the Property identified as Tract 360, and Farm Service Agency ("FSA") Farm number 5822 ("Wetland Determination"). The Wetland Determination informed CTM that a Certified Wetland Determination had already been completed on April 16, 2010 for a prior owner under a different FSA Farm Number. The NRCS also informed CTM that the 2010 wetlands determination stands, so the request for a new determination was denied, with no right to appeal. It confirmed the 2010 determination that, of the 21.62 acres of forested land, 12.62 acres are nonwetlands and 9 acres are wetland. The Wetland Determination did not provide a scientific basis or evidence for determining that the 9 acres meet the definition of "wetland".

46.     The 9 acres of "wetland" are indistinguishable from the rest of the 12.62 acres of nonwetlands. The 9 acres of "wetland" do not contain standing water and are not visibly wet. The Property contains a

small seasonal stream that runs through one portion of the nonwetlands, and the stream is not designated as "wetlands". All the "wetlands" units on the Property are at least 1,000 feet away from the small seasonal stream and are not connected to any water body.

## Injury to Plaintiffs

47.　　The Swampbuster statutes and regulations force Plaintiff to choose between keeping 9 acres of land out of crop production in order to keep USDA benefits, and using the 9 acres for crop production and forfeit the ability to receive all USDA benefits.

48.　　If the 9 acres were drained, dredged, farmed, or otherwise developed then for just this Property: (1) CTM would lose the remaining CRP payments on the highly erodible land; (2) the USDA could demand a refund of the CRP payments from the prior eight years; (3) the Property's tenant would lose its crop insurance subsidy.

49.　　If the 9 acres of "wetland" were converted, then the Plaintiff could also be disqualified from all USDA programs for all 1,075 acres of farmland that Plaintiff and its managing member own.

50.　　Ineligibility from USDA benefits and programs would also affect all the tenants on the 1,075 acres of farmland. CTM, its managing

member, and the tenants of the 1,075 acres of affiliated farmland participate in a number of USDA benefits programs, including crop insurance subsidy, farm loans, cost sharing on conservation practices, disaster relief, and CRP payments.

51.     Growing season in Iowa usually begins around mid-April. If Defendants are not enjoined from enforcing the Swampbuster statutes and regulations, then Plaintiff will be unable to plant its crop on the 9 acres, will miss the window of time to plant for this year's crop season, and will therefore lose any profits from crops that could have been grown on the 9 acres.

52.     Plaintiff cannot remove the trees from the wetlands because of the administrative rule prohibiting removal of woody vegetation.

53.     Despite the environmental condition of the 9 acres indicating that they are not "wetlands," Plaintiff cannot appeal this decision, nor can Plaintiff request a determination because of the administrative rule prohibiting redeterminations.

54.     Financially, Plaintiff has no choice but to give up all uses of the 9 acres in order to retain the USDA benefits for itself and its tenants for all 1,075 acres.

# CLAIMS

## Claim I
## Violation of Commerce Clause

55. Plaintiff incorporates the preceding paragraphs as if fully set forth below.

56. Courts hold unlawful and set aside agency action when it is "contrary to constitutional right, power, privilege, or immunity[.]" 5 U.S.C. § 706(2)(B).

57. The Constitution grants Congress the power to "[t]o regulate commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.

58. Congress's commerce power is limited to regulating the channels of interstate commerce, the instrumentalities of interstate commerce and goods in interstate commerce, and intrastate activity that has a substantial effect on interstate commerce. *United States v. Lopez*, 514 U.S. 549 (1995).

59. Swampbuster regulates all wetlands, regardless of how isolated they are from navigable waterways. 16 U.S.C. § 3801(a)(27).

60.     Intrastate wetlands are not instrumentalities or goods in interstate commerce and they have no substantial effect on interstate commerce.

61.     The purported wetlands on CTM's property are not connected to any navigable waterways and are purely intrastate. The purported wetlands are not instrumentalities or goods in interstate commerce and they have no substantial effect on interstate commerce.

62.     Swampbuster, both on its face and as applied to Defendants' regulation of CTM's property, exceeds Congress's power under the Commerce Clause.

## Claim II
## Unconstitutional Condition- Commerce Clause

63.     Plaintiff incorporates the preceding paragraphs as if fully set forth below.

64.     The unconstitutional conditions doctrine prohibits the government from conditioning a government benefit on the waiver of a constitutional right. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013).

65.     To receive and maintain eligibility of all USDA benefits under Swampbuster, Plaintiff has been forced to keep the portion of its land determined to be "wetlands" out of production—that is, unused.

66.     Conservation of "wetlands" means leaving the area designated as "wetlands" in its natural state and forfeiting all its possible uses in perpetuity as long as the rest of the property is used for crop production.

67.     Under the Commerce Clause, USDA would not be able to directly regulate the purported wetlands on Plaintiff's property.

68.     The Constitution's structure "protects the liberty of all persons within a state by ensuring that laws enacted in excess of delegated governmental power cannot direct or control their actions." *Bond v. United States*, 564 U.S. 211, 222 (2011).

69.     Swampbuster requires Plaintiff and other producers to waive their rights under the Commerce Clause to receive a benefit.

70.     Thus, the USDA's actions under Swampbuster, both facially and as applied to CTM holdings, are contrary to constitutional right, power, privilege, or immunity.

## Claim III
## Unconstitutional Condition
## Fifth Amendment - Takings

71.     Plaintiff incorporates the preceding paragraphs as if fully set forth below.

72.     "No person shall…be deprived of life liberty, or property without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

73.     Swampbuster prohibits farmers from "convert[ing] a wetland by draining, dredging, filling, leveling, or any other means for the purpose, or to have the effect, of making the production of an agricultural commodity possible on such converted wetland…for that crop year and all subsequent crop years." 16 U.S.C. § 3821(c).

74.     A converted wetland is one "that has been drained, dredged, filled, leveled, or otherwise manipulated (including any activity that results in impairing or reducing the flow, circulation, or reach of water) for the purpose or to have the effect of making the production of an agricultural commodity possible…." 16 U.S.C. § 3801(a)(7)(A).

75.     Any person who "produces an agricultural commodity on converted wetland," becomes ineligible for USDA backed benefits such

as crop insurance, price supports, and government-sponsored loans. 16 U.S.C. § 3821(a).

76. A wetlands determination by the USDA/NRCS that any portion of farmland is "wetlands" remains in effect in perpetuity, so long as the rest of the property is being used for crop production.

77. The area on the wetlands determination map that is determined to be "wetlands" is designated a conservation area, forfeits all available uses, and is to remain undeveloped.

78. The purpose of Swampbuster's conservation of wetlands is for a public purpose.

79. A wetland determination under Swampbuster effects an unconstitutional *per se* physical taking under the Fifth Amendment by appropriating without compensation a permanent conservation easement.

80. Under Swampbuster, Defendants do not provide just compensation for the conservation of private land, and forfeiture of all possible uses of, the portion of Plaintiff's land designated as "wetlands."

81.     Swampbuster thus conditions Plaintiff's receipt of USDA benefits on its waiver of the Fifth Amendment right to receive just compensation for the government's taking of private property.

82.     The imposition of the unconstitutional condition on Plaintiff's receipt of USDA benefits violates Plaintiff's rights under the Takings Clause of the Fifth Amendment.

83.     Thus, the USDA's actions under Swampbuster, both facially and as applied to CTM holdings, are contrary to constitutional right, power, privilege, or immunity.

## Claim IV
## Agency Action in Excess of Statutory Authority

84.     Plaintiff incorporates the preceding paragraphs as if fully set forth below.

85.     Courts hold unlawful and set aside agency action when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right". 5 U.S.C. § 706(2)(A) and (C).

86.     The Swampbuster statute defines a "converted wetland" as one "that has been drained, dredged, filled, leveled, or otherwise

manipulated (including any activity that results in impairing or reducing the flow, circulation, or reach of water) . . . ." 16 U.S.C. § 3801(a)(7)(A).

87.     The agency's rules, however, define a converted wetland as one "that has been drained, dredged, filled, leveled, or otherwise manipulated (including *the removal of woody vegetation* or any activity that results in impairing or reducing the flow and circulation of water)…." 7 C.F.R. § 12.2(a) (emphasis added).

88.     The additional language in the rule—"the removal of woody vegetation"—that is not included in the statute is not in accordance with the law and exceeds statutory jurisdiction, authority, or limitations.

89.     Because of this administrative rule Plaintiff is unable to remove the trees from the 9 acres of "wetlands" without forgoing USDA benefits as set forth above.

## Claim V
## Agency Action in Excess of Statutory Authority

90.     Plaintiff incorporates the preceding paragraphs as if fully set forth below.

91.     Courts hold unlawful and set aside agency action when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A) and (C).

92.     The Swampbuster statute allows for a person affected by a final certification to request a redetermination: "A final certification made under paragraph (3) shall remain valid and in effect as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification by the Secretary." 16 U.S.C. § 3822(a)(4).

93.     However, the administrative rules only allow requests for review of a prior certification when a natural event changes the land or if the NRCS believes there is an error. "A person may request review of a certification only if a natural event alters the topography or hydrology of the subject land to the extent that the final certification is no longer a reliable indication of site conditions, or if NRCS concurs with an affected person that an error exists in the current wetland determination." 7 C.F.R. § 12.30(c)(6).

Case 6:24-cv-02016-CJW-MAR   Document 1   Filed 04/16/24   Page 28 of 31

94.     The administrative rule limiting review of a final certification to only circumstances where a natural event occurs or the NRCS agrees that an error has occurred in their own prior determination conflicts with the statute that broadly allows review when simply requested by an affected person.

95.     Despite the absence of "wetland" conditions on the 9 acres, the NRCS denied CTM's request, as the new owner of the Property, for redetermination of the 2010 certification, which was done under the prior owner, stating that there was no evidence of a natural event changing the land and that the NRCS did not believe the prior determination had any errors.

## REQUEST FOR RELIEF

Plaintiffs request the following relief:

A.     A judgment declaring that Swampbuster's (16 U.S.C. §§ 3801, 3821-3824) provisions are in excess of Congress's power to regulate interstate commerce.

B.     A judgment declaring that Swampbuster's (16 U.S.C. §§ 3801, 3821-3824) provisions demanding a perpetual conservation easement of "wetlands" as a condition of USDA benefits is an unconstitutional

condition, requiring Plaintiff and other producers to waive their constitutional rights under the Commerce Clause and the Takings Clause;

C.    A judgment holding unlawful and setting aside the provision of 7 C.F.R. § 12.2(a) defining "Converted wetland" as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

D.    A judgment holding unlawful and setting aside the provision of 7 C.F.R. § 12.30(c)(6) as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;;

E.    A judgment holding unlawful and setting aside Defendants' January 23, 2023 and April 16, 2010 wetlands determinations;

F.    A permanent injunction prohibiting Defendants from enforcing the provisions of Swampbuster against Plaintiff;

G.    In the alternative, a judgment compelling Defendants to accept Plaintiff's October 14, 2022 request for a wetlands redetermination;

H.    An award of Plaintiffs' reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

I.    Any further relief this Court deems just and proper.

Respectfully submitted this 16th day of March, 2024.

/s/ James V. F. Dickey
_____
James V.F. Dickey
Iowa AT Pin AT0014073
UPPER MIDWEST LAW CENTER
8421 Wayzata Boulevard
Suite 300
Golden Valley, MN
(612) 428-7000
James.Dickey@umwlc.org