IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| CTM HOLDINGS,LLC, an Iowa limited liability company, | ) ) ) | No. 24-CV-02016-CJW-MAR |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| THE UNITED STATES DEPARTMENT OF AGRICULTURE; THOMAS J. VILSACK, in his official capacity as the Secretary of the United States Department of Agriculture; THE NATURAL RESOURCES CONSERVATION SERVICE; TERRY COSBY, in his official capacity as Chief of the Natural Resources Conservation Service; and JON HUBBERT, in his official capacity as Iowa State Conservationist, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER AND DEFENSES

The United States Department of Agriculture ("USDA"), Thomas J. Vilsack, in his official capacity as the Secretary of the United States Department of Agriculture, The Natural Resources Conservation Service ("NRCS"), and Terry Cosby, in his official capacity as Chief of the Natural Resources Conservation Service, and Jon Hubbert, in his official capacity as Iowa State Conservationist (collectively, "Defendants"), through the undersigned counsel, respectfully file this Answer and Defenses to Plaintiff's Complaint.

**INTRODUCTION**

1.      This is a challenge to a federal law that requires farmers to forfeit all uses of a portion of their property to receive federal agricultural benefits. Under the "Swampbuster" statute, farmers must obtain a wetlands determination for their farmland to determine whether they are eligible for U.S. Department of Agriculture ("USDA") farming benefits, such as loans, payments, and insurance. If the government designates any part of a farmer's land as a wetland, it effectively obtains a conservation easement over that portion of the property. *Cf.* Iowa Code §457A.2 (defining conservation easement as "an easement in, servitude upon, restriction upon the use of, or other interest in land owned by another created for any of the purposes set forth in section 457.1); *id.* § 457A.1 (listing, *inter alia*, purposes of conservation easements "to preserve … riparian land [and] wetlands[,]"). If the farmer develops, drains, dredges, fills, or farms the wetland, the farmer will lose USDA benefits—not only for the property in question, but also potentially for *all* farmland owned by that farmer. In this way, the USDA conditions federal benefits on the relinquishment of farmland for conservation easements—without providing just compensation for the taking. It will continue to do so unless and until a court orders them to stop.

ANSWER:    Defendants admit that Plaintiff's case challenges a federal law. Defendants deny the remainder of Paragraph 1 and deny any violation of law.

2.      Plaintiff CTM Holdings, LLC ("CTM") is a family-owned company, whose managing member was raised in Iowa. CTM owns a 71.85 acre parcel of

2

farmland in Delaware County, Iowa, that the USDA has deemed to contain nine acres of "wetland." To obtain any USDA benefits, CTM must treat those nine acres as a conservation easement that cannot be used for farming or anything else. If CTM uses those nine acres, then it will lose all USDA benefits for all of its farmland, including other properties owned by CTM and CTM's principals.

<u>ANSWER</u>:    Defendants deny the allegations of the first sentence of Paragraph 2 as they lack knowledge or information sufficient to form a belief about their truth. Defendants admit the allegations of the second sentence of Paragraph 2 and deny the allegations of the third and fourth sentences of Paragraph 2.

3.    By forcing a USDA benefit recipient to effectively give the government a conservation easement over sections of its property for a public purpose—which would otherwise be a *per se* physical taking entitling the owner to just compensation—the USDA imposes an unconstitutional condition on those benefits. In addition, the USDA's rule defining a wetland conversion to include the removal of woody vegetation and the rule defining when a redetermination can be requested exceeds the agency's statutory authority. Plaintiff seeks declaratory and injunctive relief, as well as an order holding unlawful and setting aside the applicable USDA regulations, to prevent the USDA from unlawfully constraining the use of farmland in this way.

<u>ANSWER</u>:    Defendants admit only that Plaintiff seeks declaratory and injunctive relief and an order holding unlawful and setting aside the challenged USDA regulations. Defendants deny the remainder of Paragraph 3, including the

3

allegation that USDA unlawfully constrains the use of farmland and that Plaintiff is entitled to the relief sought.

## JURISDICTION AND VENUE

4.     Plaintiffs seek declaratory (28 U.S.C. § 2201) and injunctive relief (28 U.S.C. § 2202) against federal "Swampbuster" statutes, 16 U.S.C. §§ 3801, 3821-3824, under 42 U.S.C. § 1983, on the basis that they impose unconstitutional conditions.

ANSWER:    Defendants admit that Plaintiff seeks the relief specified in Paragraph 4 but deny that Plaintiff is entitled to the relief sought and all remaining allegations of Paragraph 4.

5.     Plaintiff is also seeking to hold unlawful and set aside two USDA administrative rules (5 U.S.C. § 706) that define actions that constitute a conversion of wetland (7 C.F.R. § 12.2(a)) and define when a redetermination can be requested (7 C.F.R. § 12.30(c)(6)) because they exceed the agency's statutory authority. Plaintiff also seeks to hold unlawful and set aside the final agency action determining that Plaintiff's property contains 9 acres of wetland. The federal government has waived sovereign immunity to this action under 5 U.S.C. § 702.

ANSWER:    Paragraph 5 appears to consist only of legal conclusions and characterizations of Plaintiff's case. To the extent a response is required, Defendants admit only that Plaintiff seeks the relief requested in the Complaint. Defendants deny that Plaintiff is entitled to any of the relief sought and deny all remaining allegations of Paragraph 5.

4

6. This Court has jurisdiction over these federal claims under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) (redress for deprivation of civil rights), and 5 U.S.C. § 702 (judicial review of agency action – rulemaking).

ANSWER: Defendants admit the allegations of Paragraph 6 regarding 28 U.S.C. § 1331 and § 1343(a)(3), but deny the remaining allegations.

7. Venue lies in this Court under 28 U.S.C. § 1391(b)(2) and (e)(1) because the Property is located in this judicial district; the actions complained of took place in this judicial district; documents and records relevant to the allegations are maintained in this judicial district; and the Defendants are present in and regularly conduct affairs in this judicial district.

ANSWER: Defendants admit the allegations of Paragraph 7.

## PARTIES

8. Plaintiff CTM is an Iowa limited liability company. CTM is a manager-managed limited liability company. The principal and managing member of CTM owns, through CTM and another affiliate entity, approximately 1,075 acres of Iowa farmland.

ANSWER: Defendants deny the allegations of Paragraph 8 due to a lack knowledge or information sufficient to form a belief about their truth.

9. Defendant United States Department of Agriculture ("USDA") is a cabinet-level agency of the United States government and is responsible for administering 16 U.S.C. §§ 3821-3822.

ANSWER: Defendants admit the allegations of Paragraph 9.

5

10. Defendant Thomas J. Vilsack is the Secretary of the USDA and is sued in his official capacity only.

ANSWER: Defendants admit the allegations of Paragraph 10.

11. Defendant Natural Resources Conservation Service ("NRCS") is a component agency of Defendant USDA. Administration of 16 U.S.C. §§ 3821-3822 is delegated from the USDA to NRCS.

ANSWER: Defendants admit that the Natural Resources Conservation Service ("NRCS") is a component agency of USDA. Defendants deny the allegations in the second sentence of Paragraph 11. Defendants further aver that the administration of 16 U.S.C. §§ 3821-3822 is delegated in part to NRCS, as set forth in 7 C.F.R. § 12.6.

12. Defendant Terry Cosby is the Chief of NRCS and is sued in his official capacity only.

ANSWER: Defendants admit the allegations of Paragraph 12.

13. Defendant Jon Hubbert is the Iowa State Conservationist for Defendant NRCS and is sued in his official capacity only.

ANSWER: Defendants admit the allegations of Paragraph 13.

## FACTS

### The Swampbuster Act

14. In 1985, Congress passed the Food Security Act, a comprehensive framework to administer agriculture and food programs. Within the Food Security Act, and tied to the agricultural programs, Congress established a conservation

6

program titled the Erodible Land and Wetland Conservation and Reserve Program, 16 U.S.C. § 3801, et seq., the conservation and reserve components of which are referred to as "Sodbuster" and "Swampbuster," respectively. The stated purpose of Sodbuster and Swampbuster is to conserve and preserve highly erodible land and wetlands to protect natural resources for a public purpose,[1] to "[a]ssist in preserving the values, acreage, and functions of the Nation's wetlands."[2]

ANSWER:   Defendants admit the allegations of Paragraph 14 to the extent they are consistent with the plain language, meaning, and context of the cited statute and implementing regulations. The allegations are otherwise denied.

15.     To achieve its conservation aims, Swampbuster bars producers who convert wetlands to cropland from receiving USDA benefits.

ANSWER:   Defendants admit only that a violation of the Swampbuster provisions bars producers from receiving certain USDA benefits as provided in the cited statute and its implementing regulations. Defendants deny that a violation results in ineligibility for all USDA benefits and otherwise deny the allegations of Paragraph 15.

16.     Swampbuster imposes compulsory conservation: it conditions USDA agricultural benefits on a farmer keeping "wetlands" in conservation, with no payment of rent to the farmer. 16 U.S.C. §§ 3801, 3821-3824.

ANSWER:   Defendants deny the allegations of Paragraph 16.

7

17.     Conversely, Sodbuster is a voluntary program that pays farmers market rent to keep their "highly erodible land" acreage in conservation. 16 U.S.C. §§ 3801, 3811-3814.

ANSWER:   Defendants deny the allegations of Paragraph 17 to the extent the allegations are contrary to the plain language, meaning, and context of the Highly Erodible Land Conservation provisions of 16 U.S.C. §§ 3801, 3821-3824, which speak for themselves.

18.     Swampbuster prohibits recipients of USDA agricultural benefits from converting "wetlands" into tillable land to be used for agricultural purposes. 16 U.S.C. §§ 3821-3822. Under Swampbuster, a "wetland" is defined as land that combines wetland hydrology, hydric soils, and the ordinary production of plants that grow well in wet conditions. 16 U.S.C. § 3801(a)(27), *id*. § 3801(a)(12), (13).

ANSWER:   Defendants admit the allegations of Paragraph 18 only to the extent they are consistent with the plain language, meaning, and context of the Wetland Conservation provisions of 16 U.S.C. §§ 3801, 3821-3822, which speak for themselves. The allegations are otherwise denied.

19.     Producers seeking any U.S. Department of Agriculture benefits must submit a completed AD-1026 form to certify compliance with the highly erodible land (Sodbuster) and wetland (Swampbuster) conservation provisions as a condition of eligibility for certain USDA programs. 7 C.F.R. § 12.7.

ANSWER:   Defendants admit the allegations of Paragraph 19 only to the extent they are consistent with the plain language, meaning, and context of the Highly

8

Erodible Land Conservation and Wetland Conservation provisions of 16 U.S.C.

§ 3801, et seq., and their implementing regulations, which speak for themselves.

The allegations are otherwise denied.

20.     After submission of an AD-1026 form, the USDA, through the local

Natural Resource Conservation Service ("NRCS") office, conducts a site inspection

to determine and delineate the presence of a wetland in a person's farm field

through a formal process called a "certification." 16 U.S.C. § 3822(a)(1)-(3). Final

certifications "remain valid and in effect as long as the area is devoted to an

agricultural use or until such time as the person affected by the certification

requests review of the certification by the Secretary" of the USDA. *Id*. at (a)(4).

ANSWER:    Defendants admit the allegations of Paragraph 20 only to the extent

they are consistent with the plain language, meaning, and context of the Wetland

Conservation provisions of 16 U.S.C. § 3822(a), and their implementing regulations,

which speak for themselves. The remaining allegations, including the allegation

that NRCS is required to conduct a site inspection prior to making a wetland

determination, are denied.

21.     If farmland is used for crop production and no wetland conversions

occur, then a wetland certification remains effective in perpetuity. This is because

the administrative rules limit review of a prior certification. "A person may request

review of a certification only if a natural event alters the topography or hydrology of

the subject land to the extent that the final certification is no longer a reliable

9

indication of site conditions, or if NRCS concurs with an affected person that an error exists in the current wetland determination." 7 C.F.R. § 12.30(c)(6).

ANSWER:    Defendants deny the allegations of Paragraph 21 to the extent they are inconsistent with the plain language, meaning, and context of the Highly Erodible Land Conservation and Wetland Conservation provisions of 16 U.S.C. § 3801, et seq., and their implementing regulations, which speak for themselves.

22.    Once an area of a farmer's property has been designated a "wetland," it cannot be "drained, dredged, filled, leveled, or otherwise manipulated (including any activity that results in impairing or reducing the flow, circulation, or reach of water) …." 16 U.S.C. § 3801(a)(7)(A).

ANSWER:    Defendants deny the allegations of Paragraph 22, which contain an incomplete and inaccurate summary of the cited statutory provision.

23.    Through an administrative rule, the USDA has added another prohibition, by defining a converted wetland as one "that has been drained, dredged, filled, leveled, or otherwise manipulated (including *the removal of woody vegetation* or any activity that results in impairing or reducing the flow and circulation of water) …." 7 C.F.R. § 12.2(a) (emphasis added).

ANSWER:    Defendants admit only the contents of the cited administrative rule, which speaks for itself, and otherwise deny the allegations of Paragraph 23.

24.    If the wetlands are converted (drained, dredged, filled, or otherwise manipulated), whether an agricultural commodity is subsequently produced or not, then all affiliated people lose USDA agricultural benefits. 16 U.S.C. § 3823.

10

Ineligibility disqualifies a person from a wide variety of federally authorized agricultural benefit programs, including USDA loans, payment programs, and crop insurance assistance. 16 U.S.C. § 3821.

ANSWER:   Defendants deny the allegations of Paragraph 24, which appear to contain an incomplete and inaccurate summary of the cited statutes, which speak for themselves.

25.   "[A]ny person who in any crop year produces an agricultural commodity on converted wetland, …, shall be (1) in violation of this section; and (2) ineligible for loans or payments in an amount determined by the Secretary to be proportionate to the severity of the violation." 16 U.S.C. § 3821(a).

ANSWER:   Defendants admit only the (full) contents of the cited statute and otherwise deny the allegations of Paragraph 25, which appear to include an incomplete and inaccurate summation of the statute by omitting its introductory clause.

26.   "If a person is determined to have committed a violation under subsection (a) during a crop year, the Secretary shall determine which of, and the amount of, the following loans and payments for which the person shall be ineligible…." 16 U.S.C. § 3821(b).

ANSWER:   Defendants admit the allegations of Paragraph 26 only to the extent they accurately quote the cited statute. The allegations are otherwise denied.

27.   This includes "Contract payments under a production flexibility contract, marketing assistance loans, and any type of price support or payment

11

made available under the Agricultural Market Transition Action, the Commodity Credit Corporation Charter Act[], or any other Act." 16 U.S.C. § 3821(b)(1).

ANSWER: Defendants admit the allegations of Paragraph 27 only to the extent they accurately quote the cited statute. The allegations are otherwise denied.

28. It also includes "[a] loan made or guaranteed under the Consolidated Farm and Rural Development Act [] or any other provision of law administered by the Consolidated Farm Service Agency, if the Secretary determines that the proceeds of the loan will be used for a purpose that will contribute to the conversion of a wetland … to produce an agricultural commodity." 16 U.S.C. § 3821(b)(2).

ANSWER: Defendants admit only that the cited statute speaks for itself and otherwise deny the allegations of Paragraph 28.

29. It also includes ineligibility from payments made pursuant to "a contract entered into under the environmental quality incentives program," "any other provision of subtitle D," "section 401 or 402 of the Agricultural Credit Act of 1978," and "section 3 or 8 of the Watershed Protection and Flood Prevention Act." 16 U.S.C. § 3821 (b)(3)(A)-(D).

ANSWER: Defendants admit only that the language quoted in Paragraph 29 is contained in the cited statute or its implementing regulation, 7 CFR 12.4(d). The allegations are otherwise denied.

30. "If a person is determined to have committed a violation under subsection (a) or (d) during a crop year, the person shall be ineligible to receive any payment of any portion of premium paid by the Federal Crop Insurance Corporation

12

for a plan or policy of insurance under the Federal Crop Insurance Act …." 16 U.S.C. § 3821(c)(1)(A).

ANSWER:  Defendants admit the allegations of Paragraph 30 to the extent they accurately quote the cited statute. The allegations are otherwise denied.

31.  In summary, failure to comply will render a person ineligible for "any price-support loans, purchase, and payments; farm storage facility loans; Federal crop insurance; disaster payments; new loans made, insured, or guaranteed by Farmers Home Administration ("FmHA") if the loan would contribute to wetlands conversion; or payments for the storage of CCC-owned commodities."[3]

ANSWER:  Defendants deny the allegations of Paragraph 31.

32.  This ineligibility for benefits is not limited to a single person, entity, or property: "Ineligibility of an individual or entity under this part for benefits shall also be an ineligibility for benefits for 'affiliated persons.'" 7 C.F.R. § 12.8(a). "If a person is affected by a reduction in benefits under [] [16 U.S.C. § 3821] and the affected person is affiliated with other persons for the purpose of receiving the benefits, the benefits of each affiliated person shall be reduced under [] [16 U.S.C. § 3821] in proportion to the interest held by the affiliated person." 16 U.S.C. § 3823.

ANSWER:  Defendants admit the allegations of Paragraph 32 only to the extent they accurately quote the cited statutes and regulations. The allegations are otherwise denied.

33.  Affiliated persons of an individual include: a spouse, minor child, guardian of minor child; a partnership, joint venture, or enterprise in which the

13

person has an ownership interest or financial interest; and any trust in which the individual, business, or person is a beneficiary or has a financial interest. 7 C.F.R. § 12.8(b)(1)-(3).

ANSWER:   Defendants admit that the cited regulation includes and defines affiliated persons but otherwise deny the allegations of Paragraph 33 on the basis that it omits certain exceptions and limitations found in the regulation.

34.     Affiliated persons of an entity are any participants or stockholders of the corporation, partnership, or other joint venture. 7 C.F.R. § 12.8(c).

ANSWER:    Defendants admit that the cited regulation includes and defines affiliated persons of an entity, including participants and stockholders, but otherwise deny the allegations of Paragraph 34 on the basis that it omits certain exceptions and limitations found in the regulation.

**The Plaintiff**

35.     The managing member of Plaintiff CTM Holdings, LLC, was raised in Iowa. He comes from a line of farmers. His father was a farmer, and his grandfather was a farmer. Once he was financially able to do so, he purchased his grandparents' farm in 1990.

ANSWER:   Defendants deny the allegations of Paragraph 35 due to a lack of knowledge or information sufficient to form a belief about their truth.

36.     Since the purchase of his grandparents' farm, CTM's managing member has gone on to acquire approximately 1,075 acres of Iowa farmland. CTM owns land in Delaware, Benton, Linn, and Johnson counties in Iowa. CTM's

principal and managing member, through another affiliate entity, owns farmland in Linn, Jackson, and Dubuque counties in Iowa. Between CTM and affiliated entities, CTM's managing member owns approximately 1,075 acres of Iowa farmland.

ANSWER:    Defendants deny the allegations of Paragraph 36 due to a lack of knowledge or information sufficient to form a belief about their truth.

## The Property

37.    On September 30, 2022, CTM purchased three contiguous parcels (Nos. 480-403300, 480-403400, and 480-403410) consisting of 71.85 acres of farmland located at Corner of 217th Street and 1st Street in Delaware, Iowa ("Property"). Of the 71.85 acres, approximately 39.83 acres were tilled and being used for agriculture; 10.4 acres were designated as erodible land and in the Conservation Reserve Program ("CRP") by the prior owner; and 21.62 acres were forested, of which the USDA had previously designated 9 acres as "wetland".

ANSWER:    In response to the allegations of Paragraph 37, Defendants admit that 10.4 acres of Plaintiff's property were enrolled by a prior owner in the Conservation Reserve Program and that USDA has previously designated nine acres of Plaintiff's property as "wetland." Defendants deny the remaining allegations of Paragraph 37 due to a lack of knowledge or information sufficient to form a belief about their truth.

38.    The USDA pays for the 10.4 acres of CRP land to be conserved as "highly erodible land" through a 10-year program under the Sodbuster legislation. Under the CRP program, owners of highly erodible land bid offers for the price they

15

would accept from the government to take the land out of production. If the government accepts, it effectively rents the land to keep the owner from tilling it. The program allows the farmer to plant grass and trim the CRP area. It also gives the landowner the option to enter into the CRP program and then compensates for use of the land as a conservation easement. The 10.4 acres were entered into the CRP program by the prior owner in 2015 and expire on September 30, 2024.

ANSWER:   As to the allegations of the first sentence of Paragraph 38, Defendants admit that USDA makes contract payments for 10.4 acres of highly erodible land enrolled in the Conservation Reserve Program ("CRP"). Defendants deny the remaining allegations of the first sentence of Paragraph 38. Defendants admit the allegations contained in the second, third, and fourth sentences of Paragraph 38 only to the extent they are consistent with 7 C.F.R. Part 1410; otherwise, denied. As to the sixth and final sentence of Paragraph 38, Defendants admit that 10.4 acres of Plaintiff's land were enrolled in the CRP program by the prior owner and that the CRP contract for those acres expires on September 30, 2024. Defendants deny the remaining allegations of Paragraph 38.

39.    The 21.62 acres of forest are in five separate areas spread over the Property. The 21.62 acres of forest is arable land that consists of trees and overgrowth. The 21.62 acres of forest does not contain any standing water, is not visibly wet, is not connected to any water body, and is not permanently or seasonally saturated or inundated by water at any time of the year. The forested

16

acreage contains the same crop high quality suitability rating of 84/85 as the rest of the Property.

ANSWER:  Defendants deny the allegations of Paragraph 39 due to a lack of knowledge or information sufficient to form a belief about their truth.

40.  The following image shows a portion of CTM's tillable acreage in the foreground, with a portion designated wetland in the background, on the lefthand side: [image omitted].

ANSWER:  Defendants deny the allegations of Paragraph 40 due to a lack of knowledge or information sufficient to form a belief about their truth.

41.  The following image depicts a closer view of the prior photo and shows CTM's Property with tillable acreage in the foreground, trees cut down from forested acreage designated as "nonwetland", with the area designated as "wetland" in the background encircling the "nonwetland". [Image omitted].

ANSWER:  Defendants deny the allegations of Paragraph 41 due to a lack of knowledge or information sufficient to form a belief about their truth.

42.  The following image depicts an even closer view of the prior image and provides an indication of the soil dryness in previously forested area designated as "nonwetland" directly next to and encircled by the "wetland" forested area. [Image omitted].

ANSWER:  Defendants deny the allegations of Paragraph 42 due to a lack of knowledge or information sufficient to form a belief about their truth.

17

43.    CTM rents the 39.83 tillable acres to a tenant. Every spring the tenant

plants either feed corn or soybeans and harvests the crops in the fall.

ANSWER:    Defendants deny the allegations of Paragraph 43 due to a lack of

knowledge or information sufficient to form a belief about their truth.

## Wetland Determination

44.    On October 14, 2022, CTM submitted to the USDA office a completed

form AD-1026 requesting USDA benefits eligibility for CTM's newly acquired

Property and requesting a redetermination of the prior wetlands determination that

was completed before CTM's ownership of the Property.

ANSWER:    As to the allegations of Paragraph 44, Defendants admit that CTM

submitted a form AD-1026 to USDA on or about October 14, 2022. Defendants deny

all remaining allegations of Paragraph 44.

45.    On January 23, 2023, the NRCS field office issued a letter to CTM

providing a "Wetland Preliminary Technical Determination" for the Property

identified as Tract 360, and Farm Service Agency ("FSA") Farm number 5822

("Wetland Determination"). The Wetland Determination informed CTM that a

Certified Wetland Determination had already been completed on April 16, 2010 for

a prior owner under a different FSA Farm Number. The NRCS also informed CTM

that the 2010 wetlands determination stands, so the request for a new

determination was denied, with no right to appeal. It confirmed the 2010

determination that, of the 21.62 acres of forested land, 12.62 acres are nonwetlands

18

and 9 acres are wetland. The Wetland Determination did not provide a scientific basis or evidence for determining that the 9 acres meet the definition of "wetland".

ANSWER:    Defendants admit that on January 23, 2023, the NRCS field office issued a letter to Plaintiff providing a "Wetland Preliminary Technical Determination" for certain portions of the property identified as Tract 360, Farm Number 5822. Defendants further admit that NRCS provided notice of the Certified Wetland Determination completed on April 16, 2010, via a letter also sent on January 23, 2023. Defendants deny the remaining allegations of Paragraph 45.

46.    The 9 acres of "wetland" are indistinguishable from the rest of the 12.62 acres of nonwetlands. The 9 acres of "wetland" do not contain standing water and are not visibly wet. The Property contains a small seasonal stream that runs through one portion of the nonwetlands, and the stream is not designated as "wetlands". All the "wetlands" units on the Property are at least 1,000 feet away from the small seasonal stream and are not connected to any water body.

ANSWER:    Defendants deny the allegations of the first sentence of Paragraph 46 and deny the remaining allegations of Paragraph 46 due to a lack knowledge or information sufficient to form a belief about their truth.

### Injury to Plaintiffs

47.    The Swampbuster statutes and regulations force Plaintiff to choose between keeping 9 acres of land out of crop production in order to keep USDA benefits, and using the 9 acres for crop production and forfeit the ability to receive all USDA benefits.

19

ANSWER:    Defendants deny the allegations of Paragraph 47.

48.    If the 9 acres were drained, dredged, farmed, or otherwise developed then for just this Property: (1) CTM would lose the remaining CRP payments on the highly erodible land; (2) the USDA could demand a refund of the CRP payments from the prior eight years; (3) the Property's tenant would lose its crop insurance subsidy.

ANSWER:    Defendants deny the allegations of Paragraph 48.

49.    If the 9 acres of "wetland" were converted, then the Plaintiff could also be disqualified from all USDA programs for all 1,075 acres of farmland that Plaintiff and its managing member own.

ANSWER:    Defendants deny the allegations of Paragraph 49.

50.    Ineligibility from USDA benefits and programs would also affect all the tenants on the 1,075 acres of farmland. CTM, its managing member, and the tenants of the 1,075 acres of affiliated farmland participate in a number of USDA benefits programs, including crop insurance subsidy, farm loans, cost sharing on conservation practices, disaster relief, and CRP payments.

ANSWER:    In response to Paragraph 50, Defendants admit that Plaintiff participates in a number of USDA benefits programs but deny the remaining allegations of Paragraph 50 due to a lack of knowledge or information sufficient to form a belief about their truth.

51.    Growing season in Iowa usually begins around mid-April. If Defendants are not enjoined from enforcing the Swampbuster statutes and

20

regulations, then Plaintiff will be unable to plant its crop on the 9 acres, will miss the window of time to plant for this year's crop season, and will therefore lose any profits from crops that could have been grown on the 9 acres.

ANSWER:    Defendants admit the allegations in the first sentence of Paragraph 51. Defendants deny all remaining allegations of Paragraph 51.

52.    Plaintiff cannot remove the trees from the wetlands because of the administrative rule prohibiting removal of woody vegetation.

ANSWER:    Defendants deny the allegations of Paragraph 52.

53.    Despite the environmental condition of the 9 acres indicating that they are not "wetlands," Plaintiff cannot appeal this decision, nor can Plaintiff request a determination because of the administrative rule prohibiting redeterminations.

ANSWER:    Defendants deny the allegations of Paragraph 53.

54.    Financially, Plaintiff has no choice but to give up all uses of the 9 acres in order to retain the USDA benefits for itself and its tenants for all 1,075 acres.

ANSWER:    Defendants deny the allegations of Paragraph 54.

**CLAIMS**

**Claim I**

**Violation of Commerce Clause**

55.    Plaintiff incorporates the preceding paragraphs as if fully set forth below.

ANSWER:    In response to Paragraph 55, Defendants incorporate the responses to the preceding paragraphs as if fully set forth below.

56.     Courts hold unlawful and set aside agency action when it is "contrary to constitutional right, power, privilege, or immunity[.]" 5 U.S.C. § 706(2)(B).

ANSWER:     Defendants admit the allegations of Paragraph 56 to the extent they are consistent with the plain language, meaning, and context of the provisions of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B), which speak for themselves. The allegations are otherwise denied.

57.     The Constitution grants Congress the power to "[t]o regulate commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I., § 8, cl. 3.

ANSWER:     Defendants admit the allegations of Paragraph 57.

58.     Congress's commerce power is limited to regulating the channels of interstate commerce, the instrumentalities of interstate commerce and goods in interstate commerce, and intrastate activity that has a substantial effect on interstate commerce. *United States v. Lopez*, 514 U.S. 549 (1995).

ANSWER:     Defendants deny the allegations of Paragraph 58.

59.     Swampbuster regulates all wetlands, regardless of how isolated they are from navigable waterways. 16 U.S.C. § 3801(a)(27).

ANSWER:     Defendants admit the allegations of Paragraph 59 only to the extent they are consistent with the plain language, meaning, and context of the Highly Erodible Land Conservation and Wetland Conservation provisions of 16 U.S.C. § 3801(a), which speak for themselves. The allegations are otherwise denied.

60.     Intrastate wetlands are not instrumentalities or goods in interstate commerce and they have no substantial effect on interstate commerce.

<u>ANSWER</u>:   Defendants deny the allegations of Paragraph 60.

61.     The purported wetlands on CTM's property are not connected to any navigable waterways and are purely intrastate. The purported wetlands are not instrumentalities or goods in interstate commerce and they have no substantial effect on interstate commerce.

<u>ANSWER</u>:   Defendants deny the allegations of Paragraph 61.

62.     Swampbuster, both on its face and as applied to Defendants' regulation of CTM's property, exceeds Congress's power under the Commerce Clause.

<u>ANSWER</u>:   Defendants deny the allegations of Paragraph 62.

**<u>Claim II</u>**

**Unconstitutional Condition – Commerce Clause**

63.     Plaintiff incorporates the preceding paragraphs as if fully set forth below.

<u>ANSWER</u>:   In response to Paragraph 63, Defendants incorporate the responses to the preceding paragraphs as if fully set forth below.

64.     The unconstitutional conditions doctrine prohibits the government from conditioning a government benefit on the waiver of a constitutional right. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013).

ANSWER:    Defendants admit only that courts, including the United States Supreme Court in the cited case, have addressed the constitutionality of certain land-use regulations. The allegations of Paragraph 64 are otherwise denied.

65.    To receive and maintain eligibility of all USDA benefits under Swampbuster, Plaintiff has been forced to keep the portion of its land determined to be "wetlands" out of production—that is, unused.

ANSWER:    Defendants deny the allegations of Paragraph 65.

66.    Conservation of "wetlands" means leaving the area designated as "wetlands" in its natural state and forfeiting all its possible uses in perpetuity as long as the rest of the property is used for crop production.

ANSWER:    Defendants deny the allegations of Paragraph 66.

67.    Under the Commerce Clause, USDA would not be able to directly regulate the purported wetlands on Plaintiff's property.

ANSWER:    Defendants deny the allegations of Paragraph 67.

68.    The Constitution's structure "protects the liberty of all persons within a state by ensuring that laws enacted in excess of delegated governmental power cannot direct or control their actions." *Bond v. United States*, 564 U.S. 211, 222 (2011).

ANSWER:    Defendants admit only that the quoted text is found in the cited case, but otherwise deny the allegations of Paragraph 68.

69.    Swampbuster requires Plaintiff and other producers to waive their rights under the Commerce Clause to receive a benefit.

24

ANSWER:    Defendants deny the allegations of Paragraph 69.

70.    Thus, the USDA's actions under Swampbuster, both facially and as applied to CTM holdings, are contrary to constitutional right, power, privilege, or immunity.

ANSWER:    Defendants deny the allegations of Paragraph 70.

## Claim III

### Unconstitutional Condition

### Fifth Amendment – Takings

71.    Plaintiff incorporates the preceding paragraphs as if fully set forth below.

ANSWER:    In response to Paragraph 71, Defendants incorporate by reference the responses to the preceding paragraphs as if fully set forth below.

72.    "No person shall…be deprived of life liberty, or property without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

ANSWER:    Defendants admit the allegations in Paragraph 72.

73.    Swampbuster prohibits farmers from "convert[ing] a wetland by draining, dredging, filling, leveling, or any other means for the purpose, or to have the effect, of making the production of an agricultural commodity possible on such converted wetland…for that crop year and all subsequent crop years." 16 U.S.C. § 3821(c).

25

ANSWER: Defendants admit only that the quoted language is contained in 16 U.S.C. § 3821(d), but otherwise deny the allegations in Paragraph 73 to the extent they are inconsistent with the plain language, meaning, and context of the cited statute.

74. A converted wetland is one "that has been drained, dredged, filled, leveled, or otherwise manipulated (including any activity that results in impairing or reducing the flow, circulation, or reach of water) for the purpose or to have the effect of making the production of an agricultural commodity possible…." 16 U.S.C. § 3801(a)(7)(A).

ANSWER: Defendants admit only that the quoted language is contained in the cited statute, but otherwise deny the allegations in Paragraph 74 to the extent they are inconsistent with the plain language, meaning, and context of the cited statute.

75. Any person who "produces an agricultural commodity on converted wetland," becomes ineligible for USDA backed benefits such as crop insurance, price supports, and government-sponsored loans. 16 U.S.C. § 3821(a).

ANSWER: Defendants admit only that the quoted language is contained in the cited statute, but otherwise deny the allegations in Paragraph 75 to the extent they are inconsistent with the plain language, meaning, and context of the cited statute.

76. A wetlands determination by the USDA/NRCS that any portion of farmland is "wetlands" remains in effect in perpetuity, so long as the rest of the property is being used for crop production.

ANSWER: Defendants deny the allegations of Paragraph 76.

26

77. The area on the wetlands determination map that is determined to be "wetlands" is designated a conservation area, forfeits all available uses, and is to remain undeveloped.

ANSWER: Defendants deny the allegations of Paragraph 77.

78. The purpose of Swampbuster's conservation of wetlands is for a public purpose.

ANSWER: Defendants admit that the Swampbuster program serves important public benefits, including those listed in 7 C.F.R. § 12.1(b), but otherwise deny the allegations of Paragraph 78.

79. A wetland determination under Swampbuster effects an unconstitutional *per se* physical taking under the Fifth Amendment by appropriating without compensation a permanent conservation easement.

ANSWER: Defendants deny the allegations of Paragraph 79.

80. Under Swampbuster, Defendants do not provide just compensation for the conservation of private land, and forfeiture of all possible uses of, the portion of Plaintiff's land designated as "wetlands."

ANSWER: Defendants deny the allegations of Paragraph 80.

81. Swampbuster thus conditions Plaintiff's receipt of USDA benefits on its waiver of the Fifth Amendment right to receive just compensation for the government's taking of private property.

ANSWER: Defendants deny the allegations of Paragraph 81.

82.     The imposition of the unconstitutional condition on Plaintiff's receipt of USDA benefits violates Plaintiff's rights under the Takings Clause of the Fifth Amendment.

ANSWER:     Defendants deny the allegations of Paragraph 82.

83.     Thus, the USDA's actions under Swampbuster, both facially and as applied to CTM holdings, are contrary to constitutional right, power, privilege, or immunity.

ANSWER:     Defendants deny the allegations of Paragraph 83.

## Claim IV

### Agency Action in Excess of Statutory Authority

84.     Plaintiff incorporates the preceding paragraphs as if fully set forth below.

ANSWER:     In response to Paragraph 84, Defendants incorporate the responses to the preceding paragraphs as if fully set forth below.

85.     Courts hold unlawful and set aside agency action when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right". 5 U.S.C. § 706(2)(A) and (C).

ANSWER:     Defendants admit the allegations of Paragraph 85 only to the extent they are consistent with the plain language, meaning, and context of the provisions of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C), which speak for themselves. The allegations are otherwise denied.

86. The Swampbuster statute defines a "converted wetland" as one "that has been drained, dredged, filled, leveled, or otherwise manipulated (including any activity that results in impairing or reducing the flow, circulation, or reach of water) …." 16 U.S.C. § 3801(a)(7)(A).

ANSWER: Defendants admit the allegations of Paragraph 86 only to the extent they are consistent with the plain language, meaning, and context of the Highly Erodible Land Conservation and Wetland Conservation provisions of 16 U.S.C. § 3801(a), which speak for themselves. The allegations are otherwise denied.

87. The agency's rules, however, define a converted wetland as one "that has been drained, dredged, filled, leveled, or otherwise manipulated (including *the removal of woody vegetation* or any activity that results in impairing or reducing the flow and circulation of water) …." 7 C.F.R. § 12.2(a) (emphasis added).

ANSWER: Defendants admit the allegations of Paragraph 87 only to the extent they accurately quote the cited regulation. The allegations are otherwise denied.

88. The additional language in the rule—"the removal of woody vegetation"—that is not included in the statute is not in accordance with the law and exceeds statutory jurisdiction, authority, or limitations.

ANSWER: Defendants deny the allegations of Paragraph 88.

89. Because of this administrative rule Plaintiff is unable to remove the trees from the 9 acres of "wetlands" without forgoing USDA benefits as set forth above.

ANSWER: Defendants deny the allegations of Paragraph 89.

29

**Agency Action in Excess of Statutory Authority**

90.     Plaintiff incorporates the preceding paragraphs as if fully set forth

below.

<u>ANSWER</u>:    In response to paragraph 90, Defendants incorporate by reference the

responses to the preceding paragraphs as if fully set forth below.

91.     Courts hold unlawful and set aside agency action when it is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law" or "in

excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

5 U.S.C. § 706(2)(A) and (C).

<u>ANSWER</u>:     Defendants admit the allegations of Paragraph 91 only to the extent

they are consistent with the plain language, meaning, and context of the provisions

of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C), which speak for

themselves. The allegations are otherwise denied.

92.     The Swampbuster statute allows for a person affected by a final

certification to request a redetermination: "A final certification made under

paragraph (3) shall remain valid and in effect as long as the area is devoted to an

agricultural use or until such time as the person affected by the certification

requests review of the certification by the Secretary." 16 U.S.C. § 3822(a)(4).

<u>ANSWER</u>:    Defendants admit that the applicable statute and implementing

regulations permit a redetermination of a wetland certification, and further admit

30

the allegations of Paragraph 92 only to the extent they accurately quote the cited statute. The allegations are otherwise denied.

93. However, the administrative rules only allow requests for review of a prior certification when a natural event changes the land or if the NRCS believes there is an error. "A person may request review of a certification only if a natural event alters the topography or hydrology of the subject land to the extent that the final certification is no longer a reliable indication of site conditions, or if NRCS concurs with an affected person that an error exists in the current wetland determination." 7 C.F.R. § 12.30(c)(6).

ANSWER: Defendants deny the allegations contained in the first sentence of Paragraph 93. Defendants admit the second sentence of Paragraph 93 to the extent it contains an accurate quote of the cited regulation.

94. The administrative rule limiting review of a final certification to only circumstances where a natural event occurs or the NRCS agrees that an error has occurred in their own prior determination conflicts with the statute that broadly allows review when simply requested by an affected person.

ANSWER: Defendants deny the allegations of Paragraph 94.

95. Despite the absence of "wetland" conditions on the 9 acres, the NRCS denied CTM's request, as the new owner of the Property, for redetermination of the 2010 certification, which was done under the prior owner, stating that there was no evidence of a natural event changing the land and that the NRCS did not believe the prior determination had any errors.

31

ANSWER:  In response to Paragraph 95, Defendants admit that a prior owner owned the nine acres in question when the 2010 certification was made. Defendants deny all remaining allegations of Paragraph 95.

To the extent Plaintiff's "REQUEST FOR RELIEF" paragraphs are deemed factual in nature by the Court, they are denied. Defendants further deny that Plaintiff is entitled to the requested relief or to any relief whatsoever.

Defendants deny all other allegations of Plaintiff's Complaint not specifically admitted.

## DEFENSES

1.      This Court lacks jurisdiction over some or all of Plaintiff's claims.

2.      Plaintiff failed to exhaust all administrative remedies with regard to some or all of its claims.

3.      Some or all of Plaintiff's claims are barred by applicable statutes of limitations.

4.      Plaintiff has chosen to participate in certain federal programs imposing the obligations or restrictions to which Plaintiff now objects. Compliance with the programs' obligations or restrictions does not constitute an unlawful taking, because Plaintiff's participation is voluntary.

5.      Some or all of Plaintiff's claims are barred by the doctrine of collateral estoppel.

6.      Some or all of Plaintiff's claims are barred by estoppel, laches, and/or waiver.

7.     Plaintiff's suit against the individual Defendants in their official capacities is merely a suit against the agency itself, making them redundant defendants.

8.     Because the individual Defendants in this action are components of an Executive Department of the United States, the Plaintiff's lawsuit is an action against the United States and is subject to the defense of sovereign immunity.

9.     The affirmative defenses asserted above are not exhaustive. Defendants hereby expressly reserve the right to amend this Answer to bring additional defenses over the course of this action, as the facts and evidence may warrant.

WHEREFORE, having fully answered Plaintiff's Complaint, Defendants respectfully request this Court dismiss Plaintiff's Complaint, for its costs incurred herein, and for such further relief as is just and proper.

Respectfully submitted,

TIMOTHY T. DUAX
United States Attorney

By:     */s/ Brandon J. Gray*
         */s/ Brian J. Keogh*

BRANDON J. GRAY
BRIAN J. KEOGH
Assistant United States Attorney
111 7th Avenue SE, Box 1
Cedar Rapids, IA 52401
Phone: (319) 363-6333
Fax: (319) 363-1990
Brandon.Gray2@usdoj.gov
Brian.Keogh@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY:   */s/ D. Nash*

33