IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| CTM HOLDINGS, LLC, an Iowa limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> THE UNITED STATES DEPARTMENT OF AGRICULTURE; THOMAS J. VILSACK, in his official capacity as the Secretary of the United States Department of Agriculture; THE NATURAL RESOURCES CONSERVATION SERVICE; TERRY COSBY, in his official capacity as Chief of the Natural Resources Conservation Service; and JON HUBBERT, in his official capacity as Iowa State Conservationist, <br><br> Defendants. | No. 24-CV-02016-CJW-MAR <br><br> **DECLARATION OF NICK NEMEC** |

I, Nick Nemec, declare under penalty of perjury, that the following is true and correct:

1. I have been a member of Dakota Rural Action ("DRA") for nearly 30 years. I make this declaration to show that DRA has standing to intervene in the above captioned lawsuit in

1

which Plaintiff CTM Holdings challenges various aspects of the U.S. Department of Agriculture's Wetland Conservation Compliance Provisions ("Swampbuster").

2. I joined DRA in 1997 due to my strong alignment with its commitment to family farmers and advocacy for resilient agriculture systems that safeguard environmental resources.

3. During the mid-1990s, I worked closely with DRA to challenge Tyson Foods' plan to introduce its predatory contract-growing and factory farm regime in Hyde County, South Dakota. With the help of DRA, our county passed a zoning ordinance protecting rural residents and small farmers from factory farms' economic and environmental hazards. The experience affirmed my alignment with DRA's mission. Ever since, I have faithfully paid my annual membership dues—at times contributing greater than the minimum amount—and stayed abreast of DRA's initiatives.

4. My roots in South Dakota's farm country run deep. I grew up in Hyde County, and I still consider it home today. As a child, I worked on my father's 1,300-acre farm. After graduating high school, I left Hyde County for just a few years during which I enlisted in the Marine Corps and attended college. After returning home, I married my wife and we started our family.

5. We began accruing farmland and cattle with the savings I'd stowed away while in the Marines. I was lucky; farmland was cheap due to the 1980s farm crisis. I bought my first 800 acres when I was about 30 years old. By leveraging the appreciating values of my property, I was able to secure loans and mortgages for additional acreage. I also received compensation from the U.S. Fish & Wildlife Service ("FWS") for signing grassland conservation easements.

6. Today, at age 66, I own about 6,000 acres. Farming is my livelihood, just as it was for my father before me. I plan to keep farming my land until my children take over the family

2

business. After marrying, two of my daughters moved home with their husbands to join me in raising cattle and growing crops like corn, soybeans, sunflowers, and alfalfa hay on our land. I expect I will continue to enjoy time with my family on our property even after I retire.

7. As a small farmer committed to sustainable agricultural practices, participating in the Swampbuster and Sodbuster programs has been an easy decision. Both highly erodible lands ("HELs") and wetlands exist on my farm, and thanks to Swampbuster and Sodbuster, I have benefitted from the preservation of these natural features.

8. I support USDA's conservation programs because not all land should be farmed. I worry that, without the programmatic incentives provided by Swampbuster and Sodbuster, more land will be drained and cultivated, resulting in overproduction that outpaces demand and deflates prices. Smaller farmers are most vulnerable to economic hardship from fluctuating prices.

9. Draining wetlands is also expensive, and all that drained water has to go somewhere. I am concerned that eliminating Swampbuster could result in larger farms pursuing farm modifications that alter the area's hydrology in a manner that adversely impacts neighboring properties, including my own. Over the years, I have generally had good neighbors, but there are those who would farm every acre if they could, regardless of what it does to the long-term quality of the land.

10. In a world without Swampbuster and Sodbuster, I worry that large farming operations that can withstand price fluctuations will continue to expand to the detriment of small farmers and those hoping to start. The financial barriers to entering farming today are already much higher than when I began in the 1980s. As a grandfather, I worry about my grandchildren and other young people's ability to earn a living farming. Land and modern

3

equipment are already prohibitively expensive, and I am concerned that removing Swampbuster and Sodbuster would only add to the barriers prospective farmers must overcome.

11. I have found that complying with Swampbuster and Sodbuster has made good financial sense. After all, these programs do not completely prohibit farmers from utilizing their wetlands and grasslands. I have complied with Swampbuster's prohibition against draining wetlands while still making productive use of my wetlands. For example, I often plant grass hay in larger wetlands, which provides low-cost, nutritional grazing that our cattle love. I typically leave the smaller, ephemeral wetlands alone and let them replenish the groundwater, saving me money in the long run by ensuring we have a safe, reliable source of drinking water.

12. I have also found that Swampbuster and Sodbuster are complemented by other government programs that allow farmers to profit by preserving grasslands. For example, I have sold several grassland easements to FWS. Under the terms of the easement contract, FWS pays me to preserve the grasslands as pasture and wildlife habitat— something that I am doing already to comply with Sodbuster. The extra income from these easements has allowed me to make business decisions that are good for me and good for future generations. The native grasslands falling under those easements are protected in perpetuity and will keep these grasslands arable for my children, grandchildren, and beyond.

13. In addition to economic concerns, I am deeply concerned about the environmental consequences that would result if Swampbuster and/or Sodbuster were eliminated. Hyde County lies within the Prairie Pothole Region, an area made up of native grasslands interspersed with thousands of shallow wetlands, lakes, and intermittent streams. I know

4

from experience that these native grasslands and wetlands offer numerous environmental services that benefit farmers like me.

14. I understand that both grasslands and wetlands mitigate soil erosion and regulate absorption of precipitation. These functions help protect against destructive flooding that can devastate crop yields. Without the Sodbuster and Swampbuster programs, I fear that South Medicine Knoll Creek, which runs through my property, will become more prone to flooding. While my property sits about 20 miles downstream from the source, people living further downstream, nearer to the waterline, have previously had to vacate their homes. My crop fields and pastures already experience flooding; without these programmatic protections, I worry that future floods will be faster and more severe, jeopardizing the productivity of my farmland and safety of my cattle.

15. I am also aware that grasslands and wetlands improve water quality by filtering out harmful pollutants and sediment before they seep into our groundwater or flow into our rivers. These land features also provide critical habitat for many species of birds and other wildlife. I worry that invalidating these programs would negatively impact water quality and wildlife. With age, I've come to appreciate my farm's wetlands and the vibrant ecosystems they support. I enjoy watching the ducks, blue herons, and pelicans; hearing the bees buzz and frogs croaks; and tracking the changing seasons by observing the wildflowers in bloom. I fear the widespread loss of these rich, life-sustaining habitats should these programs be removed.

16. I am committed to agricultural practices that work with, rather than fight against, the land's natural features, helping to ensure that there will be arable farmland for future generations. For instance, I have practiced 100% no-till farming for over 30 years. It breaks my heart to observe erosion caused by agricultural practices. My commitment to

5

Case 6:24-cv-02016-CJW-MAR    Document 23-9    Filed 10/02/24    Page 5 of 6

17. no-till farming has helped reduce erosion on my farmland, with the added benefit of conserving soil moisture, reducing soil temperatures, and reducing weed growth. I believe these practices are more important now than ever given the changing climate we are experiencing in South Dakota.

17. As a kid, I remember a gravel road that ran north of my hometown of Holabird, lined with just one field followed by ten miles of native grassland. Sadly, much of that has disappeared. There has been such a plow-out of farmland in our country that native grasslands are much rarer than they once were. The Midwest's remaining grasslands and wetlands are essential for preserving the health of our farmlands and the broader environment.

18. Swampbuster and Sodbuster support resilient agricultural systems and help sustain the economic viability of small-scale farming communities. In my opinion, eliminating the protections afforded by Swampbuster and Sodbuster would do nothing to help farmers, but would encourage private parties to profit from environmental degradation. As such, I support DRA's intervention in the above-captioned lawsuit to represent the interests of farmers like me.

Dated: 9-23-2024      Name: Nick Nemec

Nick Nemec