IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| CTM HOLDINGS, LLC, an Iowa limited liability company, | ) ) ) | No. 24-CV-02016-CJW-MAR |
| Plaintiff, | ) ) | **Oral Argument Requested** |
| vs. | ) ) | |
| THE UNITED STATES DEPARTMENT OF AGRICULTURE; GARY WASHINGTON, in his official capacity as Acting Secretary of the United States Department of Agriculture; THE NATURAL RESOURCES CONSERVATION SERVICE; LOUIS ASPEY, in his official capacity as Chief of the Natural Resources Conservation Service; and JON HUBBERT, in his official capacity as Iowa State Conservationist,[1] | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

---

[1] Gary Washington is the Acting Secretary of the United States Department of Agriculture, and Louis Aspey is the Acting Chief of the Natural Resources Conservation Service. Mr. Washington and Mr. Aspey are substituted for Mr. Vilsack and Mr. Cosby, respectively, pursuant to Fed. R. Civ. P 25(d). Consistent with the rule, this substitution occurs "automatically" and without further order of the Court.

# **Table of Contents**

INTRODUCTION ........................................................................................................... 3

BACKGROUND ......................................................................................................... 4

   I.   Statutory and Regulatory Background ............................................................. 4

   II.  Factual Background ........................................................................................ 5

STANDARD OF REVIEW ......................................................................................... 6

ARGUMENT .............................................................................................................. 7

   I.   The Court Should Dismiss the Case, Because CTM Has Not Been Harmed by the Statute and Regulations it Challenges. ...................................................... 7

   II.  The Swampbuster Statute is Constitutional. ................................................. 12

   III. USDA'S Rules Relating to Requests to Review a Wetland Determination and Defining a "Converted Wetland" Are Supported by the Best Interpretation of the Statute. ................................................................................................. 20

      A.   USDA's standards for requesting review of a wetland determination are consistent with the best interpretation of the Swampbuster statute. ........ 20

      B.   The Rule Defining a "Converted Wetland" is Consistent with the Statutory Definition. ........................................................................................... 24

   IV. Any "As Applied" Challenge Should be Dismissed. ...................................... 26

CONCLUSION ........................................................................................................... 27

# INTRODUCTION

Based on the undisputed record, the Court should grant summary judgment in favor of the Defendant United States of America on all claims raised by Plaintiff CTM Holdings, LLC ("CTM"). First, CTM has not been harmed by the provisions it now challenges. Contrary to its allegations, CTM failed to request that the United States Department of Agriculture ("USDA") review the certified wetland determination it now disputes. As a result, there is no final agency action for this Court to review. Likewise, CTM alleges that it is entitled to compensation under the Fifth Amendment but failed to request compensation in compliance with the Tucker Act. If the Court chooses to address the substance of CTM's arguments despite its procedural shortcomings, the United States is entitled to judgment on each of them. Fundamentally, CTM's arguments rely on a flawed premise: that Swampbuster directly regulates farmers' use of their land. It does not. Instead, it simply places a condition on government spending. The Swampbuster provisions are fully within Congress's Spending Clause authority and do not constitute an uncompensated Fifth Amendment taking, because they are simply conditions landowners voluntarily accept in exchange for their participation in certain farm benefit programs. Next, USDA's regulations for requesting review of a final wetland determination and its definition of "converted wetland" are within its statutory authority. Finally, CTM's "as applied" challenges to the specific wetland determination at issue should be dismissed as CTM has presented no competent

3

evidence contradicting the wetland determination. Accordingly, the Court should grant the United States' Motion for Summary Judgment.

BACKGROUND

I.    <u>Statutory and Regulatory Background</u>

When it passed the Food Security Act of 1985 (the "Food Security Act"), Congress attempted to fix a problem it had inadvertently caused: federal farm benefit programs created financial incentives speeding the conversion of the nation's shrinking wetland areas to croplands. *Gunn v. U.S. Dep't of Agric.*, <u>118 F.3d 1233, 1235</u> (8th Cir. 1997). Congress's solution, known as Swampbuster, Pub. L. No. 99-198, tit. XII, subtit. A-C, <u>99 Stat. 1345</u>, <u>1504-08</u>, conditions participation in certain USDA loan and subsidy programs on participants not converting wetland areas to cropland, subject to a host of exemptions. <u>16 U.S.C. §§ 3821(a)-(d)</u>, <u>3822(b)</u>. Swampbuster does not "make illegal the conversion of wetlands to agricultural use, but . . . provide[s] that any agricultural production on a converted wetland would cause the farmer to forfeit his eligibility for a number of federal farm-assistance programs." *Gunn*, <u>118 F.3d at 1235</u>. USDA is responsible for delineating, determining, and certifying wetlands located on farmland. <u>16 U.S.C. § 3822(a)</u>. USDA's National Resources Conservation Service ("NRCS") is responsible for making technical determinations and for conducting monitoring activities of wetlands located on farmland. <u>16 U.S.C. § 3822(j)</u>. NRCS has developed procedures to delineate wetland areas. <u>7 C.F.R. § 12.31</u>.

4

II.    Factual Background

CTM is a limited liability company, through which manager James Conlan ("Conlan") owns Iowa farmland. (USDA App. 57)[2]. CTM purchased 71.85 acres of land in Delaware County, Iowa (the "Subject Property") in September 2022. (USDA App. 52). Prior to CTM's purchase of the Subject Property, Conlan was aware that, in April 2010, NRCS had determined that a 9-acre portion of the Subject Property (the "Wetland Areas") constitutes wetlands as defined by Swampbuster (the "2010 Certified Wetland Determination.") (USDA App. 22-28, 56). Prior to the purchase, Conlan expressed that he was interested in removing trees from both the wetland and non-wetland portions of the Subject Property and seeking a review of some or all of the 2010 Certified Wetland Determination. (USDA App. 56-57). Conlan stated that he intended to remove the entire trees from the non-wetland areas but would not remove the stumps of any trees in the Wetland Areas to remain in compliance with Swampbuster. (USDA App. 46). USDA officials informed Conlan that CTM would need to request a review of the 2010 Certified Wetland Determination if believed it was in error and would also need to request a new wetland determination of the areas of the Subject Property not covered by the 2010 Certified Wetland Determination. (USDA App. 10, ¶¶ 7-8). Despite Conlan having expressed an intent to do so, CTM has never requested NRCS to review the 2010 Certified Wetland Determination. (USDA App. 12, ¶¶ 15-16).

---

[2] "USDA App." and "SMF" refers to the Appendix and Statement of Material Facts, respectively, which were filed contemporaneously with this Memorandum.

5

On October 14, 2022, CTM submitted to NRCS form AD-1026 (Highly Erodible Land Conservation (HELC) and Wetland Conservation (WC) Certification), which requested a new wetland determination (not a review of the Prior Determination.) (USDA App. 11, ¶ 10, 29-30). In response, NRCS performed a Certified Wetland Determination of the areas of the Subject Property not covered by the 2010 Certified Wetland Determination, determining that none of the newly reviewed property constitutes wetlands (the "2023 Certified Wetland Determination.") (USDA App. 32-40). On January 23, 2023, NRCS sent CTM a letter informing it that NRCS could not complete a new wetland determination for the area covered by the 2010 Certified Wetland Determination. (USDA App. 41-42). However, the letter further informed CTM that if it disagreed with the 2010 Certified Wetland Determination, it could make a request for review in writing, identifying either a natural event that altered the topography or hydrology of the Wetland Areas or an error in the 2010 Certified Wetland Determination. (*Id*.) CTM did not make such a request. (USDA App. 12, ¶¶ 15-16). Instead, CTM filed its Complaint on April 16, 2024.

<u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when, "viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, <u>477 U.S.317, 323-24</u> (1986). The movant must first "identify those portions of the record which it believes demonstrate the absence of material fact." *Torgerson*

6

*v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (cleaned up). If it does so, the nonmovant then must identify evidentiary materials "that set out specific facts showing that there is a genuine issue for trial." *Id.* "[S]ummary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute." *Doss v. McKinney*, 2016 WL 160735, *3 (N.D. Iowa 2016) (*citing Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617,620 (8th Cir. 2006)).

## ARGUMENT

I.     The Court Should Dismiss the Case, Because CTM Has Not Been Harmed by the Statute and Regulations it Challenges.

The undisputed facts do not support CTM's contentions that it has been harmed by the Swampbuster provisions it challenges. CTM has not alleged any particular injury caused by those provisions. Moreover, CTM has not been harmed by the review provision, because it never requested review. Finally, CTM has not been harmed by an alleged uncompensated taking, because it has not requested compensation. Thus, the Court should grant judgment in favor of the United States.

CTM has not established that it has been injured as a result of the application of Swampbuster on the Subject Property. "To have standing, a plaintiff must allege an injury that is fairly traceable to the defendant's conduct, and the requested relief must be likely to redress the alleged injury." *In re Senior Cottages of America, LLC*, 482 F.3d 997, 1004 (2007). "The party invoking federal jurisdiction bears the burden of establishing standing – and, at the summary judgment stage, such a party can no longer rest on mere allegations, but must set forth … specific

7

facts." *Clapper v. Amnesty Intern. USA*, <u>568 U.S. 398, 412</u> (2013). Allegations constituting a "speculative chain of possibilities" do not establish that an injury is fairly traceable. *Id.* at 414.

CTM alleges that the Certified Wetland Determination creates a Hobson's Choice between giving up "all uses of the 9 acres" of determined wetlands and losing all USDA benefits. (USDA App. 19, ¶ 54). But the actual choice CTM faces is not nearly so stark. CTM can lose eligibility to participate in the affected farm benefit programs only if it "converts a wetland by draining, dredging, filling, leveling, or any other means for the purpose, or to have the effect, of making the production of an agricultural commodity possible on such converted wetland." <u>16 U.S.C. § 3821(d)(1)</u>. Any future harm that CTM foresees is no more than the result of a "speculative chain of possibilities."

CTM would only become ineligible if: (1) before altering or manipulating the land, CTM had not requested review of the 2010 Certified Wetland Determination and established that the land is not in fact a wetland (as it alleges in its Complaint); (2) the alteration is for the purpose, or to have the effect, of producing a commodity; (3) the produced commodity meets the definition of "agricultural commodity" found in <u>7 C.F.R. § 12.2(a)</u>; <u>(4)</u> production of the agricultural commodity would not have been possible but for the action taken, *see* 7 C.F.R. 12.2(a); (5) the land does not meet the requirements for the prior-converted cropland exemption set forth in <u>7 C.F.R. § 12.5(b)(1)(ii)</u>; <u>(6)</u> the actions have more than "a minimal effect on the wetland functions and values of wetlands in the area," *see* <u>7 C.F.R. § 12.5(b)(1)(v)</u>;

(7) the area was not farmed under natural conditions in accordance with 7 C.F.R. § 12.5(b)(3); (8) CTM did not adequately mitigate wetland loss, *see* 7 C.F.R. § 12.5(b)(4); (9) the conversion does not meet the requirements of the good-faith exemption set forth in 7 C.F.R. § 12.5(b)(5); and (10) the action does not meet a host of other exemption criteria found in the applicable regulations. See 7 C.F.R. §§ 12.5, 12.13. And the period of ineligibility would only last until CTM restored the converted wetlands. CTM even alleges that the ineligibility analysis would fail at its first step, because (it contends) the subject property is not "wetland." (USDA App. 19 ¶ 53). It further alleges that USDA regulations prevent the removal of trees from the Subject Property. (USDA App. 19 ¶ 52). But logging activities alone would not lead to ineligibility, because logging activity that does not remove the stumps does not have the purpose or effect of making possible the "production of an agricultural commodity." Simply put, CTM does no more than speculate that it would face any future program ineligibility.

The traceability of CTM's speculative future injury is further attenuated by the fact that it has never asked NRCS to review the 2010 Certified Wetland Determination. In its Complaint, CTM alleges that it did so and that NRCS denied this request, "stating that there was no evidence of a natural event changing the land and that the NRCS did not believe the prior determination had any errors." (USDA App. 17-18 ¶ 44, 20 ¶ 95). But these allegations are entirely inconsistent with the facts. NRCS never denied a request for review, because CTM never requested it. NRCS informed CTM that it could make a written request for review

of the 2010 Certified Wetland Determination by identifying either a natural event that changed the hydrology or topography of the covered area or an error in the established determination. (USDA App. 41-42). Instead of requesting agency review, CTM filed this suit. (USDA App. 12, ¶¶ 15-16). If CTM's allegations—that the subject property contains no wetland areas and the 2010 Certified Wetland Determination is mistaken—prove true, CTM can seek full relief by properly requesting review. Without having done so, CTM does not have standing and the Court should dismiss this case.

Additionally, the letter CTM challenges, which merely identifies the 2010 Certified Wetland Determination and explains the process for requesting review, does not constitute reviewable final agency action. Final action by an agency is a prerequisite to judicial review under the Administrative Procedure Act ("APA"). 5 U.S.C. § 704. Two conditions must be satisfied for an agency action to be "final": "First, the action must mark the consummation of the agency's decision-making process. The agency's action cannot be tentative or interlocutory in nature. Second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. United States Corps of Engineers*, 888 F.3d 906, 915 (8th Cir. 2018) (cleaned up). "Generally, an agency does not inflict injury merely by expressing its view of the law." *Id.* Indeed, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Pakdel v. City & Cnty. of San Francisco, California*, 594 U.S. 474, 479 (2021)

(quotation omitted) (stating the administrative-exhaustion doctrine). Because CTM never requested review of the 2010 Certified Wetland Determination, NRCS has taken no action, let alone final action, related to any review request. Accordingly, CTM has also failed to exhaust its administrative remedies and the Court should dismiss this case.

Finally, to the extent CTM asserts it is entitled to compensation beyond the benefits it receives by voluntarily participating in USDA farm programs, the Court lacks subject matter jurisdiction. All "[f]ederal courts are courts of limited jurisdiction, possessing only the power authorized by the Constitution and statute." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). The Tucker Act provides the Court of Federal Claims exclusive jurisdiction over claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department."[3] 28 U.S.C. § 1491(a)(1). "A claim for just compensation under the Takings Clause of the Fifth Amendment of the United States Constitution 'must be brought in the [United States] Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statutes.'" *Altair Glob. Credit Opportunities Fund (A), LLC v. United States*, 138 Fed. Cl. 742, 754

---

[3] Separately, 28 U.S.C. § 1346(a)(2), the "Little Tucker Act," provides district courts jurisdiction concurrent with the Court of Federal Claims for civil actions against the United States founded upon the Constitution, "not exceeding $10,000 in amount." CTM has not invoked jurisdiction under the Little Tucker Act and has not alleged that its Takings Clause claim does not exceed $10,000. Whereas the Little Tucker Act creates jurisdiction in the district courts concurrent with the Court of Federal Claims for covered claims of $10,000 or less, the Tucker Act assigns jurisdiction to the Court of Federal Claims regardless of monetary amount. *United States v. Bormes*, 568 U.S. 6, 10, n. 2 (2012).

11

(2018) (quoting *E. Enters. v. Apfel*, 524 U.S. 498, 520 (1998)). To determine whether the relevant statutes displace Tucker Act jurisdiction, district courts "must examine the purpose of the statute, the entirety of its text, and the structure of review that it establishes." *Altair*, 138 Fed. Cl. at 755 (quoting *Horne v. Department of Agriculture*, 569 U.S. 513, 527 (2013)). "Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." *Glosemeyer v. Missouri-Kansas-Texas R.R.*, 879 F.2d 316, 325 (8th Cir. 1989) (*quoting Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984)). Because Swampbuster does not take or regulate any private property, no Swampbuster provision displaces Tucker Act jurisdiction over claims arising under the Takings Clause. CTM asserts that it is entitled to compensation under the Takings Clause as a result of the effect of Swampbuster on the Subject Property. Although the United States disagrees with this premise, the Tucker Act requires such a claim to be brought in the Court of Federal Claims, and this case should be dismissed for lack of subject matter jurisdiction.

II.     The Swampbuster Statute is Constitutional.

Neither CTM's assertion that the Swampbuster provisions exceed Congress' Commerce Clause authority nor its assertion that Swampbuster effects an unconstitutional uncompensated taking have merit. As a result, the Court should grant judgment in favor of the United States. Swampbuster is not an exercise of Commerce Clause authority, because it does not directly regulate land use. Rather,

the conditions on spending that the Swampbuster provisions create are permissible exercises of Congress's Spending Clause authority, and Swampbuster simply sets permissible parameters for the receipt of those benefits.

Article I, Section 8 of the Constitution permits Congress to "provide for . . . the general Welfare of the United States." The Supreme Court explained that power thus:

> [T]he power of Congress to authorize expenditure of public moneys for public purposes is not limited by the direct grants of legislative power found in the Constitution. Thus, objectives not thought to be within Article I's enumerated legislative fields [such as the Commerce Clause] may nevertheless be attained through the use of the spending power and the conditional grant of federal funds.

*South Dakota v. Dole*, 483 U.S. 203, 207 (1987). Consistent with this power, Congress can choose to support agricultural production through its farm benefit programs. It can similarly choose to impose conditions that incentivize practices that are in the public interest. The Swampbuster provisions, which are one set of such conditions, are "a valid exercise of the spending power." *U.S. v. Dierckman*, 201 F.3d 915, 922 (7th Cir. 2000).

Swampbuster does not directly regulate land use. Farmers voluntarily choose to participate in farm programs that are subject to Swampbuster, and the only consequence for choosing to convert identified wetlands to agricultural use is ineligibility for these same farm programs. 16 U.S.C. § 3821. Spending conditions are exercises of Spending Clause, and not Commerce Clause, authority. *Dole*, 483 U.S. at 207. Thus, this Court need not consider whether Swampbuster is also permissible under the Commerce Clause.

*Dole* establishes five limiting factors on Spending Clause authority when Congress places conditions on appropriations to the States:

> (1) the legislation must be in the pursuit of the general welfare, (2) conditions on the state's receipt of federal funds must be [unambiguous], (3) conditions … must be related to the federal interest …, (4) conditions must not be prohibited by other constitutional provisions, and finally, (5) the circumstances must not be so coercive that pressure turns into compulsion.

*Van Wyhe v. Reisch*, 581 F.3d 639, 650 (8th Cir. 2009). The second and fifth factors are motivated by the Tenth Amendment's preservation of state sovereignty and therefore do not apply to conditions placed on payments to non-sovereigns. *See National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 585 (2012) (limits on coercive spending are motivated by a concern that "the Federal Government might employ its taxing power to exert a power akin to undue influence upon the States."). Farm corporations, like CTM, lack "any sovereignty that can be trampled upon." *Horn Farms, Inc. v. Johanns*, 397 F.3d 472, 476-77 (7th Cir. 2005). And the Swampbuster provisions do not make the related farm benefit programs any more coercive or compulsory. Farm subsidies often require farmers to grow a particular agricultural product to receive the subsidy. Incentivizing certain methods of "how the farm uses (or misuses) agricultural land" is no more coercive than incentivizing the agricultural products the farm produces. *Id.* at 477. These types of incentives are a necessary part of ensuring Congress's spending promotes the general welfare pursuant to the Spending Clause.

Put another way, the Spending Clause permits Congress to promote the general welfare by offering payments on conditions Congress identifies. Individuals

14

and corporations may then choose whether to accept the payments and the corresponding conditions. Here, CTM wants the former without the latter. But doing so would not promote the purpose of the Spending Clause; it would frustrate it. Congress has decided that preserving wetlands promotes the general welfare.[4] Regardless of whether Congress could advance this public good by direct regulation, the Spending Clause permits it to choose not to spend public funds to promote agricultural uses that work against this identified public good. In this case, CTM asks that it be allowed to have all of the benefits the farm programs offer without accepting their costs. But Congress's power of the purse necessarily allows it to decide both how to spend and how not to spend. Accordingly, federal courts have repeatedly held that the Food Security Act and its Swampbuster provisions are an appropriate exercise of the Spending Clause. *See Horn Farms*, 397 F.3d at 476-77; *Dierckman*, 201 F.3d at 922; *Foster v. United States Dep't of Agric.*, 609 F. Supp. 3d 769, 781-82 (D.S.D. 2022), *cert. granted, judgment vacated on other grounds by Foster v. Dep't of Agric.*, 144 S. Ct. 2707 (2024); *see also Citizens for Honesty & Integrity in Reg'l Planning v. Cnty. of San Diego*, 258 F. Supp. 2d 1132, 1136 (S.D. Cal. 2003) (recognizing Swampbuster as Spending Clause legislation, which is "much in the nature of a contract: in return for federal funds, the [recipients] agree

---

[4] CTM admits as much in its Complaint. See USDA App. 14, ¶ 14 ("The stated purpose of … Swampbuster is to conserve and preserve highly erodible land and wetlands to protect natural resources for a public purpose, to '[a]ssist in preserving the values, acreage, and functions of the Nation's wetlands.'"

15

to comply with federally imposed conditions") (cleaned up). Therefore, Swampbuster cannot "violate" the Commerce Clause.

Likewise, CTM's argument that Swampbuster unlawfully requires landowners to waive rights under the Constitution's Takings Clause fails on its most basic premise: Swampbuster does not independently take anything from, or require anything of, the landowner. Rather, landowners choose to abide by its terms to participate in agricultural programs. And Swampbuster's effects on participants are far less dire than CTM suggests. Swampbuster does not effect anything akin to a conservation easement, nor does it prevent valuable use of any portion of the land. As discussed above, Congress may choose to pay funds in exchange for goods, services, or conduct that benefits the general welfare, on the conditions it identifies.

First, CTM's attempts to analogize Swampbuster to a state law easement illustrate why Swampbuster does not effect a taking. A fundamental tenet of an easement is that the grantee has the right to enforce the terms of the easement, including by specific performance. *See*, *e.g. Paul v. Blakely*, 243 Iowa 355 (1952). This is not true of Swampbuster. A landowner of identified wetlands can do with the wetlands whatever it may wish. It may use the wetland for any purpose while preserving its status as wetland or can even alter or destroy the wetland. If the alteration is for any purpose other than to permit production of an agricultural commodity that would not have been possible without the alteration, the landowner has not created a "converted wetland" and does not lose any program eligibility.

16 U.S.C. §§ 3801(7)(A); 3821(a); *see also* 7 C.F.R. § 12.5(b)(1)(iv) (setting forth an exemption from ineligibility for actions that may technically convert wetlands but do so for a purpose other than producing an agricultural commodity). Even when a landowner alters a wetland to make agricultural production possible, the only consequence is that USDA must limit the landowner's eligibility for certain federal loan or payment programs "proportionate to the severity of the violation." 16 U.S.C. § 3821(a)(2). The government's inability to directly enforce any property right makes Swampbuster entirely different than the regulations CTM cites involving physical takings. Unlike the California "right to access" regulation in *Cedar Point Nursery*, Swampbuster does not grant anyone a right to access CTM's private property.[5] *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 144 (2021). This difference is not slight; rather, Swampbuster does not appropriate any property right at all.

Fundamentally, Swampbuster creates conditions participants voluntarily accept in exchange for participating in the related agricultural programs. Participants may choose not to participate in the programs at any time. Conditions of participating in a government program that are rationally related to a legitimate Government interest "can hardly be called a taking" when participants are aware of the conditions. *Ruckelhaus v. Monsanto Co.*, 467 U.S. 986, 1007 (1984); *see Barnes v. Gorman*, 536 U.S. 181, 186 (2002) ("We have repeatedly characterized . . . Spending Clause legislation as 'much in the nature of a contract: in return for federal funds,

---

[5] See 16 U.S.C. § 3822(a)(2) (the USDA "shall make a reasonable effort to make an on-site wetland determination prior to" delineating property as wetland, but only "[o]n request of a person").

17

the [recipients] agree to comply with federally imposed conditions.'"). Voluntary participation in a government program "forecloses the possibility that the [program's conditions] could result in an imposed taking of private property which would give rise to the constitutional right of just compensation" even when the program offers a "strong financial inducement to participate." *Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Dept. of Public Welfare*, 742 F.2d 442, 446 (8th Cir. 1984); *Southeast Arkansas Hospice, Inc. v. Burwell*, 815 F.3d 448, 450 (8th Cir. 2016) (finding a company's voluntary participation in Medicare program forecloses argument that Medicare cap on reimbursement constitutes a taking). This is also true of Swampbuster. Because farmers voluntarily choose whether to participate in farm benefit programs, the government has not intruded on any property interest. Some producers choose to grow unsubsidized agricultural products and thereby receive no subsidy. They have no Takings Clause claim to challenge the program's condition that it only subsidized a particular product. Just the same, producers that choose to grow agricultural products by converting wetlands have no Takings Clause claim to challenge the same conditions. The farmer retains the ultimate choices of which products to grow, how to grow them, and whether to participate in farm benefit programs. As a result, the government has not taken anything.

Cases involving excessive conditions on awarding land use permits are not analogous. Because a landowner cannot exercise certain property rights without a permit, a landowner is compelled to accept the conditions the government places on

18

granting it. For example, the property owner in *Koontz* could not build on his property at all without receiving permits granted by the water district. *Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595, 601 (2013). These land use permit cases are motivated by the reality "that land-use permit applicants are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to deny a permit that is worth far more than property it would like to take." *Id.* at 605-06. No such broad discretion exists with Swampbuster. The terms are defined by statute. 16 U.S.C. § 3821. A landowner can assess the costs and benefits of participating in agricultural programs conditioned on Swampbuster compliance. And, as discussed above, even those landowners who choose to participate in programs that are subject to Swampbuster may choose to use the property in any way at all, with program ineligibility as the only consequence.

CTM's allegations are built upon the flawed premise that the Takings Clause prohibits conditions on government spending for programs in which CTM voluntarily participates. Such an interpretation would fully undermine the government's authority to spend to advance the general welfare. Take for example an offer by the government to purchase land on which it may build a post office. The government may condition its purchase on the land being suitable for building, not require the destruction of forests or wetlands, or even that the seller restore a polluted lake on the site prior to closing. These conditions do not violate the Takings Clause, because the landowner may voluntarily choose whether to sell. This is true

19

regardless of the amount of compensation offered, even if the offered compensation is higher than market value and is therefore a benefit that the government need not confer. So too of the agricultural programs conditioned on Swampbuster. The government offers certain benefit programs to farmers that come with conditions, including the prohibition on converting wetlands for agricultural production. And landowners and farmers are free to assess whether the government offers a fair deal. Because the Swampbuster provisions are merely conditions on federal spending programs in which CTM voluntarily participates, they cannot be an unlawful taking.

III.  <u>USDA'S Rules Relating to Requests to Review a Wetland Determination and Defining a "Converted Wetland" Are Supported by the Best Interpretation of the Statute.</u>

   A.  <u>USDA's standards for requesting review of a wetland determination are consistent with the best interpretation of the Swampbuster statute.</u>

The Swampbuster statute requires the USDA to "delineate wetlands on wetland delineation maps," provide notice to affected persons, certify that the map is sufficient for eligibility determination, and provide affected persons an opportunity to appeal. <u>16 U.S.C. § 3822</u>. After USDA has done so, "[n]o person shall be adversely affected because of having taken an action" in reliance on the wetland delineation map, even if the agency later revisits the delineation. *Id.* Once the certification is final, the USDA may not revisit its determination "unless requested by the person" affected by the certification. *Id.* Instead, the final certification remains valid "as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification

20

by" USDA. *Id.* (the "Swampbuster Review Provision"). The statute is silent about how an affected person requests review, the necessary contents of such a request, or the standards by which USDA should determine a review.

CTM argues that this silence means that there are no such standards, and that the statute requires NRCS to invalidate an existing wetland determination and perform a new determination every time a landowner requests that it do so. But Congress expressly commanded USDA to fill in these standards with "such regulations as are necessary to implement programs under this chapter." 16 U.S.C. § 3846. Based on this command, USDA adopted a regulation permitting review only "if a natural event alters the topography or hydrology of the subject land to the extent that the final certification is no longer a reliable indication of site conditions, or if NRCS concurs with an affected person that an error exists in the current wetland determination." 7 C.F.R. § 12.30(c)(6) (the "Review Regulation"). USDA determined that these parameters are "necessary to the administration of the Act." NAD Director Decision, Case No. 2014E000753 (June 22, 2016), available at https://usda-nad-local1.entellitrak.com/etk-usda-nad-prod-temp/page.request.do?page=page.highlightedFile&id=93025&query_text=&query_text2=&citation; USDA App. 5 ¶ 15. "Absent such reasonable parameters, participants could continually challenge a wetland determination, which would be expensive for NRCS, allow for endless litigation of the same issues, and undermine the wetland determination process." *Id.* The Review Regulation is a reasonable

exercise of Congress's delegation of rulemaking authority to USDA and is most consistent with its text, purpose, and history.

Just last year, the Eighth Circuit Court of Appeals found that the Swampbuster Review Provision is ambiguous, that the interpretation CTM sets forth here is absurd, and that the "Review Regulation imposes reasonable procedural requirements a farmer must follow to make an effective review request and thereby delimit a prior wetland certification." *Foster v. United States Dep't of Agric.*, 68 F.4th 372, 378 (8th Cir. 2023), *cert. granted, judgment vacated sub nom. Foster v. Dep't of Agric.*, 144 S. Ct. 2707 (2024). Because the *Foster* decision relied in part on *Chevron* deference, the Supreme Court reversed and remanded the case for further consideration in the wake of the decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). However, *Loper Bright* does not support, much less require, the absurd reading CTM suggests. Certainly, the Court need not simply defer to USDA's statutory interpretation over CTM's conflicting reading. 144 S. Ct. at 2273 ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority."). Traditional rules of statutory interpretation dictate that the Review Regulation is well within USDA's statutory authority.

The time when an affected person "requests review" and thereby invalidates a final wetland determination under the Swampbuster Review Provision is ambiguous for the reasons identified in *Foster*. To "request review" may mean either: (1) to seek review in the manner, and on the grounds, established by rule, or

22

(2) as CTM suggests, to simply ask for review in any manner and on any grounds, or no grounds at all. Because the first meaning is most consistent with the history and structure of the statute and avoids an absurd result, it is the best reading of the Swampbuster Review Provision.

First, the stated purpose of the 1996 amendments that, among other things, added the Swampbuster Review Provision, was to provide greater finality to final wetland delineations by preventing the USDA from unilaterally changing them. *See* Cong. Rec. S4420 (the amendments "give farmers certainty … [by] allow[ing] prior delineations of wetlands to be changed only upon request of the farmer.") To accomplish this, the amendments removed NRCS's authority to reconsider wetland determinations on its own accord, added language stating that those affected by a previously certified wetland delineation could rely on it, and clarified, through the Swampbuster Review Provision, that only an affected person could request review. The USDA's interpretation of the Swampbuster Review Provision and the Review Regulation are consistent with this history. There is no indication that Congress intended to make wetland determinations less final by allowing any affected person to automatically invalidate the determination upon request, as CTM suggests.

The statute's structure also supports USDA's interpretation. Section 3822(a)(3)(B) requires the USDA to "provide an opportunity to appeal the certification prior to the certification becoming final." This language was added by the same 1996 amendments that created the Swampbuster Review Provision. Pub. L. No. 104-127, § 322(a)(3). If the Swampbuster Review Provision were interpreted

to provide affected individuals a perpetual, unilateral right to invalidate a certification for any reason merely by requesting a review, the right to administratively appeal would be duplicative and unnecessary.

Finally, "[t]he absurd results construction canon supports the validity of the Review Regulation." *Foster*, <u>68 F.4th at 377</u>. CTM's proposed interpretation would permit affected persons the unlimited ability to nullify any wetland determination with which they disagreed. Allowing affected persons to endlessly nullify the USDA's attempts to perform its statutory responsibility to issue wetland determinations would frustrate the Swampbuster provisions entirely. (USDA App. 5, ¶ 15). There is no indication in either the statute's language or history that Congress intended to make the Swampbuster Review Provision a poison pill. Instead, the text and history show that the Swampbuster Review Provision simply clarifies that only an affected person, not the USDA, can request review. And when an affected person requests review in the manner prescribed by USDA, the final certified wetland determination is invalidated until the agency completes its review. Because the Review Regulation is consistent with the best reading and interpretation of the Swampbuster Review Provision, it should not be set aside.

B. <u>The Rule Defining a "Converted Wetland" is Consistent with the Statutory Definition.</u>

By adding an example that falls within the statutory language, USDA's rule defining a converted wetland neither exceeds nor modifies the statute. CTM's argument is simple: the agency's rule defining a converted wetland is not identical to the statutory definition and, because Congress did not expressly grant the agency

24

authority to define a converted wetland, the rule must be invalidated. But CTM has presented no evidence whatsoever that the additional language in the rule exceeds, rather than clarifies, the statutory language. CTM's apparent argument that definitions found in regulations may not differ from statutory definitions in any way is unsupported and would invalidate all attempts by federal agencies to provide greater clarity of broad statutory terms.

The statute defines a converted wetland as a wetland "that has been drained, dredged, filled, leveled, or otherwise manipulated (including any activity that results in impairing or reducing the flow, circulation, or reach of water)." 16 U.S.C. § 3801(a)(7)A). The rule adds "the removal of woody vegetation" to the parenthetical "including" language. 7 C.F.R. § 12.2(a). Simply adding this language does not alter the statutory definition, because "the removal of woody vegetation" is an example of how a wetland could be "otherwise manipulated" for the purpose of, or to have the effect of, making an agricultural commodity possible. USDA App. 6) Nothing supports that the addition of *any* clarifying language exceeds USDA's authority.

Further, USDA's ability to add clarifying language is supported by *Loper Bright*, which recognized that "the 'interpretations and opinions' of the relevant agency, 'made in pursuance of official duty' and 'based upon ... specialized experience,' 'constitute[d] a body of experience and informed judgment to which courts and litigants [could] properly resort for guidance,' even on legal questions." 144 S. Ct. at 2259 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). The rule defining "converted wetland" is the type of guidance contemplated by *Loper Bright*.

USDA has experience administering Swampbuster and assessing the ways landowners may drain, dredge fill, level, or otherwise manipulate a wetland, as well as experience determining when the listed types of manipulation are done "for the purpose of, or to have the effect of making possible the production of an agricultural commodity. (USDA App. 6). This is expertise and experience not shared by Congress or the Court. The Eighth Circuit previously addressed and rejected a similar challenge to this parenthetical language in *Ballanger v. Johanns*, 495 F.3d 866, 871 (8th Cir. 2007), and determined that "[the argument] relies too heavily on the statute's illustrative parenthetical to the exclusion of the rest of its text." *Id.* (applying *Chevron* deference but determining that the parenthetical "should not be treated as an additional requirement" and "is merely illustrative of the type of activity that might qualify as manipulation of wetland."). The regulation's clarifying language falls well within the statutory definition and is consistent with the best interpretation of the statutory language. As a result, the rule defining a certified wetland should not be set aside.

IV.     Any "As Applied" Challenge Should be Dismissed.

While not presented as a separate claim, CTM asks the Court to set aside both the 2010 and 2023 Certified Wetland Determinations.[6] (USDA App. 21 ¶ E. But the record is devoid of any evidence contradicting these determinations.

---

[6] Because the 2023 Certified Wetland Determination determined that the entirety of the area reviewed was not wetland, it is unclear how CTM has been harmed. Any challenge to the 2023 Certified Wetland Determination should be dismissed for lack of standing.

26

Summary judgment is appropriate when the "nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial." *Bedford v. Doe*, <u>880 F.3d 993, 996</u> (8th Cir. 2018). Here, discovery shows that CTM's only supporting evidence is Mr. Conlan's lay assertions alleging that the property contains no wetlands. Without identifying any error in the 2010 Certified Wetland Determination, or presenting any evidence to that end, CTM cannot carry its burden of persuasion. Accordingly, the Court should reject any bid by CTM to overturn the Certified Wetland Determinations, and grant judgment in favor of the United States.

CONCLUSION

The undisputed record supports judgment in favor of the United States on all of CTM's claims. First, CTM cannot establish standing, because any anticipated harm is speculative, it has not requested the review it contends it was unfairly denied, and it has not sought the compensation it argues has been unconstitutionally withheld. If the Court reaches the merits, CTM's facial challenges to the Swampbuster statute and regulations are legal questions most amenable to summary judgment. Swampbuster is an appropriate exercise of Congress's Spending Clause authority and, as a set of parameters on benefit programs in which landowners voluntarily participate, do not constitute an uncompensated taking. The agency's regulations for requesting review of a Certified Wetland Determination and definition of "converted wetland" are consistent with the agency's statutory authority and best interpretation of the statutory language.

27

Finally, the record contains no evidence contradicting the 2010 or 2023 Certified Wetland Determinations. For all these reasons, the Court should grant summary judgment in favor of the United States.

Respectfully submitted,

TIMOTHY T. DUAX
United States Attorney

By:     */s/ Brandon J. Gray*
        */s/ Brian J. Keogh*

BRANDON J. GRAY
BRIAN J. KEOGH
Assistant United States Attorney
111 7th Avenue SE, Box 1
Cedar Rapids, IA 52401
Phone: (319) 363-6333
Fax: (319) 363-1990
Brandon.Gray2@usdoj.gov
Brian.Keogh@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY:   */s/ Ashley Wessels*

28