IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| CTM HOLDINGS, LLC, an Iowa limited liability company,<br><br>    Plaintiff,<br><br>    vs.<br><br>THE UNITED STATES DEPARTMENT OF AGRICULTURE; THOMAS J. VILSACK, in his official capacity as the Secretary of the United States Department of Agriculture; THE NATURAL RESOURCES CONSERVATION SERVICE; TERRY COSBY, in his official capacity as Chief of the Natural Resources Conservation Service; and JON HUBBERT, in his official capacity as Iowa State Conservationist,<br><br>    Defendants,<br><br>IOWA FARMERS UNION, IOWA ENVIRONMENTAL COUNCIL, FOOD & WATER WATCH, and DAKOTA RURAL ACTION,<br><br>    Intervenors. | Case No. 24-CV-02016-CJW-MAR<br><br><br><br>**INTERVENORS' APPENDIX IN SUPPORT OF SUMMARY JUDGMENT AND/OR DISMISSAL** |

## TABLE OF CONTENTS

### Volume I

**Description**                        **Page**

Plaintiff's Amended Responses to Intervenors' First Interrogatories……………………………..1

Plaintiff's Response to Defendants' First Interrogatories………………………………………2

Plaintiff's Amended Document Production in Response to Intervenors' First Request for Production (CTM Holdings 0001–04, 0033–37, 0047–62, 0075–76, 0082–0102)……………...22

Defendants' Initial Disclosures Production (USDA-000001–8)………………………………...70

## Volume II

Defendants' Initial Disclosures Production (USDA-000009–33, 000047–48, 000077–86).......78

## Volume III

Defendants' Initial Disclosures Production USDA-000107–112, 000140–143)..................116

Plaintiff's Complaint for Declaratory and Injunctive Relief (ECF No. 1)........................126

## Volume IV

Karina Atkins, *More Midwestern wetlands threatened as federal lawsuit targets farm programs*, CHICAGO TRIBUNE (Jan. 2, 2025, 5:00 AM), https://www.chicagotribune.com/2025/01/02/wetlands-swampbuster-farming-midwest/..........157

Megan Stubbs & Stephanie Rosch, *U.S. Farm Programs: Eligibility and Payment Limits*, CONGRESSIONAL RESEARCH SERVICE (Updated Dec. 7, 2020) (R46248 Version 6), https://crsreports.congress.gov/product/pdf/R/R46248/6...........................................166

Megan Stubbs, *Conservation Compliance and U.S. Farm Policy*, CONGRESSIONAL RESEARCH SERVICE (Updated Oct. 6, 2016) (R42459 Version 27), https://crsreports.congress.gov/product/pdf/R/R42459/27........................................207

Megan Stubbs, *Agricultural Conservation: A Guide to Programs*, CONGRESSIONAL RESEARCH SERVICE (Updated July 28, 2022) (R40763 Version 45), https://crsreports.congress.gov/product/pdf/R/R40763...........................................228

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF IOWA, EASTERN DIVISION

| | |
|---|---|
| CTM HOLDINGS, LLC, an Iowa limited liability company,<br><br>*Plaintiff,*<br><br>vs.<br><br>THE UNITED STATES DEPARTMENT OF AGRICULTURE; THOMAS J. VILSACK, in his official capacity as the Secretary of the United States Department of Agriculture; THE NATURAL RESOURCES CONSERVATION SERVICE; TERRY COSBY, in his official capacity as Chief of the Natural Resources Conservation Service; and JON HUBBERT, in his official capacity as Iowa State Conservationist,<br><br>*Defendants.* | CIVIL NO. 6:24-cv-02016<br><br><br>**PLAINTIFF'S AMENDED RESPONSE TO INTERVENORS' FIRST INTERROGATORIES; CERTIFICATION; CERTIFICATE OF SERVICE** |

**PLAINTIFF'S AMENDED RESPONSE TO INTERVENORS'
FIRST INTERROGATORIES**

Plaintiff CTM Holdings, LLC ("Plaintiff") responds to these Interrogatories in accordance with Rules 26 and 33 of the Federal Rules of Civil Procedure.

**INTERROGATORIES**

**INTERROGATORY NO. 1**: Describe Jim Conlan's current occupation and employer (if any).

Int. App. 6

**ANSWER**:   Jim Conlan currently is a business owner running several companies. He is self-employed.

**INTERROGATORY NO. 2**:  Describe any and all USDA benefits and/or subsidies received by Cory Pfab and/or any other Tenant(s) to whom Plaintiff rents farmland.

**ANSWER**:   Plaintiff objects to this interrogatory because it seeks information from third parties and the information is not within its possession, custody, control, or personal knowledge. This request seeks the information of Plaintiff's tenants which is not within the possession and control or knowledge of Plaintiff. However, this information is within the possession and control of Defendants.

Subject to the foregoing objections, Plaintiff's lease of the Property to tenant Cory Pfab includes the rental of land in the conservation reserve program ("CRP") and it assigned the right to the CRP Payments to Cory Pfab. When Plaintiff purchased the Property in September of 2022, a portion of the land (11.4 acres) was already under a CRP contract. Under Cory Pfab's lease with Plaintiff the 2023 and 2024 CRP payments were paid directly to Cory Pfab. The Property's CRP contract expired on September 30, 2024.

Additionally, Plaintiff is informed and believes, and upon such information and belief, that its tenant Cory Pfab also receives USDA crop insurance subsidy.

However, Plaintiff does not have knowledge if those are the only USDA benefits that tenant Cory Pfab receives.

All of Plaintiff's tenants receive USDA benefits directly from the USDA. So, Plaintiff does not have personal knowledge of which benefits or subsidies they receive, or programs they participate in. However, Plaintiff is informed and believes, and upon such information and belief, that its other tenants have, and/or are, participating in a number of USDA benefits programs, including crop insurance subsidy, farm loans, cost sharing on conservation practices, and disaster relief.

**INTERROGATORY NO. 3**: Describe any and all persons who are "affiliated persons" of Plaintiff such that they stand to lose their USDA benefits as a result of Plaintiff's decision to alter The Wetland.

**ANSWER**:  Plaintiff objects to this interrogatory as vague and ambiguous because the term "affiliated persons" is not defined within this request for interrogatories. Plaintiff also objects to this interrogatory to the extent it calls for legal conclusions as to who qualifies as "affiliated persons", and who "stand[s] to lose their USDA benefits". Based on those objections, Plaintiff also objects to this interrogatory because it is so uncertain and unintelligible that Plaintiff cannot determine the nature of the information sought. Plaintiff also objects to this interrogatory to the extent that it concludes that "Plaintiff[] deci[ded] to alter The Wetland."

Subject to the foregoing objections, Plaintiff responds that Plaintiff has NOT altered any Wetlands on the Property. B&C, LLC is the only affiliated entity referenced in the Complaint. CTM Holdings, LLC is a manager-managed LLC. There are two members: James F. Conlan and Kelly B. Conlan. B&C, LLC is a sole-member LLC. James F. Conlan is the sole member.

**INTERROGATORY NO. 4**:  For each person named in response to Interrogatory 3, above, describe what USDA benefits they currently receive.

**ANSWER**:   Same objections in Interrogatory No. 3. Subject to the foregoing objections, Plaintiff responds that CTM Holdings, LLC and B&C, LLC maintain USDA program eligibility for their tenants to receive all benefits and subsidies. CTM Holdings, LLC, B&C, LLC, James F. Conlan, and Kelly B. Conlan do not receive any USDA benefits directly.

**INTERROGATORY NO. 5:** Describe any and all cost estimates received or solicited by Plaintiff relating to clear cutting and/or removing trees and other vegetation from, or otherwise altering, The Wetland.

**ANSWER:** Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion that "Plaintiff[] deci[ded] to alter The Wetland."

4

Int. App. 4

Subject to the foregoing objection, Plaintiff responds that Plaintiff has NOT altered any Wetlands on the Property. In accordance with Swampbuster, in 2022-23 Plaintiff sold select timber from the Property for a total of $26,500. The logging company removed just the logs and left the stumps and roots in accordance with Swampbuster and Defendants approval.

Respectfully submitted this 15th day of January, 2025.

*/s/ Loren Seehase*

Jeffrey W. McCoy*
California Bar No. 317377
JMcCoy@pacificlegal.org
Paige Gilliard*
California Bar No. 330051
PGilliard@pacificlegal.org
PACIFIC LEGAL FOUNDATION
555 Capital Mall, Suite 1290
Sacramento, CA 95814
(916) 419-7111

Loren A. Seehase*
Hawaii Bar No. 10414
lseehase@libertyjusticecenter.org
Reilly Stephens*
Maryland Bar No.
rstephens@libertyjusticecenter.org
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
(512) 481-4400

James V.F. Dickey
Iowa AT Pin AT0014073
UPPER MIDWEST LAW CENTER
8421 Wayzata Boulevard, Suite 300
Golden Valley, MN
(612) 428-7000
James.Dickey@umwlc.org
*Counsel for Plaintiffs*
*\* Admitted Pro Hac Vice*

5

Pl. App. 6

# <u>CERTIFICATION</u>

I hereby certify the above answers to the Requests for Interrogatories are true and correct to the best of my knowledge.

Date:     01/15/2025          */s/Jim Conlan*
                              Representative of CTM Holdings, LLC,
                              Plaintiff

6

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2025, that I served the foregoing Plaintiff's Amended Responses to Intervenors' First Interrogatories via electronic mail to Intervenors' attorneys of records.

Respectfully submitted this 15ᵗʰ day of January, 2025.

Jeffrey W. McCoy*
California Bar No. 317377
JMcCoy@pacificlegal.org
Paige Gilliard*
California Bar No. 330051
PGilliard@pacificlegal.org
PACIFIC LEGAL FOUNDATION
555 Capital Mall, Suite 1290
Sacramento, CA 95814
(916) 419-7111

*/s/ Loren Seehase*
Loren A. Seehase*
Hawaii Bar No. 10414
lseehase@libertyjusticecenter.org
Reilly Stephens*
Maryland Bar No.
rstephens@libertyjusticecenter.org
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
(512) 481-4400

James V.F. Dickey
Iowa AT Pin AT0014073
UPPER MIDWEST LAW CENTER
8421 Wayzata Boulevard, Suite 300
Golden Valley, MN
(612) 428-7000
James.Dickey@umwlc.org

*Counsel for Plaintiffs*
*\* Admitted Pro Hac Vice*

7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF IOWA, EASTERN DIVISION

| | |
|---|---|
| CTM HOLDINGS, LLC, an Iowa limited liability company, <br><br> *Plaintiff,* <br><br> vs. <br><br> THE UNITED STATES DEPARTMENT OF AGRICULTURE; THOMAS J. VILSACK, in his official capacity as the Secretary of the United States Department of Agriculture; THE NATURAL RESOURCES CONSERVATION SERVICE; TERRY COSBY, in his official capacity as Chief of the Natural Resources Conservation Service; and JON HUBBERT, in his official capacity as Iowa State Conservationist, <br><br> *Defendants.* | CIVIL NO. 6:24-cv-02016 <br><br><br> **PLAINTIFF'S RESPONSE TO DEFENDANTS' FIRST INTERROGATORIES; CERTIFICATION; CERTIFICATE OF SERVICE** |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
FIRST INTERROGATORIES**

Plaintiff CTM Holdings, LLC ("Plaintiff") responds to these Interrogatories in

accordance with Rules 26 and 33 of the Federal Rules of Civil Procedure.

**INTERROGATORIES**

**INTERROGATORY NO. 1**:  Identify each person with whom you consulted,

upon whom you relied, or who otherwise constituted a source of information for you

in the preparation of the answers to these Interrogatories, listing with respect to

each person the Interrogatories with respect to which he or she was consulted, relied upon, or otherwise constituted a source of information.

**ANSWER**:   The answers to these interrogatories were prepared by Plaintiff's managing-member, James F. Conlan, in consultation with Plaintiff's attorneys.

**INTERROGATORY NO. 2**:  Identify each person who may have knowledge relating to the matters set forth in the Complaint, including any and all witnesses to the allegations therein.  For each such person, please state the subject matter and substance of said knowledge or information and his/her address, phone number, and email.

**ANSWER**:

Jim Conlan
c/o Liberty Justice Center

Mr. Conlan, is the managing member of CTM Holdings, LLC. CTM Holdings, LLC is a manager-managed limited liability company. He has knowledge of the Property, CTM's ownership, business dealings, agricultural activity, USDA benefits, CRP contracts, and wetland information.

Matt Tobin
High Point Land Company

2



Mr. Tobin is the realtor that assisted Plaintiff in purchasing the Property. He has knowledge of the Property.

Cory Pfab



Mr. Pfab is the tenant for the Property. He currently rents and farms the Property.

**INTERROGATORY NO. 3**:  For each person named in response to Interrogatory No. 2, state whether a written or recorded statement has been obtained by you or anyone acting on your behalf, including counsel, and identify that document(s).

**ANSWER**:   There are no written or recorded statements for any of the people identified in Interrogatory No.2.

3

**INTERROGATORY NO. 4**: Do you claim that any agent, representative, or employee of the United States made any statements or admissions to you, or others known to you, concerning the events alleged in the Complaint or this lawsuit more generally? If so, state:

    (a)    The name and address of the person making said statements or admissions, and to whom such statements or admissions were made;

    (b)    The date and place where such statements or admissions were made;

    (c)    The circumstances giving rise to such statements or admissions;

    (d)    The substance of such statements or admissions;

    (e)    The substance of any response made to such statements or admissions;

    (f)    Identify any witnesses to such statements or admissions;

    (g)    Identify any documents relating to the statements or admissions.

**ANSWER**:   Plaintiff's Complaint and claims do not allege or rely on any statements by any agent, representative, or employee of the United States.

**INTERROGATORY NO. 5**

State whether Plaintiff has been or is currently a party in any other lawsuits – including civil, criminal, and administrative actions. If so, list the name, docket number, resolution, and a brief explanation of what the lawsuit was/is about.

**ANSWER:** Plaintiff is not, and has not been, involved in any other lawsuits.

4

**INTERROGATORY NO. 6**:  Identify each expert whom you expect to call as a witness at trial and for each, state the following:

(a)     The subject matter(s) on which the expert is expected to testify;

(b)     The expert's qualifications on such subject(s), including a list of all publications authored by the expert within the preceding 10 years and a list of any other cases in which the expert has testified as an expert at trial or by deposition within the preceding four years, setting forth the case name and number, the forum and its location, the attorneys of record in each case and the party who retained the expert;

(c)     The mental impressions and opinions held by the expert and the facts known to the expert (regardless of when the factual information was acquired) which relate to or form a basis of the mental impressions and opinions held by the expert who is expected to be called as a witness at trial;

(d)     Whether any mental impression or opinion is based in any way on the work product of another testifying or consulting expert, and if so, the identity of that expert;

(e)     Identify all documents, including reports, physical models, compilations of data, computer records, fee statements or invoices and other material prepared by the expert or for the expert in anticipation of the expert's trial and/or deposition testimony;

(f)     Identify and produce any exhibits to be used as a summary of or support for the opinions; and

(g)     The compensation being paid to the expert.

**ANSWER**: Plaintiff has not retained an expert.

**INTERROGATORY NO. 7**:  For any expert used for consultation and who is not expected to be called as a witness at trial but whose work product forms a basis, either in whole or in part, of the opinions of any expert who is expected to be called

by you as a witness, state the consulting expert's name, home and business address,

and state the following:

(a)    The subject matter(s) of the consulting expert's work product;

(b)    The consulting expert's qualifications on such subject(s), including a list of all publications authored by the consulting expert within the preceding 10 years and a list of any other cases in which the consulting expert has testified as an expert at trial or by deposition within the preceding four years, setting forth the case name and number, the forum and its location, the attorneys of record in each case and the party who retained the expert;

(c)    The mental impressions and opinions held by the consulting expert and the facts known to the consulting expert (regardless of when the factual information was acquired) which relate to or form a basis of the mental impressions and opinions held by the expert who is expected to be called as a witness at trial;

(d)    Identify all documents, including reports, physical models, compilations of data, computer records, fee statements or invoices and other material prepared by the expert or for the expert in anticipation of the expert's trial and/or deposition testimony;

(e)    Identify and produce any exhibits to be used as a summary of or support for the opinions; and

(f)    The compensation being paid to the expert.

**ANSWER**:    Plaintiff has not retained an expert.

**INTERROGATORY NO. 8**:  Identify all members of CTM Holdings, LLC and

B&C, LLC.

Ptf. App. 013

**ANSWER**: CTM Holdings, LLC is a manager-managed LLC. There are two members: James F. Conlan and Kelly B. Conlan. B&C, LLC is a sole-member LLC. James F. Conlan is the sole member.

**INTERROGATORY NO. 9**: Identify all "affiliated entities" to CTM Holdings, LLC as described in Paragraph 36 of Plaintiff's Complaint.

    **ANSWER**: B&C, LLC is the only affiliated entity referenced in the Complaint.

**INTERROGATORY NO. 10**: With respect to CTM Holdings, LLC and all individuals or entities identified in Interrogatories 8 or 9 above, list each parcel of agricultural land located in the United States owned by, rented, or farmed, by the individual or entity at any time between January 1, 2010 to present. For each such parcel, state the owner(s), tenant(s), and time period of ownership or lease during the period of time the individual or entity identified in Paragraph 8 or 9 above owned, rented, or farmed the property.

    **ANSWER**: Plaintiff objects to this request because: it is overbroad; unduly burdensome; some records are not in Plaintiffs possession; all records are already in Defendants possession; and most of the information requested is not relevant to this litigation. This request is overbroad and unduly burdensome because it asks: (1) for nearly 15 years of records, for (2) CTM Holdings, LLC, B&C, LLC, James F. Conlan,

Kelly B. Conlan, and (3) the identity and lease period for every tenant for every property over those 15 years. This request is also overbroad because it requests all agricultural property and doesn't limit it to agricultural property that receives USDA benefits. Furthermore, Defendants have in their possession and control all records of agricultural land that was, or is, in the farm program and/or receives USDA benefits from January 1, 2010 to present, including records for CTM Holdings, LLC, B&C, LLC, James F. Conlan, Kelly B. Conlan, and every tenant for every foregoing property. Moreover, the records of property ownership and tenants from January 1, 2010 to present for CTM Holdings, LLC, B&C, LLC, James F. Conlan, Kelly B. Conlan, is not relevant to the claims or defenses of this litigation. There is only one plaintiff and one property that is relevant to this litigation, and the relevant time period is from Plaintiff's purchase of the Property in September 2022 to the present. The affiliated parties, properties, and tenants are not parties to this litigation. And 15 years' worth of records of non-parties is not in proportion to the scope of this litigation. The claims, and defenses, pertain to whether the federal law, Swampbuster, is unconstitutional or not, and pertain to whether the administrative rules exceeded the statute and/or agency's authority.

Subject to the preceding objections, Plaintiff responds that it purchased the Property in September 2022. The tenant of the Property is Cory Pfab. His current lease of the Property expires in February 2025. He just entered a new lease with the Plaintiff commencing on March 1, 2025 through March 1, 2030.

8

**INTERROGATORY NO. 11**:  With respect to CTM Holdings, LLC and all individuals or entities identified in Interrogatories 8 or 9 above, list each agricultural benefit program in which the individual or entity has participated at any time between January 1, 2010 to present. For each response, include the individual or entity that participated and describe the benefit obtained from participation.

**ANSWER**: Plaintiff objects to this request because: it is overbroad; unduly burdensome; some records are not in Plaintiffs possession; all records are already in Defendants possession; and most of the information requested is not relevant to this litigation. This request is overbroad and unduly burdensome because it asks: (1) for nearly 15 years of records, for (2) CTM Holdings, LLC, B&C, LLC, James F. Conlan, Kelly B. Conlan, and (3) the agricultural program and/or benefits that CTM Holdings, LLC, B&C, LLC, James F. Conlan, and Kelly B. Conlan participated in over those 15 years. Furthermore, Defendants have in their possession and control all records of agricultural land that was, or is, in the farm program and/or receives USDA benefits from January 1, 2010 to present, including records for CTM Holdings, LLC, B&C, LLC, James F. Conlan, Kelly B. Conlan, and every tenant for every foregoing property. Moreover, the agricultural benefits from January 1, 2010 to present for B&C, LLC, James F. Conlan, and Kelly B. Conlan, are not relevant to the claims or defenses of this litigation. There is only one plaintiff and one property that is relevant to this litigation, and the relevant time period is from Plaintiff's purchase of the Property in September 2022 to the present. The affiliated parties, properties, and

9

tenants are not parties to this litigation. And 15 years' worth of records of non-parties is not in proportion to the scope of this litigation. The claims, and defenses, pertain to whether the federal law, Swampbuster, is unconstitutional or not, and pertain to whether the administrative rules exceeded the statute and/or agency's authority.

Subject to the preceding objections, Plaintiff responds that it received CRP payments for the highly erodible land on the Property after it purchased the Property in September 2022. The Property's CRP contract expired on September 30, 2024.

**INTERROGATORY NO. 12**: With respect to each parcel of agricultural land responsive to Interrogatory 10 above, list each certified wetland delineation affecting the property, including the date of the delineation, the dates upon which any affected person requested review or redetermination of the wetland delineation, and the dates upon which any determination was made regarding whether an individual or entity had converted any wetland located on the parcel.

**ANSWER**: Plaintiff objects to this request because: it is overbroad; unduly burdensome; some records are not in Plaintiffs possession; all records are already in Defendants possession; and most of the information requested is not relevant to this litigation. This request is overbroad and unduly burdensome because it asks: (1) for nearly 15 years of records, for (2) CTM Holdings, LLC, B&C, LLC, James F. Conlan, Kelly B. Conlan, and (3) any wetland determinations for every property over those 15 years. This request is also overbroad because it requests all agricultural property and

10

doesn't limit it to agricultural property that currently receives USDA benefits. Furthermore, Defendants have in their possession and control all records of agricultural land that was, or is, in the farm program and/or receives USDA benefits from January 1, 2010 to present, including records for CTM Holdings, LLC, B&C, LLC, James F. Conlan, Kelly B. Conlan, and every tenant for every foregoing property. Moreover, the records of agricultural benefits from January 1, 2010 to present for B&C, LLC, James F. Conlan, and Kelly B. Conlan, are not relevant to the claims or defenses of this litigation. There is only one plaintiff and one property that is relevant to this litigation, and the relevant time period is from Plaintiff's purchase of the Property in September 2022 to the present. The affiliated parties, properties, and tenants are not parties to this litigation. And 15 years' worth of records of non-parties is not in proportion to the scope of this litigation. The claims, and defenses, pertain to whether the federal law, Swampbuster, is unconstitutional or not, and pertain to whether the administrative rules exceeded the statute and/or agency's authority.

Subject to the preceding objections, Plaintiff responds that the certified wetland determination for the Property was completed on April 16, 2010, prior to Plaintiff's purchase of the Property. Plaintiff requested a redetermination for the Property on October 14, 2022. To Plaintiff's knowledge, there has not been any determinations or allegations of wetland conversions on the Property.

Respectfully submitted this 17th day of November, 2024.

/s/ Loren Seehase

Jeffrey W. McCoy*
California Bar No. 317377
JMcCoy@pacificlegal.org
Paige Gilliard*
California Bar No. 330051
PGilliard@pacificlegal.org
PACIFIC LEGAL FOUNDATION
555 Capital Mall, Suite 1290
Sacramento, CA 95814
(916) 419-7111

Loren A. Seehase*
Hawaii Bar No. 10414
lseehase@libertyjusticecenter.org
Reilly Stephens*
Maryland Bar No.
rstephens@libertyjusticecenter.org
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
(512) 481-4400

James V.F. Dickey
Iowa AT Pin AT0014073
UPPER MIDWEST LAW CENTER
8421 Wayzata Boulevard, Suite 300
Golden Valley, MN
(612) 428-7000
James.Dickey@umwlc.org
*Counsel for Plaintiffs*
*\* Admitted Pro Hac Vice*

12

## **CERTIFICATION**

 

     I hereby certify the above answers to the Requests for Interrogatories are true and correct to the best of my knowledge.

 

 

Date:    11/17/2024                      */s/ James F. Conlan*

                                                  Representative of CTM Holdings, LLC, Plaintiff

INT. App. 20

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 17, 2024, that I served the foregoing Plaintiff's Responses to Defendants' First Interrogatories via electronic mail to Defendants' attorneys of records.

Respectfully submitted this 17th day of November, 2024.

|  |  |
|---|---|
|  | */s/ Loren Seehase* |
| Jeffrey W. McCoy* | Loren A. Seehase* |
| California Bar No. 317377 | Hawaii Bar No. 10414 |
| JMcCoy@pacificlegal.org | lseehase@libertyjusticecenter.org |
| Paige Gilliard* | Reilly Stephens* |
| California Bar No. 330051 | Maryland Bar No. |
| PGilliard@pacificlegal.org | rstephens@libertyjusticecenter.org |
| PACIFIC LEGAL FOUNDATION | LIBERTY JUSTICE CENTER |
| 555 Capital Mall, Suite 1290 | 7500 Rialto Blvd., Suite 1-250 |
| Sacramento, CA 95814 | Austin, TX 78735 |
| (916) 419-7111 | (512) 481-4400 |

James V.F. Dickey
Iowa AT Pin AT0014073
UPPER MIDWEST LAW CENTER
8421 Wayzata Boulevard, Suite 300
Golden Valley, MN
(612) 428-7000
James.Dickey@umwlc.org

*Counsel for Plaintiffs*
*\* Admitted Pro Hac Vice*

14

gation, quote today. Call 1-877-381-3059. (mcn).

**EMAIL US** your classified ad! dcclassifieds@wcinet.com or give us a call today! 563-875-7131 or 800-658-3406.

your vehicle. Run your classified ad in the Eastern Iowa Shopping News for $29 for 8 weeks. Call 563-875-7131 or 1-800-658-3406 for more information and to place your classified ad today!

# LAND FOR SALE

## Delaware County



71.85 Acres - Level to gently sloping bare land parcel located midway between Dyersville and Manchester with frontage on and visibility from four lane Hwy. 20. The property consists of 40.7 acres of high quality cropland (NHEL) carrying a weighted CSR2 of 82.7, with an additional 10.4 acres CRP of land enrolled in the Conservation Reserve Program through 9/30/2024. The 20.75 acre balance accounts for woods with a small stream. Several potential building sites. The sellers may consider splitting the property.

**For pricing and more detailed information, please call the listing broker, Gary Wegmann at 563-590-2425.**



# WEGMANN REAL ESTATE
## www.wegmannreal.com
## 563-923-7107 or 563-590-2425

adno=297075

MENT

CTM Holdings 0001

On Aug 3, 2022, at 11:19 AM, Rahe, Katherine - FSA, Manchester, IA <kathy.rahe@usda.gov> wrote:

Good Morning Jim,
Glad we could help!
I have attached the tract map for reference. Field number 11 is part of the CRP contract and is a tree planting practice, so the trees within that field do need to remain through the end of the CRP contract (scheduled to expire 09-30-2024). I could not recall if we had specifically discussed that field the day you were in the office.
To my knowledge, the current owners have not submitted any additional request for wetland determinations on the farm. At this time, any logging or widespread tree removal could potentially create a wetland violation situation. A wetland violation would jeopardize all financial benefits associated to the farm, including those of any tenants associated to the farm, and possibly their other farming interests. Not sure the extent of what you are referencing below, but please keep in mind once a wetland determination request is filed, it may take a few months to receive the determination back.
Let me know if you have additional questions.
Thanks for checking in!

**Kathy Rahe**
Key Program Technician
USDA – Farm Service Agency
Delaware County, Iowa
(563)927-4250
Fax (855)208-8590
kathy.rahe@usda.gov

*Stay Connected with USDA:*

CTM Holdings 0002

Recorded: 9/30/2022 at 12:47:53.0 PM
County Recording Fee: $22.00
Iowa E-Filing Fee: $3.00
Combined Fee: $25.00
Revenue Tax: $1,119.20
Delaware County, Iowa
Daneen Schindler RECORDER
BK: 2022 PG: 2937

**Return To:** CTM Holdings, LLC, ███████████████████████████
**Taxpayer:** CTM Holdings, LLC, ███████████████████████████
**Preparer:** Todd J. Locher, 202 2nd Avenue NW, PO Box 7, Farley, IA 52046, Phone: 563-744-3359



## WARRANTY DEED
### (CORPORATE/BUSINESS ENTITY GRANTOR)

For the consideration of Ten Dollar(s) and other valuable consideration, Lucasland, LLC, a limited liability company organized and existing under the laws of Iowa, does hereby Convey to CTM Holdings, LLC, a limited liability company organized and existing under the laws of Iowa, the following described real estate in Delaware County, Iowa:

The Southeast Quarter (SE¼) of the Southeast Quarter (SE¼), and the East one-fourth (E¼) of the Southwest Quarter (SW¼) of the Southeast Quarter (SE¼) of Section Thirty Two (32), and the Southwest Quarter (SW¼) of the Southwest Quarter (SW¼) of Section Thirty Three (33), Township Eighty Nine (89) North, Range Four (4), West of the Fifth P.M., except that part condemned by the Iowa State Highway Commission in Condemnation Proceedings recorded in Book J Misc., Pages 544 to 553, and also except that part condemned by the City of Delaware, Iowa, Condemnation Proceedings recorded in Book S Misc., Page 170.

There is no known private burial site, well, solid waste disposal site, underground storage tank, hazardous waste, or private sewage disposal system on the property as described in Iowa Code Section 558.69, and therefore the transaction is exempt from the requirement to submit a groundwater hazard statement.

The grantor hereby covenants with grantees, and successors in interest, that it holds the real estate by title in fee simple; that it has good and lawful authority to sell and convey the real estate; that the real estate is free and clear of all liens and encumbrances, except as may be above stated; and it covenants to Warrant and Defend the real estate against the lawful claims of all persons, except as may be above stated.

Words and phrases herein, including acknowledgment hereof, shall be construed as in the singular or plural number, according to the context.

**CTM Holdings 0003**

Dated: September 30, 2022.

Lucasland, LLC, an Iowa limited liability
company

By _Ruth L. Schlotfeldt_

Ruth L. Schlotfeldt, Manager

STATE OF IOWA, COUNTY OF DUBUQUE

This record was acknowledged before me on September 30, 2022, by Ruth L. Schlotfeldt,
as Manager, of Lucasland, LLC, an Iowa limited liability company.

GARY J. WEGMANN
Commission Number 724773
My Comm. Exp. 11-21-24

Signature of Notary Public

©The Iowa State Bar Association 2022
IowaDocs®

Form No. 335, Warranty Deed – Corporation/Business Entity Grantor
Revised June 2022

CTM Holdings 0004

**From:** James F Conlan 



Begin forwarded message:

**From:** "Nickol, Heidi - FPAC-FSA, IA" <heidi.nickol@usda.gov>
**Date:** September 16, 2024 at 2:13:46 PM GMT+1
**To:** James F Conlan ▮▮▮▮▮▮▮▮▮▮
**Cc:** "Nickol, Heidi - FPAC-FSA, IA" <heidi.nickol@usda.gov>
**Subject:** RE: [External Email]Delaware Farm

Good Morning Jim,

My apologies for the delayed response.

The CRP Contract #2109B expires on 9/30/2024. The contract contains the following fields:
Field # 6  1.19 acres CP21 Filter-strip
Field # 7  2.52 acres CP21 Filter-strip
Field # 8 1.72 acres CP21 Filter-strip
Field # 9 1.34 acres CP21 Filter-strip
Field # 10 1.24 acres CP21 Filter-strip
Field# 11 2.54 acres CP22 Riparian Buffer

Upon expiration of CRP, normal farming activities may occur beginning October 1, 2024. As a reminder, conservation compliance provisions must be followed in order to receive USDA benefits.

Fields 6-10 (8.01 acres) will be added to Effective DCP Cropland in October.
Field #11 is a CP22 Riparian Buffer. According to policy, trees that were under a CRP contract that expire, receive a land reclassification of 'DCP -ag related Activity' and will also be included in Effective DCP Cropland.
Field # 15 (4.65 acres) is the field that you cleared in 2023. Those acres were already added to the cropland acres.

Your total Effective DCP cropland will be 58.95.
You will receive an updated FSA-156EZ to reflect the cropland changes, after Oct 1, 2024.

If you have any additional questions, please let me know.
Thanks!

**CTM Holdings 0033**



**Heidi J Nickol**
**County Executive Director**
USDA/Farm Service Agency
Delaware County, Iowa
United States Department of Agriculture
Office 563-927-4250

*USDA is an equal opportunity provider, employer, and lender.*

**From:** Rahe, Katherine - FPAC-FSA, IA <kathy.rahe@usda.gov>
**Sent:** Wednesday, September 4, 2024 3:00 PM
**To:** James F Conlan ███████████████
**Cc:** Nickol, Heidi - FPAC-FSA, IA <heidi.nickol@usda.gov>
**Subject:** RE: [External Email]Delaware Farm

Hi James,
I did receive your email. Your request will take some additional research before we are able to provide a response.
I have cc'd the Delaware County Executive Director Heidi Nickol as she will be responding to you with this information.
Thank you.

Kathy Rahe
*Key Program Analyst*
Delaware County, Iowa



200 South 12<sup>th</sup> St, Manchester, IA 52057
p: (563) 927-4250 | f: (855) 208-8590
e: kathy.rahe@usda.gov | w: www.fsa.usda.gov/state-offices/Iowa/index

Stay Connected with USDA:

    



*USDA is an equal opportunity provider, employer, and lender.*

*This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or*

*disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.*

**From:** James F Conlan ███████████████████
**Sent:** Wednesday, September 4, 2024 6:12 AM
**To:** Rahe, Katherine - FPAC-FSA, IA <kathy.rahe@usda.gov>
**Subject:** Re: [External Email]Delaware Farm

Kathy, I would be grateful if you could confirm for me what date I may fall till what is coming out of the CRP programs on CTM's Delaware farm. My guess is November 1, 2024.

Please also let me know what I need to do to have both of the following classified as FSA Effective Crop Acres for 2025:

(i) the 10.4 CRP acres that will no longer be in CRP;

(ii) the 11/12 acres that were neither wetland nor CRP that I cleared in 2023 and tilled in 2024.

After the above, total FSA Effective Crop Acres on this farm for 2025 should be 62 acres. There are about 9 acres that are designated wetlands and therefore not crop acres.

**James F. Conlan**
Chief Executive Officer and Co-Founder
Legacy Liability Solutions
Dallas I Chicago I Washington
Email ████████████████████

████████████████
www.legacyliability.com

On Aug 26, 2024, at 8:34 AM, Rahe, Katherine - FPAC-FSA, IA <kathy.rahe@usda.gov> wrote:

Good Morning James,
Thank you for letting me know.
Have a great week!

## Kathy Rahe
*Key Program Analyst*
Delaware County, Iowa

<image009.png>

200 South 12th St, Manchester, IA 52057
p: (563) 927-4250 | f: (855) 208-8590
e: kathy.rahe@usda.gov | w: www.fsa.usda.gov/state-offices/Iowa/index

Stay Connected with USDA:
<image010.png>
<image011.png>

&lt;image012.png&gt;
&lt;image013.png&gt;
&lt;image014.png&gt;
&lt;image015.png&gt;

*USDA is an equal opportunity provider, employer, and lender.*

*This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.*

**From:** James F Conlan ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Sent:** Sunday, August 25, 2024 4:44 PM
**To:** Rahe, Katherine - FPAC-FSA, IA <kathy.rahe@usda.gov>
**Subject:** [External Email]Delaware Farm

[External Email]
If this message comes from an **unexpected sender** or references a **vague/unexpected topic;**
Use caution before clicking links or opening attachments.
Please send any concerns or suspicious messages to: Spam.Abuse@usda.gov

Hi Katherine. i hope you're having an enjoyable summer. CTM is not going to re-enroll any part of the Delaware farm in the CRP. Everything that was in CRP comes out in October, 2024 I believe. My intention is to row crop everything that was CRP.

**James F. Conlan**
Chief Executive Officer and Co-Founder
Legacy Liability Solutions
Dallas | Chicago | Washington
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Mobile | ▓▓▓▓▓▓▓▓
www.legacyliability.com

On Aug 30, 2023, at 11:57 AM, Rahe, Katherine - FPAC-FSA, IA <kathy.rahe@usda.gov> wrote:

Good Morning Jim,
Yes, I will do my best to keep you up to date of any changes applicable to USDA regulations.
Have a great day!

CTM Holdings 0036

*Kathy*

---

**From:** James F Conlan ██████████████████
**Sent:** Wednesday, August 30, 2023 9:08 AM
**To:** Rahe, Katherine - FPAC-FSA, IA <kathy.rahe@usda.gov>
**Subject:** [External Email]NPR: EPA removes federal protections for most of the country's wetlands

[External Email]
If this message comes from an **unexpected sender** or references a **vague/unexpected topic;**
Use caution before clicking links or opening attachments.
Please send any concerns or suspicious messages to: Spam.Abuse@usda.gov

Hi Kathy. Please let me know when/if USDA similarly removes rules and limitations re what was formerly wetlands. Thanks

**EPA removes federal protections for most of the country's wetlands**
The amended EPA rule is to comply with a Supreme Court ruling this year that narrowed the scope of the Clean Water Act and the agency's power to regulate waterways and wetlands.

Read in NPR: https://apple.news/AlDa-_czYQla-yxEi98qlJQ

Shared from Apple News

Sent from my iPhone

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

**CTM Holdings 0037**

 **FARM LEASE - CASH OR CROP SHARES**

THIS LEASE ("Lease") is made between CTM Holdings, LLC, or any affiliate or assignee of CTM Holdings, LLC that owns or will own the Real Estate described herein ("Landlord"), whose address for the purpose of this Lease is ███████████████ ███████████████████ and Cory Pfab and Susan Pfab ("Tenant"), whose address for the purpose of this Lease is ██████████████████.

THE PARTIES AGREE AS FOLLOWS:

1. **PREMISES AND TERM.** Landlord leases to Tenant the real estate listed on the attached Exhibit A (the "Real Estate") and containing 677 FSA Crop Acres per county FSA records, more or less, with possession by Tenant for a term of five (5) years to commence on March 1, 2025, and end on March 1, 2030. The Tenant has had or been offered an opportunity to make an independent investigation as to the acres and boundaries of the premises. In the event that possession cannot be delivered within fifteen (15) days after commencement of this Lease, Tenant may terminate this Lease by giving the Landlord notice in writing.

2. **RENT.** Tenant shall pay to Landlord as rent for the Real Estate (the "Rent"): Annual cash "Base Rent" of $236,950.00 payable, unless otherwise agreed, as follows: $118,475.00 on June 1, 2025, $118,475.00 on January 1, 2026, $118,475.00 on June 1, 2026, $118,475.00 on January 1, 2027, $118,475.00 on June 1, 2027, $118,475.00 on January 1, 2028, $118,475.00 on June 1, 2028, $118,475.00 on January 1, 2029, and $118,475.00 on June 1, 2029, $118,475.00 on January 1, 2030. The total annual cash "Base Rent" is comprised of the following per year rate: 677 acres at $350.00 per acre. In addition to the "Base Rent," Landlord is entitled to "Additional Rent" per Paragraph 26 E.

   All Rent is to be paid to Landlord at the address above or at such other place as Landlord may direct in writing. Rent must be in Landlord's possession on or before the due date. Participation of this farm in any offered program by the U.S. Department of Agriculture or any state for crop production control or soil conservation, the observance of the terms and conditions of this program, and the division of farm program payments, requires Landlord's consent. Payments from participation in these programs shall be divided 0% Landlord 100% Tenant. Governmental cost-sharing payments for permanent soil conservation structures shall be divided 0% Landlord 100% Tenant. Crop disaster payments shall be divided 0% Landlord 100% Tenant.

3. **LANDLORD'S LIEN AND SECURITY INTEREST.** As security for all sums due or which will become due from Tenant to Landlord, Tenant hereby grants to Landlord, in addition to any statutory liens, a security interest as provided in the Iowa Uniform Commercial Code and a contractual lien in all crops produced on the premises and the proceeds and products thereof, all contract rights concerning such crops, proceeds and/or products, all proceeds of insurance collected on account of destruction of such crops, all

©The Iowa State Bar Association 2021
IowaDocs®
Form No. 135, Farm Lease – Cash or Crop Shares
Revised January 2016

CTM Holdings 0047

Case 6:24-cv-02016-CJW-MAR   Document 39-1   Filed 01/29/25   Page 33 of 79

contract rights and U.S. government and/or state agricultural farm program payments in connection with the above described premises whether such contract rights be payable in cash or in kind, including the proceeds from such rights, and any and all other personal property kept or used on the real estate that is not exempt from execution. Tenant shall also sign any additional forms required to validate the security interest in government program payments.

4.  **INPUT COSTS AND EXPENSES.**  Tenant shall prepare the Real Estate and plant such crops in a timely fashion as may be directed by Tenant. Tenant shall only be entitled to pasture or till those portions of the Real Estate designated by Landlord. All necessary machinery and equipment, as well as labor, necessary to carry out the terms of this lease shall be furnished by and at the expense of the Tenant. The following materials, in the amounts required by good husbandry, shall be acquired by Tenant and paid for by the parties as follows:

|  | % Landlord | % Tenant |
|---|---|---|
| (1) Fertilizer | 0% | 100% |
| (2) Lime and Trace Minerals | 0% | 100% |
| (3) Herbicide | 0% | 100% |
| (4) Insecticides | 0% | 100% |
| (5) Seeds | 0% | 100% |
| (6) Seed Cleaning | 0% | 100% |
| (7) Harvesting and/or Shelling Expense | 0% | 100% |
| (8) Grain Drying | 0% | 100% |
| (9) Grain Storage | 0% | 100% |
| (10) Other Expenses | 0% | 100% |

5.  **PROPER HUSBANDRY; HARVESTING OF CROPS; CARE OF SOIL, TREES, SHRUBS AND GRASS.**  Tenant shall farm the Real Estate in a manner consistent with good husbandry, seek to obtain the best crop production that the soil and crop season will permit, properly care for all growing crops in a manner consistent with good husbandry, and harvest all crops on a timely basis. In the event Tenant fails to do so, Landlord reserves the right, personally or by designated agents, to enter upon the Real Estate and properly care for and harvest all growing crops, charging the cost of the care and harvest to the Tenant, as part of the Rent. Tenant shall timely control all weeds, including noxious weeds, weeds in the fence rows, along driveways and around buildings throughout the premises. Tenant shall comply with all terms of the conservation plan and any other required environmental plans for the leased premises. Tenant shall do what is reasonably necessary to control soil erosion including, but not limited to, the maintenance of existing watercourses, waterways, ditches, drainage areas, terraces and tile drains, and abstain from any practice which will cause damage to the Real Estate.

Upon request from the Landlord, Tenant shall by August 15 of each lease year provide to the Landlord a written listing showing all crops planted, including the acres of each crop planted, fertilizers, herbicides and insecticides applied showing the place of application, the name and address of the applicator, the type of application and the quantity of such items applied on the lease premises during such year.

Tenant shall not remove from the Real Estate, nor burn, any straw, stalks, stubble,

©The Iowa State Bar Association 2021                     Form No. 135, Farm Lease – Cash or Crop Shares
IowaDocs®                                                                                   Revised January 2016

CTM Holdings 0048

or similar plant materials, all of which are recognized as the property of Landlord. Tenant may use these materials, however, upon the Real Estate for the farming operations. Tenant shall protect all trees, vines and shrubbery upon the Real Estate from injury by Tenant's cropping operation or livestock.

Tenant shall maintain accurate yield records for the real estate, and upon request, during or after lease term, shall disclose to Landlord, all yield base information required for participation in government program.

6. **DELIVERY OF GRAIN.** Intentionally omitted.

7. **LANDLORD'S STORAGE SPACE.** Intentionally omitted.

8. **ENVIRONMENTAL.**
   a. <u>Landlord</u>. To the best of Landlord's knowledge to date:

   i. Neither Landlord nor, Landlord's former or present tenants, are subject to any investigation concerning the premises by any governmental authority under any applicable federal, state, or local codes, rules, and regulations pertaining to air and water quality, the handling, transportation, storage, treatment, usage, or disposal of toxic or hazardous substances, air emissions, other environmental matters, and all zoning and other land use matters.
   ii. Any handling, transportation, storage, treatment, or use of toxic or hazardous substances that has occurred on the premises has been in compliance with all applicable federal, state, and local codes, rules, and regulations.
   iii. No leak, spill release, discharge, emission, or disposal of toxic or hazardous substances has occurred on the premises.
   iv. The soil, groundwater, and soil vapor on or under the premises is free of toxic or hazardous substances except for chemicals (including without limitation fertilizer, herbicides, insecticides) applied in conformance with good farming methods, applicable rules and regulations and the label directions of each chemical.

   Landlord shall hold Tenant harmless against liability for removing solid waste disposal sites existing at the execution of this Lease, with the exception that Tenant shall be liable for removal of solid waste disposal sites to the extent that the Tenant created or contributed to the solid waste disposal site at any time.

   Landlord shall assume liability and shall indemnify and hold Tenant harmless against any liability or expense arising from any condition which existed, whether known or unknown, at the time of execution of the lease which is not a result of actions of the Tenant or which arises after date of execution but which is not a result of actions of the Tenant.

   Landlord shall disclose in writing to Tenant the existence of any known wells, underground storage tanks, hazardous waste sites, and solid waste disposal sites. Disclosure may be provided by a properly completed groundwater hazard statement to be supplemented if changes occur.

   b. <u>Tenant</u>. Tenant shall comply with all applicable environmental laws concerning

©The Iowa State Bar Association 2021                                  Form No. 135, Farm Lease – Cash or Crop Shares
IowaDocs®                                                                              Revised January 2016

CTM Holdings 0049

application, storage and handling of chemicals (including, without limitation, herbicides and insecticides) and fertilizers. Tenant shall apply any chemicals used for weed or insect control at levels not to exceed the manufacturer's recommendation for the soil types involved. Farm chemicals may not be stored on the premises for more than one year. Farm chemicals for use on other properties may not be stored on this property. Chemicals stored on the premises shall be stored in clearly marked, tightly closed containers. No chemicals or chemical containers will be disposed of on the premises. Application of chemicals for agricultural purposes per manufacturer's recommendation shall not be construed to constitute disposal.

Tenant shall employ all means appropriate to insure that well or ground water contamination does not occur, and shall be responsible to follow all applicator's licensing requirements. Tenant shall install and maintain safety check valves for injection of any chemicals and/or fertilizers into an irrigation system (injection valve only, not main well check valve). Tenant shall properly post all fields (when posting is required) whenever chemicals are applied by ground or air. Tenant shall haul and spread all manure on appropriate fields at times and in quantities consistent with environmental protection requirements. Tenant shall not dispose of waste oil, tires, batteries, paint, other chemicals or containers anywhere on the premises. Solid waste may not be disposed of on the premises. Dead livestock may not be buried on the premises. If disposal of solid waste or burial of dead animals is permitted as stated in the previous two sentences, the disposal or burial shall be in compliance with all applicable environmental laws. Tenant shall not use waste oil as a means to suppress dust on any roads on or near the premises. No underground storage tanks, except human waste septic systems that meet current codes, rules, and regulations, shall be maintained on the premises.

Tenant shall immediately notify Landlord of any chemical discharge, leak, or spill which occurs on premises. Tenant shall assume liability and shall indemnify and hold Landlord harmless for any claim or violation of standards which results from Tenant's use of the premises. Tenant shall assume defense of all claims, except claims resulting from Landlord's negligence, in which case each party shall be responsible for that party's defense of any claim. After termination, Tenant shall remain liable for violations which occurred during the term of this Lease.

**In the absence of selection of an alternative where choices are provided in this paragraph 8b, the choice of the word "may" shall be presumed unless that presumption is contrary to applicable environmental laws and regulations.**

9. **TERMINATION OF LEASE.** Landlord and Tenant will enter into a separate agreement with respect to termination of the Farm Lease after the execution of this Farm Lease by Landlord and Tenant.

10. **POSSESSION AND CONDITION AT END OF TERM.** At the termination of this Lease, Tenant will relinquish possession of the Real Estate to the Landlord. If Tenant fails to do so Tenant agrees to pay Landlord $5,000.00 per day, as liquidated damages until possession is delivered to Landlord. At the time of delivery of the Real Estate to Landlord, Tenant shall assure that the Real Estate is in good order and condition, and substantially the same as it was when received by Tenant at the commencement of this

©The Iowa State Bar Association 2021
IowaDocs®

Form No. 135, Farm Lease – Cash or Crop Shares
Revised January 2016

**CTM Holdings 0050**

Lease, excusable or insurable loss by fire, unavoidable accidents and ordinary wear, excepted.

11. **LANDLORD'S RIGHT OF ENTRY AND INSPECTION.** In the event notice of termination of this Lease has been properly served, Landlord may enter upon the Real Estate or authorize someone else to enter upon the Real Estate to conduct any normal tillage or fertilizer operation after Tenant has completed the harvesting of crops even if this is prior to the date of termination of the lease. Landlord may enter upon the Real Estate at any reasonable time for the purpose of viewing or seeding or making repairs, or for other reasonable purposes.

12. **VIOLATION OF TERMS OF LEASE.** If Tenant or Landlord violates the terms of this Lease, the other may pursue the legal and equitable remedies to which each is entitled. Tenant's failure to pay any Rent when due shall cause all unpaid Rent to become immediately due and payable, without any notice to or demand upon Tenant.

13. **REPAIRS.** Tenant shall maintain the fences on the leased premises in good and proper repair. Landlord shall furnish necessary materials for repairs that Landlord deems necessary within a reasonable time after being notified of the need for repairs. Tenant shall haul the materials to the repair site without charge to Landlord.

14. **NEW IMPROVEMENTS.** All buildings, fences and improvements of every kind and nature that may be erected or established upon the Real Estate during the term of the Lease by the Tenant shall constitute additional rent and shall inure to the Real Estate, becoming the property of Landlord unless the Landlord has agreed in writing prior to the erection that the Tenant may remove the improvement at the end of the lease.

15. **WELL, WINDMILL, WATER AND SEPTIC SYSTEMS.** Intentionally omitted.

16. **EXPENSES INCURRED WITHOUT CONSENT OF LANDLORD.** No expense shall be incurred for or on account of the Landlord without first obtaining Landlord's written authorization. Tenant shall take no actions that might cause a mechanic's lien to be imposed upon the Real Estate.

17. **NO AGENCY.** Tenant is not an agent of the Landlord.

18. **TELEVISION AND RADIO.** Intentionally omitted.

19. **ACCOUNTING.** Intentionally omitted.

20. **ATTORNEY FEES AND COURT COSTS.** If either party files suit to enforce any of the terms of this Lease, the prevailing party shall be entitled to recover court costs and reasonable attorneys' fees.

21. **CHANGE IN LEASE TERMS.** The conduct of either party, by act or omission, shall not be construed as a material alteration of this Lease until such provision is reduced to

©The Iowa State Bar Association 2021    Form No. 135, Farm Lease – Cash or Crop Shares
IowaDocs®          Revised January 2016

**CTM Holdings 0051**

writing and executed by both parties as addendum to this Lease.

22. **CONSTRUCTION.** Words and phrases herein, including the acknowledgment, are construed as in the singular or plural and as the appropriate gender, according to the context.

23. **NOTICES.** The notices contemplated in this Lease shall be made in writing and shall either be delivered in person, or be mailed in the U.S. mail, certified mail to the recipient's last known mailing address, except for the notice of termination set forth in Section 9, which shall be governed by the Code of Iowa.

24. **ASSIGNMENT.** Tenant shall not assign this Lease or sublet the Real Estate or any portion thereof without prior written authorization of Landlord, which may be withheld for any reason. Landlord may assign its rights under this Lease at any time to anyone.

25. **CERTIFICATION**. Tenant certifies that it is not acting, directly or indirectly, for or on behalf of any person, group, entity or nation named by any Executive Order or the United States Treasury Department as a terrorist, "Specially Designated National and Blocked Person" or any other banned or blocked person, entity, nation or transaction pursuant to any law, order, rule or regulation that is enforced or administered by the Office of Foreign Assets Control; and it is not engaged in this transaction, directly or indirectly on behalf of, or instigating or facilitating this transaction, directly or indirectly on behalf of, any such person, group, entity or nation. Tenant hereby agrees to defend, indemnify and hold harmless Landlord from and against any and all claims, damages, losses, risks, liabilities and expenses (including attorney's fees and costs) arising from or related to any breach of the foregoing certification.

26. **ADDITIONAL PROVISIONS. Notwithstanding any other provisions of this Lease:**

A. Tenant agrees that no animals or manure will be placed on the property.

B. Tenant agrees that the existing waterways will not be tilled and that cornstalks and bean stubble will not be removed from the fields.

C. Tenant agrees that Landlord has the ability to sell, develop, or lease for a purpose other than agricultural production, all or any part of the Real Estate at any time and in the event Landlord does so Tenant agrees that Tenant's lease of such portion of the Real Estate shall immediately and automatically be terminated without regard to Tenant's rights under Iowa Code Chapter 562; provided, however, Landlord shall credit Tenant for the direct cost of any destroyed current year crop (fertilizer, seed, spray, fuel, but not labor or machinery use) and this shall be Tenant's sole remedy for damages. In addition, Landlord may sell an "option" to lease for a purpose other than agricultural production at any time and such option, and payment to Landlord for such option, shall have no effect on Tenant's obligations under this Lease.

D. ADDITIONAL RENT. In addition to the Base Rent each year, Tenant will pay

Landlord, annually, Additional Rent as follows: $1.20 per acre more in rent for each 1 cent per bushel that the market value of December corn in such year exceeds $4.00 per bushel. This equals $120 per acre more for every $1 that the price of December corn in such year is above $4.00 per bushel. The Additional Rent is due in full at the same time that the second installment of Base Rent is due (January of each year).

EXAMPLE: If the average price for December corn in the current crop year is $4.00 per bushel, the Additional Rent is $0.00 per acre. If the average price for December corn in the current crop year is $4.50 per bushel, the Additional Rent is $60.00 per acre. If the average price for December corn in the current crop year is $5.00 per bushel, the Additional Rent is $120.00 per acre. If the average price for December corn in the current crop year is $6.00 per bushel, the Additional Rent is $240.00 per acre. If the average price for December corn in the current crop year is $7.00 per bushel, the Additional Rent is $360.00 per acre, and so on. There is no cap on or maximum for Additional Rent.

The average price for December corn shall be determined each year of this Lease and shall mean the average of the published futures price per bushel on the first Business Day in September, October, November and December for corn delivered in December to ADM in Cedar Rapids.

E. The Real Estate only includes crop land and does not include non crop land, buildings, bins, other agricultural structures or equipment.

F. By signing below, both parties acknowledge that this Farm Lease supersedes any existing Farm Lease between the parties named herein.

G. COUNTERPARTS. This agreement may be executed in counterparts, each of which when executed and delivered shall constitute an original of this agreement. No counterpart shall be effective until each party has executed at least one counterpart. In addition, a facsimile, photocopy, scanned copy or digital signature shall have the same force and effect as an original signature.


DATED: __9 - 22_____, 2024.


TENANTS:                                             CTM HOLDINGS, LLC, LANDLORD:


_____                     _____
Cory Pfab, Tenant                                   By: James F. Conlon, Member


_____
Susan Pfab, Tenant

©The Iowa State Bar Association 2021          Form No. 135, Farm Lease – Cash or Crop Shares
IowaDocs®                                                          Revised January 2016

# EXHIBIT A

32 FSA crop acres per county FSA records, more or less, on the "Western farm on Highway 30, Linn County" legally described as follows:
NW 1/4 NE 1/4 of Section 32-83-8, Linn County, Iowa, except the Public Highway;

AND

275 FSA crop acres per county FSA records, more or less, "Springville farm" legally described as follows:
The West One-half (W½) of the Southwest Quarter (SW¼) in Section Thirty-three (33), Township Eighty-four (84) North, Range Five (5) West of the 5th P.M., Linn County, Iowa;
AND
The S 20 Rods of the N½ of the NW¼ and the S½ of the NW¼ and all in Section 33, Township 84 North, Range 5 West of the 5th P.M., Linn County, Iowa; AND
The S 20 Rods of the N½ of the NE¼ the S½ of the NE¼ and the N½ of the NE¼ of the NE¼ of the SE¼, all in Section 33, Township 84 North, Range 5 West of the 5th P.M., Linn County, Iowa;

AND

130 FSA crop acres per county FSA records, more or less, "Mt Vernon farm" legally described as follows:
NE Frl. ¼ of Section 4-82-5, Linn County, Iowa, except therefrom that part described as follows: Beginning at the East ¼ corner of said Section 4; thence due North along the East line of said NE Frl. ¼, 1060 feet to the point of beginning; thence due North 390 feet; thence due West 446.77 feet; thence due South 390 feet; thence due East 446.77 feet to the point of beginning. And also excepting the following described tract: Commencing at the NW corner of the NE ¼ said Section 4; thence due East 467.45 feet along the North line of the NE ¼ to the point of beginning; thence due East 1212.68 feet along the North line of the NE ¼; thence South 35º10'00" West 590.20 feet; thence South 54º55'40" West 518.85 feet; thence South 86º25'10" West 360.32 feet; thence North 6º17'16" West 807.98 feet to the point of beginning. Subject to public highway;

AND

64 FSA crop acres per county FSA records, more or less, "Garrison farm" legally described as follows:
The North Seventy (70) acres of the West one-half (W ½) of the Northwest Quarter (NW ¼) of Section Thirty-five (35), Township Eighty-five (85) North, Range Twelve (12) West of the 5th P.M.;

AND

59 FSA crop acres per county FSA records, more or less, "Lucasland farm" legally described as follows:

©The Iowa State Bar Association 2021                     Form No. 135, Farm Lease – Cash or Crop Shares
IowaDocs®                                                            Revised January 2016

CTM Holdings 0054

Southeast Quarter (SE ¼) of Southeast Quarter (SE ¼) and the East one Fourth (E ¼) of Southwest Quarter (SW ¼) of Southeast Quarter (SE ¼) of Section Thirty-Two (32); the Southwest Quarter (SW ¼) of Southwest Quarter (SW ¼) of Section Thirty Three (33); all in Township Eighty Nine (89), North, Range Four (4), West of the Fifth P.M., except that part condemned by the Iowa State Highway Commission in Condemnation Proceedings recorded in Book J Misc., Pages 544 to 553, and also except that part condemned by the City of Delaware, Iowa, Condemnation Proceedings recorded in Book S Misc., Page 170; and

117 FSA crop acres per county FSA records, more or less, "Wright Bros farm" legally described as follows:

The East One-half (E ½) of the Northwest Quarter (NW ¼) and the Northeast Quarter (NE ¼) of the Southwest Quarter (SW ¼) of Section Twenty-nine (29), excepting therefrom the North Sixty (60) feet of the West Four Hundred Seventeen (417) feet and the North Sixty (60) feet of the East Five Hundred Twenty-four and Seventy-nine Hundredths (524.79) feet of the Northeast Quarter (NE ¼) of the Northwest Quarter (NW ¼) of said Section Twenty-nine (29), all in Township Eighty-two (82) North, Range Eight (8), West of the 5th P.M., Linn County, Iowa, and also excepting all legal highways, subject to all covenants, easements and restrictions of record.

©The Iowa State Bar Association 2021
IowaDocs®

Form No. 135, Farm Lease – Cash or Crop Shares
Revised January 2016

CTM Holdings 0055

Pl. App. 30

dotloop signature verification: dtlp.us/Unwq-jHyu-0ce3



# FARM AND LAND - OFFER FOR REAL ESTATE
### (Including Acceptance, Counter, or Rejection)



☐ a.m. ☐ p.m.      07 / 14 / 2022

TIME                DATE OF OFFER

OFFICE USE ONLY:
OFFER ACCEPTED

**Check all boxes that apply.**

## I. DISCLOSURE CONFIRMATIONS.
**A. AGENCY.**   By signing below, Buyer and Seller confirm that written disclosures of agency representation were provided to them, they understand who is representing them, and the disclosures were provided prior to signing this Offer For Real Estate.

**B. SELLER PROPERTY DISCLOSURE.**   If this offer is for 1 to 4 unit residential property, Seller or Seller's Agent must deliver a written disclosure statement to Buyer prior to Seller accepting an offer, or counter-offering to Buyer. By signing below, Buyer confirms Buyer (☒ has) (☐ will promptly) received and read Seller's property disclosure statement. If Seller is exempt from providing disclosure under the Code of Iowa, check here ☒.

**C. LEAD-BASED PAINT.**   If this offer is for a residential property built prior to 1978, Seller or Seller's Agent must provide Buyer with: (1) an EPA-approved lead hazard information pamphlet and (2) Seller's Lead-Based Paint Disclosure Information Statement. By signing below, Buyer confirms that Buyer (☐ has) (☐ has not) received and read the above described documents. In the event that Seller is exempt from providing documents under EPA regulations, check here ☒.

**D. REQUEST TO COMPLETE FORM DOCUMENTS AND REALTOR' PERMISSION TO CALL.**   Buyer and Seller request that Broker(s) select and complete documents allowed by law, and authorize REALTOR/Broker(s) to call, fax, and email residence.

1. X _Jim F Wolk_    07 / 14 / 2022    BUYER & DATE    _Ruth L Schlotfeldt_   dotloop verified 07/14/22 3:12 PM CDT PHRA-VETC-V0R7-SO74   DATE

2. _____ BUYER & DATE 2. _____ SELLER & DATE

## II. OFFER TO: _LUCAS LAND LLC_                                    (herein designated as Seller).

The undersigned _C T M HOLDINGS LLC_                              (herein designated as Buyer)
hereby offer to buy the real property situated in _Delaware_ County, Iowa, Located at and briefly described
as _TBD 217th St_ , _Manchester_ , Iowa, and legally described as:

_PIDS: # 480000403800, # 720000403400, # 480000403410_

_____ hereinafter
designated as "Property," together with any easements and servient estates appertaining thereto and subject to zoning restrictions, restrictive covenants, easements, and mineral reservation, if any, and agrees to pay you for such property the sum of $ _700,000_ AS FOLLOWS:
$ _72,000_ earnest money to be held in trust by _Gary Wegman Real Estate_ (☒ Seller's)
(☐ Buyer's) (☐ both Seller's and Buyer's) Agent, hereinafter referred to as "Broker" or "Agent," pending delivery of final papers and the balance upon delivery of warranty deed or upon execution of a real estate contract as hereinafter provided. The term "Broker" shall also include Broker's affiliated licensees (brokers and salespersons). The terms "Owner" and/or "Seller" shall include seller or vendor. The term "Buyer" shall include buyer or vendee. The terms "sell" and "sale" shall include sale, lease, rent, exchange or option.

**Check the appropriate boxes. (A) or (B) or (C) or (D) and if applicable (E):**

☒ (A) **CASH** to be paid on settlement date. This offer is not contingent upon Buyer obtaining financing. Seller has the right to receive verification of funds.

☐ (B) **NEW MORTGAGE:** This contract is contingent upon the Buyer obtaining a bona fide commitment for a
- ☐ Conventional
- ☐ ARM
- ☐ FHA
- ☐ RECD
- ☐ VA (In the event of FHA or VA financing, see Addendum – Offer for Real Estate attached hereto and ___ by this reference made apart of this contract.)
- ☐ Other _____

Mortgage for not more than ___ % of the purchase price at ___ % interest rate no later than
Buyers _SJ__ and Sellers ___ acknowledge that they have read this page.
(Initials)         (Initials)

Scanned with CamScanner   CTM Holdings 0056
Doc ID: 21216fa1d99ab63de2500512a66d3bbc29450a27

_____ 20_____. All usual costs incurred in securing such mortgage shall be paid by the _____ Seller agrees to pay the loan placement fee, if required, not to exceed _____ % of the mortgage obtained by Buyer. The balance of the purchase price less the proceeds of such mortgage shall be paid by Buyer in cash.

**FINANCING COMMITMENT.** Buyer agrees to make loan application (if applicable) immediately, or within _____ days, and use Buyer's best good faith effort to obtain a financing commitment. If Buyer has timely made the application as set out herein and a loan commitment (with all lender contingencies met) cannot be obtained by Buyer, this agreement shall be null and void and all earnest money shall be returned to Buyer. Buyer shall immediately confirm insurability of Property.

**Financing Contingencies:**

☐ Buyer's delivery of a copy of a written loan commitment to the Seller (even if the commitment is subject to conditions specified by the lender, such as appraisal) shall satisfy the Buyer's financing contingency, and the financing contingency shall be considered removed from this Purchase Contract as of the date of delivery. If Buyer does not make timely delivery of said commitment, as stated, then Seller may terminate this Offer by written notice of termination to Buyer.

☐ Both parties await appraisal. Appraisal must be completed by: _____

☐ Awaiting other mutually agreed financing terms which shall be in writing.

☐ **(C)** **ASSUMPTION OF MORTGAGE OR CONTRACT:** see Addendum – Offer for Real Estate attached and made a part of this contract.

☐ **(D)** **INSTALLMENT CONTRACT:** see Addendum – Offer for Real Estate attached and made a part of this contract.

☒ **(E)** **OTHER TERMS/CONTINGENCIES/SPECIAL PROVISIONS (i.e., any subject to sale, etc.):**
FARMLAND LEASE SHALL BE TERMINATED - OPEN TO LEASE for 2023 crop year
- Seller Agree - Buyer can Pursue using a 1031 Exchange
_____
_____
_____

This agreement is also subject to the following terms and conditions:

**1. TRUST PAYMENTS.** All funds deposited as part payments shall be held by Broker in trust pending acceptance of this offer, and examination of the abstract and delivery of deed or formal contract. Buyer authorizes the company financing this purchase to pay all funds to Broker for the benefit of Seller and Seller authorizes Agent to accept and manage payments and disbursements. At time of settlement, funds of the purchase price may be used to pay taxes, other liens, and closing costs to comply with the above requirements, to be handled under supervision of Broker, and to approval of Buyer on title questions which may be needed to produce marketable title. If Buyer is refunded any Earnest Money, any expenses incurred on Buyer's behalf shall be deducted and paid to the creditors entitled.

**Interest on Trust Account:** If agreed by brokerage and if indicated by "yes in the following space _____, the Earnest Money shall be deposited by the Broker in an interest bearing trust account and the interest earned thereon shall accrue for the benefit of the ☐ Seller, ☐ Buyer or ☐ _____ with interest credited to Social Security# _____ otherwise, the State of Iowa will receive the interest.

**2. REAL ESTATE TAXES, SPECIAL ASSESSMENTS, AND CHARGES.**

a. All regular taxes due and payable in the fiscal year in which possession is given are to be paid by Seller as well as all unpaid taxes that are liens for prior years.

b. All regular taxes for the fiscal year in which possession is given (due and payable in the following fiscal year) are to be pro-rated between Buyer and Seller as of the date of possession. The basis of such proration shall be the taxes that were certified and payable in the prior fiscal year. If such taxes are not based upon a full assessment of the present property improvements the proration shall be based on the current millage rate and the assessed value for the tax period to date of possession shown on the assessor's records, less tax abatement, if any. Buyer should verify any potential future tax liabilities. If Buyer is purchasing under an installment contract see the Farm & Land "Addendum – Offer for Real Estate" attached and made a part of this contract.

☐ Caution: If property has not been fully assessed for tax purposes, or reassessment is completed or pending, tax proration shall be on the basis of $ _____ estimated annual tax.

c. All special assessments spread on the Treasurer's Books at the time of the acceptance of this offer are to be paid by Seller. All charges for solid waste removal, utilities, and assessments for maintenance attributable to Seller's possession are to be paid by Seller. All liens caused by resolution of necessity, such as mowing, snow removal, etc. are to be paid by Seller.

d. All subsequent taxes and special assessments are to be paid by Buyer.

Buyers _____ and Sellers _____ acknowledge that they have read this page.
(Initials)

Scanned with CJW Holdings 0057
DocID: 2121f6af d99ab630625005 f2a6dd3bbc29450a27

dotloop signature verification: dtlp.us/Ukwq-qjby-0re3

3. **CLOSING AND POSSESSION.** Closing shall be on or before ___1: 00___ ☐ a.m. or ☒ p.m. _October  1st  2022_ 20 ___ and be made upon delivery of an instrument of title, but not later than date of possession, unless an interim occupancy agreement is entered into between the parties. Closing to be under the supervision of Seller's Agent, _GARY  Wyman's_. Possession to be given ___1:00___ ☐ a.m. or ☒ p.m. _October  1st  7:22_, 20 ___ and adjustment of interest, taxes, insurance and rents to be made on this date. All property, including keys, alarms, and garage door openers shall be delivered to Buyer at possession. Buyer's Agent is __ ___MATT  TOBIN_

4. **INSURANCE.** Seller shall bear the risk of loss or damage to property prior to settlement or possession, whichever first occurs. Seller agrees to maintain existing insurance, and Buyer shall immediately confirm insurability of Property and may also purchase insurance. In the event of substantial damage or destruction prior to closing, this Agreement may be null and void if Buyer desires. Buyer, however, shall have the right to complete the closing and receive insurance proceeds regardless of the extent of the damage plus a credit towards the purchase price equal to the amount of the Seller's deductible on such policy. The property shall be deemed substantially damaged or destroyed if it cannot be restored to its present condition on or before closing date.

5. **FLOOD HAZARD ZONE.** Buyer has been advised that the property ☐ is ☐ is not ☒ may be) in an area found to have special flood hazards. If the property is in a flood hazard area it may be necessary to purchase Flood Insurance in order to obtain financing. **For further information, Buyer should consult a lender and insurance carrier.**

6. **INCLUDED PROPERTY** (if any). All property that integrally belongs to, are specifically adapted to, or is part of the real estate (except rental items), whether attached or detached, such as wall to wall carpeting and vinyl, light fixtures and bulbs, ceiling fan(s), mirrors, shelving, shades, rods, blinds, awnings, shutters, storm windows, storm doors, screens, plumbing fixtures, sump pump, water heater, water softener, automatic heating equipment, fuel tank, air conditioning equipment (except window), door chimes, alarm devices, built-in items and electrical service cable/fencing, garage door opener and control(s), other attached fixtures, radio and/or attached TV receiving equipment, fencing, trees, bushes, shrubs, plants, garden bulbs, water heaters and softeners, sump pumps, attached or fitted floor coverings, installed security systems, central vacuum systems and accessories, in-ground lawn sprinkler systems and component parts, built in appliances, fences, fireplace screen, fire grate and attached equipment, appurtenant structures or equipment, storage buildings, and rural water membership shall be considered a part of real estate and included in this sale.

   **OTHER INCLUDED ITEMS, INCLUDING MACHINERY AND EQUIPMENT:** _N/A_

   **EXCLUDED PROPERTY, MACHINERY, EQUIPMENT AND RENTAL ITEMS (i.e. water softener, LP or other gas tank):** _N/A_

7. **PERSONAL PROPERTY AND DEBRIS.** Seller agrees to remove all debris and all personal property not included herein from the property by possession date unless there is a prior written agreement by the parties.

8. **DUTIES OF PARTIES:**
   a.  Seller and Buyer acknowledge and agree that REALTOR*/Broker(s), its affiliated licensees and employees: (1) must respond to all questions of the parties, however they are not required to discover hidden defects or give advice on matters outside the scope of their real estate license; (2) make no, and Seller and Buyer are not relying upon, representations or warranties as to the physical or mechanical condition of the property, its size, value, future value, income potential, whether the basement is waterproof, etc.; (3) are not qualified to advise on questions concerning the condition of the property, the legal sufficiency, legal effect or tax consequences of this document or transaction. **For such matters, Seller and Buyer are advised to consult the appropriate professional(s).**

   b.  Seller and Buyer acknowledge that the Seller of real property has a legal duty to disclose MATERIAL ADVERSE FACTS and MATERIAL DEFECTS of which Seller has actual knowledge and which a reasonable inspection by Buyer would not reveal. Buyer has the right to obtain inspections, survey and measurements at Buyer's expense. Buyer shall immediately confirm insurability of Property. Buyer is hereby advised to request that special provisions be written into this contract prior to signing same, to cover any and all conditions which Buyer might consider to be questionable or problematical (whether such be inspection for termites, drainage, water and soil conditions, adequacy of structure or any components, zoning, boundaries, utility connections, or any other matters).

   c.  By acceptance of the Offer, the Seller warrants and represents: That Seller has no notice or knowledge of any planned public improvement which may result in special assessments or other liens, that no government agency has served any notice requiring repair, alterations or corrections of any existing conditions. This representation of Seller shall survive the closing of this transaction.

   Buyers _SJC_ and Sellers _RB_ acknowledge that they have read this page.
   (Initials)                    (Initials)

Scanned with CamScanner

Doc ID: 2121b1a1d99a8e3de2b00512a6ed3bbc29450a27

9. **JOINT TENANCY IN PROCEEDS AND IN SECURITY RIGHTS IN REAL ESTATE.** If Seller, immediately preceding this offer, holds title to the property in joint tenancy, and such joint tenancy is not later destroyed by operation of law or by acts of Seller, then (1) the proceeds of this sale, and any continuing and/or recaptured rights of Seller in real estate shall be and continue in Seller as joint tenants with rights of survivorship and not as tenants in common; and (2) Buyer in the event of the death of either Seller agree to pay any balance of the proceeds of this sale to the surviving Seller and to accept deed from such surviving Seller.

10. **CONDITION OF PROPERTY.**

   a.  The property as of the date of this agreement including buildings, grounds, and all improvements will be preserved by Seller in its present condition until possession or closing, whichever takes place first, ordinary wear and tear excepted. Buyer shall be permitted to make a walk through inspection of the property prior to possession or closing, whichever is sooner, in order to determine that there has been no material change in the condition of property.

   b.  Buyer is advised to have property inspected by professional inspector(s). If improvements on the property have been previously occupied, Buyer may choose one of the following alternatives relative to the condition and quality of the property:

   ☐ i.   Within _____ days after the final acceptance date Buyer may, at Buyer's sole expense, have the property inspected by a qualified person or persons of Buyer's choice to determine if there are any structural, mechanical, plumbing, electrical, or environmental deficiencies. Within this same period, Buyer may notify Seller in writing of any such deficiency. Failure to do so shall be deemed a waiver of Buyer's inspection and repair rights and Buyer agrees to accept the property in its present condition. In the event of any claim or demand by Buyer as a result of inspections, Seller shall within 72 hours of notification declare and commence one of the following options: (1) making said items operational or functional or otherwise curing the deficiency, or (2) amending this agreement by giving Buyer a credit for the cost of curing the deficiency, or (3) canceling this agreement and refunding Buyer's earnest money deposit or any sums paid directly to Seller. If Seller does not promptly cure all such deficiencies in a manner mutually agreeable and confirmed by written addendum, signed by the parties (either pursuant to parenthetical 1 or 2 above), then buyer may declare this offer null and void and shall have the right to all payments returned.

   ☐ ii.  Buyer has verified any information that is important to Buyer by an independent investigation and/or independent inspector. Further, Buyer acknowledges that Buyer has made a careful and satisfactory inspection of the property and is purchasing the property in its existing condition.

   ☒ iii. Seller has offered Property in its "As-Is" condition and Buyer accepts Property in its "As-Is" condition. Even if an inspection is conducted, Seller shall not be obligated to replace/repair any item(s) and is not bound to release any Earnest Money or void contract.

   c.  If acceptance is made by Buyer after inspection, under b(i) above, or if no inspection is made, or if offered and sold "As-is", Buyer hereby agrees that by delivery of deed, Buyer accepts property in its "As Is" condition at time of settlement, without warranties or guarantees of any kind by Seller or Broker(s) or employees of either concerning the working condition of systems or appliances, or condition or value of the property and waives Buyer's right to object to its condition or assert any claim related to the property at any time in the future. This provision shall survive delivery of deed to Buyer.

   d. **New Construction:** If the improvements on the subject property are under construction or are to be constructed, this Agreement shall be subject to approval of plans and specifications by the parties within _____ days of final acceptance of this Agreement. This offer to buy is not a construction contract. The contract for construction will be a separate agreement between the Contractor and Buyer which will set forth all of the terms, conditions and specifications of the property to be constructed. Broker(s) and employees make no warranties as to the quality of construction or materials or any warranty of habitability.

11. **WOOD PEST INSPECTION.**  Buyer may request a pest control inspection by a licensed pest inspector within _____ days after acceptance of this Offer, which shall be done at: _____ Seller's or _____ Buyer's expense except as otherwise agreed in writing (if not marked Buyer assumes expense). Should evidence of termites or wood destroying insects be found, the property and structure(s) may be treated by a licensed pest exterminator in an appropriate manner at Seller's option, and shall include all treatment and repair reasonably required by Buyer. Buyer agrees to accept treated and repaired property; or prior to the commencement of treatment and repairs, shall have the option of declaring this agreement null and void and be entitled to full return of the earnest money. If Property is sold in its "As-is" condition, this wood pest inspection paragraph is not applicable to this Offer for Real Estate. This provision does not apply to fences, trees, shrubs, or outbuildings other than garages.

12. **WELL TEST.** If the property has a well or, the Buyers may, at their expense, within _____ days after acceptance of the offer, have the well or wells inspected by a DNR certified inspector, to determine if the well(s) are working properly. If Buyers receive an unsatisfactory report, which cannot be resolved between the parties within _____ days after receipt thereof, then upon written notice from Buyers to Sellers, this Agreement shall be null and void and all earnest money paid hereunder shall be returned to Buyers. If Property is sold in its "As-is" condition, then this Well Test paragraph is not applicable to this Offer for Real Estate.

Buyers _____ and Sellers _____ acknowledge that they have read this page.
(Initials)        (Initials)

Scanned with CamScanner
dotloop signature verification: dtlp.us/Urwq-jRju-0re3
Doc ID: 212f6fa1d99abe3de2500512a66d3bbc29450a27
CLM Holdings 0059

dotloop signature verification: dtlp.us/Urwq-jRju-6re3

13. **SURVEY.** Buyer may, prior to closing, have the property surveyed at Buyer's expense. If Buyers elects to have the survey made, Buyer will have the survey completed at least three (3) business days prior to the scheduled closing. If the survey, certified by a Registered Land Surveyor, shows any encroachment on property, or if any improvements located on the subject property encroach on lands of others, such encroachments shall be treated as a title defect.

14. **LEASE TERMINATION.** If indicated by "Yes" in the following space _____, it shall be the responsibility of Sellers at Seller's expense to terminate all rights of existing tenants so Buyers shall have sole possession and at closing Sellers shall exhibit evidence satisfactory to Buyers of such termination. Seller shall furnish copies of all leases and agreements between Tenants and Seller and this offer (☐ is) (☐ is not) subject to Buyer approving said leases and agreements by (date) _____
Seller has terminated tenant(s) lease prior to September 1ˢᵗ. (☒ yes) (☐ no)

15. **REMEDIES OF THE PARTIES - FORFEITURE - FORECLOSURE - REAL ESTATE COMMISSIONS.**
   a.  If Seller fails to fulfill this agreement, Seller will pay to REALTOR®/Broker the professional service fee (if any) in full as stated in the Exclusive Listing Agreement or other written commission agreement corresponding to the property, and Buyer shall have the right to have all payments returned or to proceed by an action or actions at law or in equity.

   b.  If Buyer fails to fulfill this agreement, Buyer will pay to REALTOR®/Broker the professional service fee (if any) in full as stated within the Buyer Agency Agreement or other written commission agreement, and all payments by Buyer may be forfeited and retained by Seller as provided in the Code of Iowa.

   c.  In addition to the foregoing remedies, Buyer and Seller each shall be entitled to any and all other remedies, or action at law or in equity, including foreclosure, and the party at fault shall pay costs and attorney fees, and a receiver may be appointed.

16. **COURT APPROVAL.** If the property is an asset of any estate, trust, conservatorship, or receivership, this contract shall be subject to Court approval, unless declared unnecessary by Buyer. If necessary, the appropriate fiduciary shall proceed promptly and diligently to bring the matter on for hearing for Court approval. In this event a Court Officer's Deed shall be used.

17. **ABSTRACT AND TITLE.** Seller shall promptly provide, at Seller's expense, an abstract of title, continued to and including date of acceptance of this Agreement. Such abstract shall be delivered to an attorney selected by the Buyers or Buyer's lender for a title opinion. Seller shall, in the alternative if requested by Buyer of Buyer's lender, provide at Seller's expense a written lien search continued to and including the date of acceptance of this Agreement. Such lien search shall be delivered to a title insurer. Seller agrees to make every reasonable effort to promptly perfect title in accordance with such opinion or title policy so that upon conveyance, title shall be deemed marketable incompliance with this Agreement and the laws of the State of Iowa and, if applicable, the title policy. Seller may await reasonable assurance that Buyer is fully approved by lender or that Buyer will in Seller's judgment proceed with the transaction before updating abstract.

18. **DEED.** Upon payment of purchase price, Seller shall convey title by general warranty deed, ☐ if not general then _____ deed, free and clear of liens and encumbrances, reservations, exceptions or modifications except as the instrument otherwise expressly provides. All warranties shall extend to time of acceptance of this offer, with special warranties as to acts of Seller up to time of delivery of deed.

19. **GENERAL PROVISIONS.** In the performance of each part of this agreement, time shall be of the essence. This agreement shall be binding on and inure to the benefit of the heirs, executors, administrators, assigns and successors in interest of the respective parties. This agreement shall survive the closing. Paragraph headings are for the convenience of reference and shall not limit nor affect the meaning of this agreement. Words and phrases herein, including any acknowledgement hereof, shall be construed as in the singular or plural number, and as masculine, feminine or neuter gender, according to the context.

20. **NOTICE.** Any notice required under this Agreement shall be deemed delivered when it is received or provided either by hand delivery, facsimile, electronic communication or certified mail. Persons designated for receipt or to give any notice shall be Seller(s) and Buyer(s) at the addresses set forth below or their Broker or Agent. Electronic or facsimile transmission sent to the other party or to the appropriate Broker, followed by electronic or faxed acknowledgement of receipt, shall constitute delivery of signed document.

21. **ENTIRE AGREEMENT.** This document contains the entire agreement of the parties and supersedes all prior Offers with respect to the property. This Offer may be modified only by a written agreement signed and dated by both parties. This Offer for Real Estate shall not be assigned by Buyer without the written consent of Seller.

22. **MEDIATION.** In the event of a dispute, Buyer and Seller agree to consider mediation as an alternative to initiating legal action. The mediation will be conducted in accordance with the rules and procedures of a mutually agreed mediation service. Even when utilizing mediation, parties may still seek legal remedies.

Buyers _____ and Sellers _____ acknowledge that they have read this page.
(Initials)

Scanned with CamScanner
Doc ID: 2121b8af1d99abe93de250051za86d3bbc29450a27

**Farm and Land - Offer for Real Estate**

**23. OTHER PROVISIONS.** All other provisions, if any, shall be by addendum or amendment to this Agreement.

**24. INDEMNITY:** If a mutual mistake regarding the rights and obligations of the parties is discovered after closing, that mistake shall be corrected by a mutual agreement. If the error is a monetary mistake, it is to be assessed and immediately collected from the party originally legally liable.

**25. ACCEPTANCE.** When accepted, this offer shall become a binding contract for the sale and purchase of the above described property and the professional service fee(s) shall be due to the Agent(s) in accordance with the Exclusive Listing Agreement, Buyer Agency Agreement or other written commission agreement, between either party and their Agent(s). This Offer shall not negate or change any of the conditions or terms of said Agreement(s), which, by this reference shall remain in full force and effect through the closing. If this offer is not accepted by Seller on or before ___5:20___ ☐ a.m. or ☒ p.m. ___July 14___, 2022, it shall become null and void and the initial payment shall be repaid to Buyer without liability on the part of said Agent(s) to either party.

<div align="center">

## THIS IS A LEGALLY BINDING CONTRACT.
### If not understood, consult with the lawyer of your choice.

Receipt of a copy of this agreement is acknowledged by the parties hereto.

</div>

1. X _Jim F. Cole_  07 / 14 / 2022        2.
   **BUYER SIGNATURE**                         **BUYER SIGNAUTRE**
   CTM HOLDINGS LLC
   **PRINTED NAME OF BUYER**                    **PRITNED NAME OF BUYER**

   **ADDRESS**                                  **ADDRESS**

   **CITY, STATE, ZIP**                         **CITY, STATE, ZIP**

   **PHONE**                                    **PHONE**

   **BUYER TAXPAYER IDENTIFICATION NUMBER**     **BUYER TAXPAYER IDENTIFICATION NUMBER**
   (optional)                                   (optional)

Seller hereby (☐accepts) (☒counters) the above offer at __3:00 PM__ ☐ a.m. or ☐ p.m.
__7-14-2022__, 20___ . (☒See attached counter offer) or (☐Seller has made a counter offer by changing and initialing terms herein. This counter offer shall become null and void unless accepted by Buyer initialing said terms on or before ___ ☐ a.m. or ☐ p.m. ___, 20___). Seller reserves the right to withdraw this counteroffer by notifying Buyer of withdrawal prior to Buyer acceptance of this counteroffer. Seller may accept other offers only after withdrawing this counteroffer, without liability on the part of the Agent's involved. Seller's Broker shall take backup offers up to the time of closing after this offer has been accepted by Seller; and (☐shall) (☐shall not) continue to show this property for sale.

1. _Ruth L. Schlotfeldt_   dotloop verified                2.
                           07/14/22 3:12 PM CDT
                           YYGO-YNGN-G74E-XQ5K
   **SELLER SIGNATURE**                          **SELLER SIGNATURE**

Ruth L. Schlotfeldt,   Manager, Lucasland LLC
   **PRINTED NAME OF SELLER**                     **PRINTED NAME OF SELLER**

   **ADDRESS**                                    **ADDRESS**

   **CITY, STATE, ZIP**                           **CITY, STATE, ZIP**

   **PHONE**                                      **PHONE**

Buyers _JFC_  and Sellers _RLS_  acknowledge that they have read this page.
       (Initials)              07/14/22
                               3:12 PM CDT
                               dotloop verified

dotloop signature verification: dtlp.us/Urwq-Jljju-0ra3

Buyer's Attorney _____

Seller's Attorney _____

Abstract location _____

Mortgage with _____

OPTIONAL:

1. _____ 2. _____
Seller's Taxpayer Identification Number

☐ This offer rejected (Seller signature required): _____

Time _____ ☐ a.m. or ☐ p.m.
Date _____

Copyright © 10/2007 The Iowa Association of REALTORS®

Buyers __SFC__, and Sellers _____, _____ acknowledge that they have read this page.
(Initials)              (Initials)

Scanned with CamScanner CLM Holdings 0062
Doc ID: 2121f6fa1d99abe3de250051a6d3bbc29450a27

# TIMBER SALE CONTRACT

This Contract made and entered into this __4__ day of __Nov__ __2022__ by and between __CTM Holdings LLC__ of __217th St Delaware IA 52086__ Hereinafter referred to as the Seller and __Flanagan Logging__ of __5921 Quality Ridge Rd Coggan IA 52218__ hereinafter referred to as the Buyer.

WHEREAS: The tract of timber located in __Oneida Plat__ Sec __33__ T __89__ N, R __4__ W __Delaware__ County, Iowa.

NOW THEREFORE THIS AGREEMENT WITNESSETH:

The Seller for and in consideration of the sum of $ __26,500.00__ on or before __Any Trees are cut__ to be paid as hereinafter provided.

## THE SELLER FURTHER OFFERS AND THE BUYER AGREES:

1. To enter upon and allow access to the above-described tract for the purpose of cutting and removing therefrom such timber as in included in the terms of this contract.

2. That all said marked logs shall become the property of the Buyer.

3. This contract (does) or (does not) include the rights to the residual and/or tops less than 8" in diameter remaining after the logs are removed.

## THE BUYER FURTHER AGREES:

1. To cut only __378__ trees marked with __Orange__ paint.

2. To make payment for each tree unnecessarily cut or wantonly injured as provided in Section 658.4 of the Code of Iowa.

3. To leave all streams free of logs, brush and other obstructions.

4. To assume liability for damage to fences, crops, cropland and other property.

5. To travel to and from and work in the timber only when the ground is firm.

6. All timber included in the agreement shall remain the property of the seller until paid for in full.

7. That the Buyer has inspected the area and timber concerned, has estimated to his own satisfaction the quantity, quality and value of the timber to be removed and accepts the goods with all faults.

8. Unless an extension of time is granted by the seller, this contract shall terminate on __May 4 2023__ after which all logs and trees remaining on the tract revert to the ownership of the seller, unless otherwise specified in paragraph 9.

9. Special Provisions:
   __25% Down payment $6625.°° 75% Balance before any trees cut $19875.__
   __Mingmal disturbance in wet land + CRP acres__

Witness Whereof the parties hereto have executed this contract on this __5th__ day of __Nov__, __2022__
__CTM Holdings, LLC__

Signature of Seller

Signature of Buyer __John Klammzn__

__5921 Quality Ridge Rd__
Address

__Coggon IA 52218__
City, State, Zip

Address

City, State, Zip

Witness

Witness __CTM Holdings-0075__

Larry Boeckenstedt

Forestry Consultant, Timber Sales and Evaluations
P.O. Box 61, New Vienna, IA 52065

Timber Sale Consulting Agreement

This agreement outlines the fees and payment schedule for consulting work in relation to the sale of timber. Consulting services may include the following:

- scaling and marketing trees for harvest
- contacting potential buyers
- sending timber sale notices to potential buyers
- arranging contract and payment between seller and buyer
- overseeing harvest

The seller is responsible for defining property boundaries.

Fees and Payment Schedule:

Seller agrees to pay consultant 7% of the total timber sale proceeds. The payment schedule is as follows:

25% of the fee is due upon receipt of the buyers initial down payment
50% of the fee amount is due upon receipt of the balance from the buyer
25% of the fee is due upon completion of the harvest

In the event no bids are accepted, there will be a $30 per hour fee for time invested, materials costs and mileage of $0.55 per mile. Payment is due within ten days after the bids are opened.

Seller Name: CTM Holding LLC ___ by _____

Seller Address: ████ █ ████ ████ █████

Date: Nov 13, 2022

Signature: _____

**CTM Holdings 0076**

**From:** James F Conlan ████████████████████████
**Date:** November 7, 2022 at 12:56:18 PM CST
**To:** "Salow, Dylan - FPAC-FSA, Manchester, IA" <Dylan.Salow@usda.gov>
**Subject: Re: [External Email]FSA Farm #4771 Tract #360  Lucas**



Sent from my iPhone


On Nov 7, 2022, at 1:50 PM, Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov>
wrote:


Glad we got it straightened out. Sounds like everything is on the right track.

# Dylan Salow
Program Technician
USDA – Iowa – Delaware County Farm Service Agency
200 S 12th St
Manchester, IA 52057
Phone (563) 927-4250
Fax (855) 208-8590
dylan.salow@usda.gov

Stay Connected with USDA:



*USDA is an equal opportunity provider, employer, and lender*

**From:** James F Conlan ████████████████████████
**Sent:** Monday, November 7, 2022 12:30 PM
**To:** James F Conlan ████████████████████
**Cc:** Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov>
**Subject:** Re: [External Email]FSA Farm #4771 Tract #360 Lucas

**CTM Holdings 0082**

Dylan, Larry Boeckenstedt confirmed with Russ Wolf from your office that there is no problem removing trees from designated wetland "provided" the stump is not removed.   The stumps will not be removed from the designated wetland.

Sent from my iPhone

On Nov 7, 2022, at 1:21 PM, James F Conlan ███████████████ wrote:

Dylan, i agree stump clearing is an issue but not harvesting the from the stump up.  Below you say Tree & Stump clearing.   I think the regs say that only stump removal -- not removal of the stump up.

Do you disagree?  The tree broker also checked with the FSA office.

Sent from my iPhone

On Nov 7, 2022, at 12:19 PM, Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov> wrote:

Jim,

Any tree & stump clearing on undetermined areas is considered making the production of an agricultural commodity more possible, even if it will not be brought into production right away. See attached appendix.
I guess I was referring to your email from October 12th that said you planned to do that on areas outside the wetlands and CRP tree planting (scroll down below).
Once again we would advise to get it done so you know what you are able to do with the property within our programs without putting you and your tenant in possible eligibility violation status down the road.
Let me know if you have any further questions.

## Dylan Salow
Program Technician
USDA – Iowa – Delaware County Farm Service Agency
200 S 12th St
Manchester, IA 52057
Phone (563) 927-4250
Fax (855) 208-8590
dylan.salow@usda.gov

Stay Connected with USDA:
<image001.png>
<image002.png>
<image003.png>

**CTM Holdings 0083**

&lt;image004.png&gt;
&lt;image005.png&gt;
&lt;image006.png&gt;

*USDA is an equal opportunity provider, employer, and lende*

**From:** James F Conlan ███████████████
**Sent:** Monday, November 7, 2022 10:44 AM
**To:** Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov>
**Subject:** Re: [External Email]FSA Farm #4771 Tract #360 Lucas

Dylan, thanks.  My understanding is that i do not need a further wetland determination until i seek to remove stumps from determined wetland or until I intend to bring into production land that has been cleared.

Sent from my iPhone

On Nov 7, 2022, at 10:55 AM, Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov> wrote:

Thanks for the heads up Jim. I did send the AD-1026 form that you filled out earlier to NRCS for a determination back on October 13th. It does take a little time to get these back as they work on them in the order they are received. I believe there are a few others in front of this one. Would you like a call if our wetland specialist plans to visit the farm to help make the determination? Right now we are in the waiting phase.

Thanks

## Dylan Salow

Program Technician
USDA – Iowa – Delaware County Farm Service Agency
200 S 12th St
Manchester, IA 52057
Phone (563) 927-4250
Fax (855) 208-8590
dylan.salow@usda.gov

Stay Connected with USDA:

*USDA is an equal opportunity provider, employer, and lende*

**From:** James F Conlan ███████████████
**Sent:** Saturday, November 5, 2022 11:57 AM
**To:** James F Conlan ███████████████
**Cc:** Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov>
**Subject:** Re: [External Email]FSA Farm #4771 Tract #360 Lucas

**CTM Holdings 0084**

Dylan, I also appreciate that before stumps are removed from non wetland, I will need a determination from you as part of the sod buster prohibitions that there are no new additional wetlands.

I'm pretty sure I understand all the prohibitions and regulations. I definitely understand where the CRP is and where the existing wetlands are.

Sent from my iPhone


On Nov 4, 2022, at 6:22 PM, James F Conlan ███████████████ wrote:

Hi Dylan. Tree harvesting company will remove everything but the stumps from the trees on the wetland. CRP will not be touched.

Eventually, i will cause the stumps to be removed from the non wetland.

Once the CRP has expired, I will remove the trees from the CRP.

Just wanted to give you a heads up

Sent from my iPhone


On Oct 12, 2022, at 11:05 AM, James F Conlan ███████████████ wrote:

Dylan, my graphics ability is poor (at best). Do you have the ability to lay the map that shows the existing wetland determined areas (1-5) over the map that shows the CRP areas? I can take a shot at it but it will be crude.



Sent from my iPhone


On Oct 12, 2022, at 9:42 AM, James F Conlan ███████████████ wrote:

Dylan, thank you. I would be grateful if you could pre fill and send to me.

My intention is to:

- not touch the CRP

- remove the tree (but not the stumps) from existing determined wetland (ie no dirt disturbance).

- remove the trees and stumps from the balance of the land that has trees on it and ready it for farming. I don't intend to tile, or otherwise alter the hydrology.

Sent from my iPhone


**CTM Holdings 0085**

On Oct 12, 2022, at 9:14 AM, Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov> wrote:

Hi Jim,

Thanks for touching base with us. Looking back through the file it looks like certain areas have erodibility determinations (NHEL, HEL) done (highlighted). Some areas do not. If anything that is not highlighted on the attached map will be cropped, we will need to get those determined. Please indicate that if you know at this time and mark the boundaries on the map if possible. For this we will check "yes" in 6A.

As far as the additional wetland determinations on areas not determined already, we will have to get that done if there are any new activities related to land leveling, clearing, filling, dredging, or excavation. You will see that outlined in our ==AD-1026 Highly Erodible Land Conservation and Wetland Conservation Certification form Part B==. Since you are planning on taking the trees and stumps out on the undetermined areas this will initiate us to have you file this form and check "yes" in 7A. We will check "no" for the remaining 7B and 7C.

I can prefill this form out for you and send it for electronic signature if that works for you. If you would rather send it by email that is fine also, just let me know. The only other thing I would like to have is a map marked with areas that are going to be cropped in the future so we know where to do the HEL/NHEL determinations.

## Dylan Salow
Program Technician
USDA – Iowa – Delaware County Farm Service Agency
200 S 12th St
Manchester, IA 52057
Phone (563) 927-4250
Fax (855) 208-8590
dylan.salow@usda.gov

Stay Connected with USDA:

*USDA is an equal opportunity provider, employer, and lende*

**From:** James F Conlan █████████████████
**Sent:** Wednesday, October 12, 2022 9:02 AM
**To:** Mack, David - NRCS, Manchester, IA <david.mack@usda.gov>
**Cc:** Rahe, Katherine - FSA, Manchester, IA <kathy.rahe@usda.gov>; Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov>; Tobin Matt █████████████████
**Subject:** Re: [External Email]FSA Farm #4771 Tract #360 Lucas

OK.  I looked at the 1026 form.  David, I would appreciate your help in filling out the form.

Sent from my iPhone

On Oct 12, 2022, at 8:58 AM, Mack, David - NRCS, Manchester, IA <david.mack@usda.gov> wrote:

**CTM Holdings 0086**

Thanks for the additional information Jim. Any areas that have not had an HEL and/or wetland determination completed on them that you plan to bring into crop production need to have a determination done on them. Filling out form 1026 will get that started for you. We will get the existing wetlands and CRP flagged for you this fall.
Dave

**From:** James F Conlan <span style="background:black">■■■■■■■■■■■■</span>
**Sent:** Tuesday, October 11, 2022 6:03 PM
**To:** James F Conlan <span style="background:black">■■■■■■■■■</span>
**Cc:** Mack, David - NRCS, Manchester, IA <david.mack@usda.gov>; Rahe, Katherine - FSA, Manchester, IA <kathy.rahe@usda.gov>; Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov>; Tobin Matt <span style="background:black">■■■■</span>
**Subject:** Re: [External Email]FSA Farm #4771 Tract #360 Lucas

Hi David, I should have been clearer --

I would like CRP areas, and the areas that have been determined to be wetlands in the past, flagged.

Thanks

Sent from my iPhone

On Oct 11, 2022, at 5:48 PM, James F Conlan <span style="background:black">■■■■■■■■■</span> wrote:

Hi David.

1. I would like the areas that have been determined to be wetlands in the past flagged;

2. Not sure when we will start work but could be as early as November, 2022 -- when the current crop is out, and should be finished before the 2023 crop goes in;

3. I do not wish to have any further or additional determination on wetlands. If I need an HEL determination (separate and apart from a wetland determination) before bringing land into production that is not currently cropped, not currently in crp, and not currently a determined wet land, please let me know.

Sent from my iPhone

On Oct 11, 2022, at 4:28 PM, Mack, David - NRCS, Manchester, IA <david.mack@usda.gov> wrote:

**CTM Holdings 0087**

Hi Jim, Congrats on your purchase and thanks for keeping us in the loop! We can get those areas marked with wire flags. When do you plan to start the work? Also, some areas of the farm have not had a wetland determination and Highly Erodible Land (HEL) determination. Please work with FSA to submit form 1026 to get that determination process started for the new areas you plan to bring into crop production.
Dave

Dave Mack
District Conservationist
USDA  NRCS
200 S. 12th St.
Manchester, IA 52057
Office 563-927-4590 X 305
Cell ███████████

**From:** James F Conlan ███████████████████████
**Sent:** Friday, October 7, 2022 4:49 PM
**To:** Rahe, Katherine - FSA, Manchester, IA <kathy.rahe@usda.gov>
**Cc:** Mack, David - NRCS, Manchester, IA <david.mack@usda.gov>; Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov>; Tobin Matt ███████████████████████
**Subject:** Re: [External Email]FSA Farm #4771 Tract #360 Lucas

Hi Kathy. Cory Pfab is the tenant and will be assignee of the CRP contact -- receiving the payment shares in lieu of CTM Holdings LLC.

Sent from my iPhone

On Oct 7, 2022, at 10:28 PM, Rahe, Katherine - FSA, Manchester, IA <kathy.rahe@usda.gov> wrote:

Hi Jim,
Thank you for notifying us of the change. I have retrieved a copy of the Warranty Deed conveying ownership from the Iowa Land Records website. I will initiate the process of updating ownership in our Farm Records database.
I will need to initiate a CRP contract revision due to the change in ownership. When visiting the office earlier this summer we did have a brief discussion on this topic, you indicated you may have a tenant that you would want to also be on the CRP contract receiving the payment shares in lieu of CTM Holdings LLC. Please advise how you would like to proceed with that scenario. If you will be in the area we can schedule a time for you to visit the office to sign documents, or they may be completed via email or electronic signature.

**CTM Holdings 0088**

Both Dave and Dylan are out of the office today, and our offices will be closed on Monday October 10, 2022 in observance of Columbus Day, a Federal holiday. I would anticipate one or both of them responding to you next week regarding your request to mark the wetland and CRP areas.
Please let me know any questions you have.
Thank you!

**Kathy Rahe**
Key Program Technician
USDA – Farm Service Agency
Delaware County, Iowa
(563)927-4250
Fax (855)208-8590
[kathy.rahe@usda.gov](mailto:kathy.rahe@usda.gov)

*Stay Connected with USDA:*



*USDA is an equal opportunity provider, employer and lender.*

*This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.*

**From:** James F Conlan ███████████████████
**Sent:** Friday, October 7, 2022 3:16 AM
**To:** Mack, David - NRCS, Manchester, IA <[david.mack@usda.gov](mailto:david.mack@usda.gov)>
**Cc:** Rahe, Katherine - FSA, Manchester, IA <[kathy.rahe@usda.gov](mailto:kathy.rahe@usda.gov)>; Salow, Dylan - FPAC-FSA, Manchester, IA <[Dylan.Salow@usda.gov](mailto:Dylan.Salow@usda.gov)>; Tobin Matt ████████████████████
**Subject:** Re: [External Email]FSA Farm #4771 Tract #360 Lucas

Hi All. I did close on the purchase of the Lucas Farm on Sept 30, 2022. CTM Holdings, LLC is now the owner.

1. I do plan to remove the trees, but not the stumps, from the determined wetlands.

**CTM Holdings 0089**

2.  I will not disturb the crp in any way, including the tree crp.

3.  I do plan to remove the trees
and the stumps from, and ready for farming, the land that is neither determined wetland nor crp.

I would be grateful if we could arrange to mark the determined wetlands area and the crp areas so the loggers stay off the crp and so we do not remove stumps from the determined wetlands.

Sent from my iPhone

On Aug 10, 2022, at 8:29 PM, Mack, David - NRCS, Manchester, IA <david.mack@usda.gov> wrote:

Hi Jim,
Thanks for keeping us in the loop regarding your plans for this property.  I wanted to clarify the USDA Farm Bill Wetland provisions that you, Dylan, and I discussed during our visit in the office.
Normal logging/timber harvest without stump removal and new trees are planted or encouraged to grow is generally not considered a wetland violation.  If you plan to clear the site and remove stumps after logging that could  be considered making agricultural production possible which could/would result in a wetland violation.
The areas that have not had a wetland determination are considered "not inventoried" meaning a wetland deamination has not been completed on the areas.  We encourage you to request a determination on these areas prior to any clearing, filling, draining activities.
I've attached a handout that covers USDA wetland information in more detail that I hope you find useful.
Dave

**From:** James F Conlan ██████████████████████
**Sent:** Tuesday, August 9, 2022 5:17 AM
**To:** Rahe, Katherine - FSA, Manchester, IA <kathy.rahe@usda.gov>
**Cc:** Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov>; Mack, David - NRCS, Manchester, IA <david.mack@usda.gov>
**Subject:** Re: [External Email]FSA Farm #4771 Tract #360 Lucas

Kathy, thank you.  I should have been clear that I do not intend to log trees off CRP.  While I knew Field 11 was CRP, i did not know it was tree planting crp.  I will make sure the loggers have clear markers to avoid CRP areas of all kinds.

I intend to log all the trees off the areas that are not CRP.  I also intend to log all the trees off areas that are determined wetlands and areas that have not been determined to be wetlands (and are not CRP).

**CTM Holdings 0090**

As I read the statutes, logging trees off wetland is not a wetland violation, and there is no requirement to seek additional wetland determination before removing trees from non crp land that has not been determined a wetland. If i'm missing something in the statutes, and the rules interpreting them, please let me know.

Kathy, I appreciate your knowledge and help.

Sent from my iPhone

On Aug 3, 2022, at 11:19 AM, Rahe, Katherine - FSA, Manchester, IA <kathy.rahe@usda.gov> wrote:

Good Morning Jim,
Glad we could help!
I have attached the tract map for reference. Field number 11 is part of the CRP contract and is a tree planting practice, so the trees within that field do need to remain through the end of the CRP contract (scheduled to expire 09-30-2024). I could not recall if we had specifically discussed that field the day you were in the office.
To my knowledge, the current owners have not submitted any additional request for wetland determinations on the farm. At this time, any logging or widespread tree removal could potentially create a wetland violation situation. A wetland violation would jeopardize all financial benefits associated to the farm, including those of any tenants associated to the farm, and possibly their other farming interests. Not sure the extent of what you are referencing below, but please keep in mind once a wetland determination request is filed, it may take a few months to receive the determination back. Let me know if you have additional questions.
Thanks for checking in!

**Kathy Rahe**
Key Program Technician
USDA – Farm Service Agency
Delaware County, Iowa
(563)927-4250
Fax (855)208-8590
kathy.rahe@usda.gov

*Stay Connected with USDA:*
*USDA is an equal opportunity provider, employer and lender.*

*This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.*

**CTM Holdings 0091**

**From:** James F Conlan ████████████████████
**Sent:** Wednesday, August 3, 2022 5:45 AM
**To:** Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov>
**Cc:** Rahe, Katherine - FSA, Manchester, IA <kathy.rahe@usda.gov>
**Subject:** Re: [External Email]FSA Farm #4771 Tract #360 Lucas

Thanks again for taking the time to talk about the farm next to the town of Delaware -- very helpful.

As a heads up, in the Autumn, I intend to have the trees logged off the farm - they are mostly soft maple (not very valuable wood and mostly used for pallets).   There are, of course, no trees on the crp acres.

Sent from my iPhone

On Jul 19, 2022, at 8:18 AM, Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov> wrote:

Jim,

Just following up with you before stopping in tomorrow. In order to view/discuss information relating to the Lucasland property, we will need you to provide a signed purchase agreement or have a written statement from the owner that it is ok to discuss this information pertaining to property owned by them in Delaware County. You can bring this with tomorrow or send me an email with the attached information. Let me know if you have any further questions.

Thanks

**Dylan Salow**
Program Technician
USDA – Iowa – Delaware County Farm Service Agency
200 S 12ᵗʰ St
Manchester, IA 52057
Phone (563) 927-4250
Fax (855) 208-8590
dylan.salow@usda.gov

Stay Connected with USDA:

*USDA is an equal opportunity provider, employer, and lende*

**From:** James F Conlan ████████████████████
**Sent:** Monday, July 18, 2022 8:34 AM
**To:** Nickol, Heidi - FSA, Urbandale, IA <heidi.nickol@usda.gov>
**Cc:** Portz, Joseph - FSA, Epworth, IA <joseph.portz@usda.gov>; Rahe, Katherine - FSA, Manchester, IA <kathy.rahe@usda.gov>; Salow, Dylan - FPAC-FSA, Manchester, IA <Dylan.Salow@usda.gov>
**Subject:** Re: [External Email]FSA Farm #4771 Tract #360 Lucas

Thanks very much, Heidi.  Hi Joseph, Katherine, and Dylan.   I'm in Eastern Iowa this Wednesday afternoon and Thursday if that is a convenient time to meet.

**CTM Holdings 0092**

Sent from my iPhone

On Jul 18, 2022, at 9:28 AM, Nickol, Heidi - FSA, Urbandale, IA <heidi.nickol@usda.gov> wrote:

Hi Jim,

I took a new position with FSA and am no longer the CED in Delaware County. I have CC'd the Acting CED and two employees at the Delaware office on this email to assist you as your questions cross a few different areas of program eligibility. I am certain they can answer your questions. Have a great day!

Heidi J Nickol
Agricultural Program Specialist
Iowa State Office - Farm Service Agency
United States Department of Agriculture
10500 Buena Vista Ct
Des Moines, IA 50322-3782

Stay Connected with USDA:

*USDA is an equal opportunity provider, employer, and lender.*

**From:** James F Conlan ████████████████████
**Sent:** Saturday, July 16, 2022 10:18 PM
**To:** Nickol, Heidi - FSA, Urbandale, IA <heidi.nickol@usda.gov>
**Subject:** [External Email]FSA Farm #4771 Tract #360 Lucas

[External Email]
If this message comes from an unexpected sender or references a vague/unexpected topic;
Use caution before clicking links or opening attachments.
Please send any concerns or suspicious messages to: Spam.Abuse@usda.gov

Hi Heidi. I look forward to meeting you and talking about the following.

I recently signed an agreement to purchase the above referenced farm. We close on or before October 1, 2022.

10.4 acres of the farm are enrolled in the CRP, expiring after the 2024 crop year. 9 acres of the farm appear to have been designated wetlands in 2010, but not the 10.4 acres that were thereafter enrolled in the CRP. The wetland designation forms and maps from 2010 are attached.

I would like your help with the process of seeking a determination (a redetermination) that some or all of the 9 acres are not wetlands. Before any such redetermination, I would also be grateful for any guidance you may provide on the removal of trees from the farm. Specifically, there are 21 acres of trees on the farm and I would also like to know if anything from FSA is necessary for me to:

**CTM Holdings 0093**

1. remove the 11/12 acres of trees from the farm that are not on the 10.4 acres of CRP and are not on the 9 acres currently designated as wetlands; and

2. remove trees that are part of the currently designated 9 acres of wetlands.

Heidi, my review of the applicable law, rules, and regulations leads me to the following conclusions:

a. without losing eligibility to participate in USDA programs, I may remove the trees on the 11/12 acres that are not currently designated wetlands and are not in the CRP, and I may farm those 11/12 acres; and

b. without losing eligibility to participate in USDA programs, I may remove the trees on the 9 acres of designated wetlands provided I do not thereafter use the 9 acres for crops (ie the trees are not removed for the purpose, or to have the effect, of making the production of an agricultural commodity possible ... on the currently designated wetlands). US Code of Federal Regulations; Title 7 – Agriculture; Subtitle A – Office of the Secretary of Agriculture; Part 12 – Highly Erodible Land and Wetland Compliance; Subpart A – General Provisions; Section 12.4 (b) & (c).

Again, I look forward to discussing the above with you and wanted to provide you some context for our discussion. My contact details follow:

Jim Conlan

█████████████████████████████

Mobile ████████████████

Through two legal entities (B&C, LLC and CTM Holdings LLC), I own and lease to farmers land in Delaware, Linn, Jackson, and Dubuque counties. I grew up in Bernard, Iowa, went to Wahlert High School and the University of Iowa.

Thanks very much for your time.

Sent from my iPhone

**CTM Holdings 0094**

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

**CTM Holdings 0095**



# FARM LEASE - CASH OR CROP SHARES

THIS LEASE ("Lease") is made between CTM Holdings, LLC ("Landlord"), whose address for the purpose of this Lease is ███████████████████████████, and Cory Pfab and Susan Pfab ("Tenant"), whose address for the purpose of this Lease is ███████████████████████.

THE PARTIES AGREE AS FOLLOWS:

1. **PREMISES AND TERM.** Landlord leases to Tenant the following real estate situated in Delaware County, Iowa (the "Real Estate"):

   Tax Parcel Numbers: 480000403300, 480000403400 and 4800000403410 legally described as:
   Southeast Quarter (SE ¼) of Southeast Quarter (SE ¼) and the East one Fourth (E ¼) of Southwest Quarter (SW ¼) of Southeast Quarter (SE ¼) of Section Thirty-Two (32); the Southwest Quarter (SW ¼) of Southwest Quarter (SW ¼) of Section Thirty Three (33); all in Township Eighty Nine (89), North, Range Four (4), West of the Fifth P.M., all subject to easements and existing roadways of record;

   The exact legal description is subject to verification by review of the abstract of title,

   and <u>currently</u> containing 41 tillable acres per county FSA records (41 crop acres and 10.4 acres of CRP land), more or less, with possession by Tenant for a term of two (2) years to commence on March 1, 2023, and end on March 1, 2025. The Tenant has had or been offered an opportunity to make an independent investigation as to the acres and boundaries of the premises. In the event that possession cannot be delivered within fifteen (15) days after commencement of this Lease, Tenant may terminate this Lease by giving the Landlord notice in writing.

2. **RENT.** Tenant shall pay to Landlord as rent for the Real Estate (the "Rent"):
   Total annual cash rent of $23,100.00 (41 acres x $500 = $20,500 + 10.4 acres x $250 = $2,600) payable, unless otherwise agreed, as follows: $11,550.00 on March 1, 2023, $11,550.00 on September 1, 2023, $11,550.00 on March 1, 2024 and $11,550.00 on September 1, 2024.

   All Rent is to be paid to Landlord at the address above or at such other place as Landlord may direct in writing. Rent must be in Landlord's possession on or before the due date. Participation of this farm in any offered program by the U.S. Department of Agriculture or any state for crop production control or soil conservation, the observance of the terms and conditions of this program, and the division of farm program payments, requires Landlord's consent. Payments from participation in these programs shall be divided 0% Landlord 100% Tenant. Governmental cost-sharing payments for permanent soil conservation structures shall be divided 100% Landlord 0% Tenant. Crop disaster

©The Iowa State Bar Association 2022
IowaDocs®

Form No. 135, Farm Lease – Cash or Crop Shares
Revised January 2016

CTM Holdings 0096

payments shall be divided 0% Landlord 100% Tenant.

3. **LANDLORD'S LIEN AND SECURITY INTEREST.** As security for all sums due or which will become due from Tenant to Landlord, Tenant hereby grants to Landlord, in addition to any statutory liens, a security interest as provided in the Iowa Uniform Commercial Code and a contractual lien in all crops produced on the premises and the proceeds and products thereof, all contract rights concerning such crops, proceeds and/or products, all proceeds of insurance collected on account of destruction of such crops, all contract rights and U.S. government and/or state agricultural farm program payments in connection with the above described premises whether such contract rights be payable in cash or in kind, including the proceeds from such rights, and any and all other personal property kept or used on the real estate that is not exempt from execution. Tenant shall also sign any additional forms required to validate the security interest in government program payments.

Tenant shall not sell such crops unless Landlord agrees otherwise. Tenant shall notify Landlord of Tenant's intention to sell crop at least three (3) business days prior to sale of the crop (with business days being described as Monday through Friday, except any Iowa or federal holidays). Tenant shall pay the full rent for the crop year in which the crop is produced, whether due or not, at the time of sale pursuant to Landlord's consent to release Landlord's security interests. Upon payment in full Landlord shall release Landlord's lien on the crop produced in that crop year on the premises. The parties agree that by the Landlord releasing the lien as to the crop in one year, the Landlord in no way releases the lien or agrees to release the lien in any prior or subsequent year.

Tenant shall sign and deliver to Landlord a list of potential buyers of the crops upon which Landlord has been granted a security interest in this lease. Unless Landlord otherwise consents, Tenant will not sell these crops to a buyer who is not on the potential list of buyers unless Tenant pays the full rent due for the crop year to the Landlord at or prior to the date of sale. Landlord may give notice to the potential buyers of the existence of this security interest.

Landlord is further granted the power, coupled with an interest, to sign on behalf of Tenant as attorney-in-fact and to file one or more financing statements under the Iowa Uniform Commercial Code naming Tenant as Debtor and Landlord as Secured Party and describing the collateral herein specified. Tenant consents to the financing statement being filed immediately after execution of this Lease.

4. **INPUT COSTS AND EXPENSES.** Tenant shall prepare the Real Estate and plant such crops in a timely fashion as may be directed by Tenant. Tenant shall only be entitled to pasture or till those portions of the Real Estate designated by Landlord. All necessary machinery and equipment, as well as labor, necessary to carry out the terms of this lease shall be furnished by and at the expense of the Tenant. The following materials, in the amounts required by good husbandry, shall be acquired by Tenant and paid for by the parties as follows:

|  | % Landlord | % Tenant |
|---|---|---|
| (1) Fertilizer | 0% | 100% |
| (2) Lime and Trace Minerals | 0% | 100% |

©The Iowa State Bar Association 2022
IowaDocs®

Form No. 135, Farm Lease – Cash or Crop Shares
Revised January 2016

CTM Holdings 0097

| | | |
|---|---|---|
| (3) Herbicide | 0% | 100% |
| (4) Insecticides | 0% | 100% |
| (5) Seeds | 0% | 100% |
| (6) Seed Cleaning | 0% | 100% |
| (7) Harvesting and/or Shelling Expense | 0% | 100% |
| (8) Grain Drying | 0% | 100% |
| (9) Grain Storage | 0% | 100% |
| (10) Other Expenses | 0% | 100% |

5. **PROPER HUSBANDRY; HARVESTING OF CROPS; CARE OF SOIL, TREES, SHRUBS AND GRASS.** Tenant shall farm the Real Estate in a manner consistent with good husbandry, seek to obtain the best crop production that the soil and crop season will permit, properly care for all growing crops in a manner consistent with good husbandry, and harvest all crops on a timely basis. In the event Tenant fails to do so, Landlord reserves the right, personally or by designated agents, to enter upon the Real Estate and properly care for and harvest all growing crops, charging the cost of the care and harvest to the Tenant, as part of the Rent. Tenant shall timely control all weeds, including noxious weeds, weeds in the fence rows, along driveways and around buildings throughout the premises. Tenant shall comply with all terms of the conservation plan and any other required environmental plans for the leased premises. Tenant shall do what is reasonably necessary to control soil erosion including, but not limited to, the maintenance of existing watercourses, waterways, ditches, drainage areas, terraces and tile drains, and abstain from any practice which will cause damage to the Real Estate.

   Upon request from the Landlord, Tenant shall by August 15 of each lease year provide to the Landlord a written listing showing all crops planted, including the acres of each crop planted, fertilizers, herbicides and insecticides applied showing the place of application, the name and address of the applicator, the type of application and the quantity of such items applied on the lease premises during such year.

   Tenant shall distribute upon the poorest tillable soil on the Real Estate, unless directed otherwise by Landlord, all of the manure and compost from the farming operation suitable to be used. Tenant shall not remove from the Real Estate, nor burn, any straw, stalks, stubble, or similar plant materials, all of which are recognized as the property of Landlord. Tenant may use these materials, however, upon the Real Estate for the farming operations. Tenant shall protect all trees, vines and shrubbery upon the Real Estate from injury by Tenant's cropping operation or livestock.

   Tenant shall maintain accurate yield records for the real estate, and upon request, during or after lease term, shall disclose to Landlord, all yield base information required for participation in government program

6. **DELIVERY OF GRAIN.** Intentionally omitted.
7. **LANDLORD'S STORAGE SPACE.** Intentionally omitted.

©The Iowa State Bar Association 2022          Form No. 135, Farm Lease – Cash or Crop Shares
IowaDocs®          Revised January 2016

CTM Holdings 0098

8. **ENVIRONMENTAL.**
   a. <u>Landlord</u>. To the best of Landlord's knowledge to date:
      i. Neither Landlord nor, Landlord's former or present tenants, are subject to any investigation concerning the premises by any governmental authority under any applicable federal, state, or local codes, rules, and regulations pertaining to air and water quality, the handling, transportation, storage, treatment, usage, or disposal of toxic or hazardous substances, air emissions, other environmental matters, and all zoning and other land use matters.
      ii. Any handling, transportation, storage, treatment, or use of toxic or hazardous substances that has occurred on the premises has been in compliance with all applicable federal, state, and local codes, rules, and regulations.
      iii. No leak, spill release, discharge, emission, or disposal of toxic or hazardous substances has occurred on the premises.
      iv. The soil, groundwater, and soil vapor on or under the premises is free of toxic or hazardous substances except for chemicals (including without limitation fertilizer, herbicides, insecticides) applied in conformance with good farming methods, applicable rules and regulations and the label directions of each chemical.
      Landlord shall hold Tenant harmless against liability for removing solid waste disposal sites existing at the execution of this Lease, with the exception that Tenant shall be liable for removal of solid waste disposal sites to the extent that the Tenant created or contributed to the solid waste disposal site at any time.
      Landlord shall assume liability and shall indemnify and hold Tenant harmless against any liability or expense arising from any condition which existed, whether known or unknown, at the time of execution of the lease which is not a result of actions of the Tenant or which arises after date of execution but which is not a result of actions of the Tenant.
      Landlord shall disclose in writing to Tenant the existence of any known wells, underground storage tanks, hazardous waste sites, and solid waste disposal sites. Disclosure may be provided by a properly completed groundwater hazard statement to be supplemented if changes occur.
   b. <u>Tenant</u>. Tenant shall comply with all applicable environmental laws concerning application, storage and handling of chemicals (including, without limitation, herbicides and insecticides) and fertilizers. Tenant shall apply any chemicals used for weed or insect control at levels not to exceed the manufacturer's recommendation for the soil types involved. Farm chemicals may (not) be stored on the premises for more than one year. Farm chemicals for use on other properties may (not) be stored on this property. Chemicals stored on the premises shall be stored in clearly marked, tightly closed containers. No chemicals or chemical containers will be disposed of on the premises. Application of chemicals for agricultural purposes per manufacturer's recommendation shall not be construed to constitute disposal.
      Tenant shall employ all means appropriate to insure that well or ground water contamination does not occur, and shall be responsible to follow all applicator's licensing requirements. Tenant shall install and maintain safety check valves for injection of any chemicals and/or fertilizers into an irrigation system (injection valve only, not main well check valve). Tenant shall properly post all fields (when posting is required) whenever chemicals are applied by ground or air. Tenant shall haul and

©**The Iowa State Bar Association 2022**        **Form No. 135, Farm Lease – Cash or Crop Shares**
**IowaDocs®**        **Revised January 2016**

**CTM Holdings 0099**

spread all manure on appropriate fields at times and in quantities consistent with environmental protection requirements. Tenant shall not dispose of waste oil, tires, batteries, paint, other chemicals or containers anywhere on the premises. Solid waste may (not) be disposed of on the premises. Dead livestock may (not) be buried on the premises. If disposal of solid waste or burial of dead animals is permitted as stated in the previous two sentences, the disposal or burial shall be in compliance with all applicable environmental laws. Tenant shall not use waste oil as a means to suppress dust on any roads on or near the premises. No underground storage tanks, except human waste septic systems that meet current codes, rules, and regulations, shall be maintained on the premises.

Tenant shall immediately notify Landlord of any chemical discharge, leak, or spill which occurs on premises. Tenant shall assume liability and shall indemnify and hold Landlord harmless for any claim or violation of standards which results from Tenant's use of the premises. Tenant shall assume defense of all claims, except claims resulting from Landlord's negligence, in which case each party shall be responsible for that party's defense of any claim. After termination, Tenant shall remain liable for violations which occurred during the term of this Lease.

**In the absence of selection of an alternative where choices are provided in this paragraph 8b, the choice of the word "may" shall be presumed unless that presumption is contrary to applicable environmental laws and regulations.**

9. **TERMINATION OF LEASE.** This Lease shall automatically renew upon expiration from year-to-year, upon the same terms and conditions unless either party gives due and timely written notice to the other of an election not to renew this Lease. If renewed, the tenancy shall terminate on March 1 of the year following, provided that the tenancy shall not continue because of an absence of notice in the event there is a default in the performance of this Lease. All notices of termination of this Lease shall be as provided by law.

10. **POSSESSION AND CONDITION AT END OF TERM.** At the termination of this Lease, Tenant will relinquish possession of the Real Estate to the Landlord. If Tenant fails to do so Tenant agrees to pay Landlord $500.00 per day, as liquidated damages until possession is delivered to Landlord. At the time of delivery of the Real Estate to Landlord, Tenant shall assure that the Real Estate is in good order and condition, and substantially the same as it was when received by Tenant at the commencement of this Lease, excusable or insurable loss by fire, unavoidable accidents and ordinary wear, excepted.

11. **LANDLORD'S RIGHT OF ENTRY AND INSPECTION.** In the event notice of termination of this Lease has been properly served, Landlord may enter upon the Real Estate or authorize someone else to enter upon the Real Estate to conduct any normal tillage or fertilizer operation after Tenant has completed the harvesting of crops even if this is prior to the date of termination of the lease. Landlord may enter upon the Real Estate at any reasonable time for the purpose of viewing or seeding or making repairs, or for other reasonable purposes.

12. **VIOLATION OF TERMS OF LEASE.** If Tenant or Landlord violates the terms of this Lease, the other may pursue the legal and equitable remedies to which each is entitled. Tenant's failure to pay any Rent when due shall cause all unpaid Rent to become immediately due and payable, without any notice to or demand upon Tenant.

©The Iowa State Bar Association 2022
IowaDocs®

Form No. 135, Farm Lease – Cash or Crop Shares
Revised January 2016

CTM Holdings 0100

13. **REPAIRS.**  Tenant shall maintain the fences on the leased premises in good and proper repair. Landlord shall furnish necessary materials for repairs that Landlord deems necessary within a reasonable time after being notified of the need for repairs. Tenant shall haul the materials to the repair site without charge to Landlord.

14. **NEW IMPROVEMENTS.**  All buildings, fences and improvements of every kind and nature that may be erected or established upon the Real Estate during the term of the Lease by the Tenant shall constitute additional rent and shall inure to the Real Estate, becoming the property of Landlord unless the Landlord has agreed in writing prior to the erection that the Tenant may remove the improvement at the end of the lease.

15. **WELL, WINDMILL, WATER AND SEPTIC SYSTEMS.**  Intentionally omitted.

16. **EXPENSES INCURRED WITHOUT CONSENT OF LANDLORD.**  No expense shall be incurred for or on account of the Landlord without first obtaining Landlord's written authorization. Tenant shall take no actions that might cause a mechanic's lien to be imposed upon the Real Estate.

17. **NO AGENCY.**  Tenant is not an agent of the Landlord.

18. **TELEVISION AND RADIO.**  Intentionally omitted.

19. **ACCOUNTING.**  Intentionally omitted.

20. **ATTORNEY FEES AND COURT COSTS.**  If either party files suit to enforce any of the terms of this Lease, the prevailing party shall be entitled to recover court costs and reasonable attorneys' fees.

21. **CHANGE IN LEASE TERMS.**  The conduct of either party, by act or omission, shall not be construed as a material alteration of this Lease until such provision is reduced to writing and executed by both parties as addendum to this Lease.

22. **CONSTRUCTION.**  Words and phrases herein, including the acknowledgment, are construed as in the singular or plural and as the appropriate gender, according to the context.

23. **NOTICES.**  The notices contemplated in this Lease shall be made in writing and shall either be delivered in person, or be mailed in the U.S. mail, certified mail to the recipient's last known mailing address, except for the notice of termination set forth in Section 9, which shall be governed by the Code of Iowa.

24. **ASSIGNMENT.**  Tenant shall not assign this Lease or sublet the Real Estate or any portion thereof without prior written authorization of Landlord.

25. **CERTIFICATION**  Tenant certifies that it is not acting, directly or indirectly, for or on behalf of any person, group, entity or nation named by any Executive Order or the United States Treasury Department as a terrorist, "Specially Designated National and Blocked Person" or any other banned or blocked person, entity, nation or transaction pursuant to any law, order, rule or regulation that is enforced or administered by the Office of Foreign Assets Control; and it is not engaged in this transaction, directly or indirectly on behalf of, or instigating or facilitating this transaction, directly or indirectly on behalf of, any such person, group, entity or nation.  Tenant hereby agrees to defend, indemnify and hold harmless Landlord from and against any and all claims, damages, losses, risks, liabilities and expenses (including attorney's fees and costs) arising from or related to any breach of the foregoing certification.

26. **ADDITIONAL PROVISIONS.**
    A.  Tenant agrees that no animals or manure will be placed on the property.

©The Iowa State Bar Association 2022       Form No. 135, Farm Lease – Cash or Crop Shares
IowaDocs®       Revised January 2016

**CTM Holdings 0101**

B. Tenant agrees that the existing waterways will not be tilled and that cornstalks or bean stubble will not be removed from the fields.

C. TENANT'S RENT OPTION. Tenant shall have the option to lease the Real Estate for one (1) additional one (1) year term beginning March 1, 2025, and ending February 28, 2026, for rental rate of $25,700.00, on the same terms and conditions set forth in this Lease. The additional one (1) year term will be for 51.4 tillable acres at a rate of $500.00 per acre. Tenant shall give Landlord written notice of his intent to exercise this option no later than August 1, 2024. In the event that Tenant fails to give Landlord written notice to exercise Tenant's option to rent the Real Estate for the 2025 crop year, then Landlord may terminate Tenant's tenancy in accordance with Iowa Code Chapter 562. If the lease is terminated, possession ends after crops are removed from the fields.

D. Tenant agrees that Landlord has the ability to sell or develop all or any part of the Real Estate at any time, and in the event that Landlord sells or develops all or part of the Real Estate, Tenant agrees that Tenant's lease on the sold or developed portion of the Real Estate is immediately and automatically terminated without regard to Tenant's rights under Iowa Code Chapter 562. However, if Landlord sells or develops any portion of the Real Estate during the term of this lease (including any renewal terms), the Landlord shall credit Tenant for the direct cost of any destroyed current year crop (fertilizer, seed, spray, fuel, but not labor or machinery use) and that this shall be Tenant's sole remedy for damages.

E. CRP Payment. There are an additional 10.4 acres (as of 2022) in CRP. Landlord shall assign the CRP contract and the accompanying CRP payment to Tenant. The Tenant will also lease these 10.4 acres of CRP at a rate of $250.00 per acre (total $2,600.00) Tenant will maintain the CRP acres. The 10.4 acres in CRP will no longer be in CRP as of October 2024.

F. COUNTERPARTS. This agreement may be executed in counterparts, each of which when executed and delivered shall constitute an original of this agreement. No counterpart shall be effective until each party has executed at least one counterpart. In addition, a facsimile, photocopy, scanned copy or digital signature shall have the same force and effect as an original signature.

DATED: _____9 - 72_____ , 2022.

TENANTS:

_____
Cory Pfab

_____
Susan Pfab

LANDLORD:
CTM HOLDINGS, LLC

_____
By: James F. Conlan, Member

©The Iowa State Bar Association 2022
IowaDocs®

Form No. 135, Farm Lease – Cash or Crop Shares
Revised January 2016

CTM Holdings 0102

This form is available electronically.

**AD-1026**
(10-30-14)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

*(See Page 2 for Privacy and Paperwork Reduction Act Statements)*

RECEIVED
OCT 12 2022
Delaware Co. FSA

# HIGHLY ERODIBLE LAND CONSERVATION (HELC) AND WETLAND CONSERVATION (WC) CERTIFICATION

**Read attached AD-1026 Appendix before completing form.**

## PART A – BASIC INFORMATION

| 1. Name of Producer | 2. Tax Identification Number *(Last 4 digits)* | 3. Crop Year |
|---|---|---|
| CTM Holdings LLC | ▓▓▓▓ | 2023 |

4. Names of affiliated persons with farming interests. *Enter "None," if applicable.*

None

RECEIVED
OCT 14 2022
NRCS

*Affiliated persons with farming interests must also file an AD-1026. See Item 7 in the Appendix for a definition of an affiliated person.*

5. Check one of these boxes if the statement applies; otherwise continue to Part B.

A. ☐ The producer in Part A does not have interest in land devoted to agriculture. Examples include bee keepers who place their hives on another person's land, producers of crops grown in greenhouses, and producers of aquaculture AND these producers do not own/lease any agricultural land themselves. **Note:** Do not check this box if the producer shares in a crop.

B. ☐ The producer in Part A meets all three of the following:
- does not participate in any USDA program that is subject to HELC and WC compliance except Federal Crop Insurance.
- only has interest in land devoted to agriculture which is exclusively used for perennial crops, except sugarcane, and
- has not converted a wetland after February 7, 2014.

Perennial crops include, but are not limited to, tree fruit, tree nuts, grapes, olives, native pasture and perennial forage. A producer that produces alfalfa should contact the Natural Resources Conservation Service at the nearest USDA Service Center to determine whether such production qualifies as production of a perennial crop.

**Note:** *If either box is checked, and the producer in Part A does not participate in Farm Service Agency (FSA) or Natural Resources Conservation Service (NRCS) programs, the full tax identification number of the producer must be provided, but establishment of detailed farm records with FSA is not required. Go to Part D and sign and date.*

## PART B - HELC/WC COMPLIANCE QUESTIONS

| Indicate **YES** or **NO** to each question. *If you are unsure of whether a HEL determination, wetland determination, or NRCS evaluation has been completed, contact your local USDA Service Center.* | YES | NO |
|---|---|---|
| 6. During the crop year entered in Part A or the term of a requested USDA loan, did or will the producer in Part A plant or produce an agricultural commodity (including sugarcane) on land for which an HEL determination has not been made? | ✓ | |
| 7. Has anyone performed (since December 23, 1985), or will anyone perform any activities to: | | |
| A. Create new drainage systems, conduct land leveling, filling, dredging, land clearing, or excavation that has **NOT** been evaluated by NRCS? *If "YES", indicate the year(s):* Fall '22 | ✓ | |
| B. Improve or modify an existing drainage system that has **NOT** been evaluated by NRCS? *If "YES", indicate the year(s):* _____ | | ✓ |
| C. Maintain an existing drainage system that has **NOT** been evaluated by NRCS? *If "YES", indicate the year(s):* _____ **Note:** *Maintenance is the repair, rehabilitation, or replacement of the capacity of existing drainage systems to allow for the continued use of wetlands currently in agricultural production and the continued management of other areas as they were used before December 23, 1985. This allows a person to reconstruct or maintain the capacity of the original system or install a replacement system that is more durable or will realize lower maintenance or costs.* | | ✓ |
| **Note:** *If "YES" is checked for Item 7A or 7B, then Part C must be completed to authorize NRCS to make an HELC/WC and/or certified wetland determination on the identified land. If "YES" is checked for Item 7C, NRCS does not have to conduct a certified wetland determination.* | | |

8. Check one or both boxes, if applicable; otherwise, continue to Part C or D.

A. ☐ Check this box only if the producer in Part A has FCIC reinsured crop insurance and filing this form represents the first time the producer in Part A, including any affiliated person, has been subject to HELC and WC provisions.

B. ☐ Check this box if either of the following applies to the producer and crop year entered in Part A:
- Is a tenant on a farm that is/will not be in compliance with HELC and WC provisions because the landlord refuses to allow compliance, but all other farms not associated with that landlord are in compliance. (AD-1026B, Tenant Exemption Request, must be completed).
- Is a landlord of a farm that is/will not be in compliance with HELC and WC provisions because of a violation by the tenant on that farm, but all other farms not associated with that tenant are in compliance. (AD-1026C, Landlord or Landowner Exemption Request, must be completed).

## PART C – ADDITIONAL INFORMATION

9. If "YES" was checked in Item 6 or 7, provide the following information for the land to which the answer applies:

| A. | Farm and/or tract/field number: | Farm #4771 Tract #360 |
|---|---|---|
| | | *If unknown, contact the Farm Service Agency at the nearest USDA Service Center.* |
| B. | Activity: | New land into production, Land clearing |
| C. | Current land use *(specify crops):* | Trees/Grass |
| D. | County: | Delaware |

**PART D – CERTIFICATION OF COMPLIANCE**

I have received and read the AD-1026 Appendix and understand and agree to the terms and conditions therein on all land in which I (or the producer in Part A if different) and any affiliated person have or will have an interest. I understand that eligibility for certain USDA program benefits is contingent upon this certification of compliance with HELC and WC provisions and I am responsible for any non-compliance.   I understand and agree that this certification of compliance is considered continuous and will remain in effect unless revoked or a violation is determined.   I further understand and agree that:

- all applicable payments must be refunded if a determination of ineligibility is made for a violation of HELC or WC provisions.
- NRCS may verify whether a HELC violation or WC has occurred.
- a revised Form AD-1026 must be filed if there are any operation changes or activities that may affect compliance with the HELC and WC provisions.  I understand that failure to revise Form AD-1026 for such changes may result in ineligibility for certain USDA program benefits or other consequences.
- affiliated persons are also subject to compliance with HELC and WC provisions and their failure to comply or file Form AD-1026 will result in loss of eligibility for applicable benefits to any individuals or entities with whom they are considered affiliated.

**Producer's Certification:**

*I hereby certify that the information on this form is true and correct to the best of my knowledge.*

| 10A. Producer's Signature *(By)* | 10B. Title/Relationship *(If Signing in Representative  Capacity)* | 10C. Date *(MM-DD-YYYY)* |
|---|---|---|
| e-Signed by James Conlan<br>For, if applicable<br>On 10-12-22 | Manager | 10-12-22 |
| ***FOR FSA USE ONLY*** *(for referral to NRCS)*<br>Sign and date if NRCS determination is needed. | 11A. Signature of FSA Representative | 11B. Date *(MM-DD-YYYY)*<br>10-13-22 |

**IMPORTANT:** If you are unsure about the applicability of HELC and WC provisions to your land, contact your local USDA Service Center for details concerning the location of any highly credible land or wetland and any restrictions applying to your land according to NRCS determinations before planting an agricultural commodity or performing any drainage or manipulation.  Failure to certify and properly revise your compliance certification when applicable may:  (1) affect your eligibility for USDA program benefits, including whether you qualify for reinstatement of benefits through the Good Faith process; and (2) result in other consequences.

NOTE:    *The following statement is made in accordance with the Privacy Act of 1974 (5 USC 552a - as amended).  The authority for requesting the information identified on this form is 7 CFR Part 12, the Food Security Act of 1985 (Pub. L. 99-198), and the Agricultural Act of 2014 (Pub. L. 113-79).  The information will be used to certify compliance with HELC and WC provisions and to determine producer eligibility to participate in and receive benefits under programs administered by USDA agencies. The information collected on this form may be disclosed to other Federal, State, Local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in applicable Routine Uses identified in the System of Records Notice for USDA/FSA-2, Farm Records File (Automated) and USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information will result in a determination of producer ineligibility to participate in and receive benefits under programs administered by USDA agencies.*

*This information collection is exempted from the Paperwork Reduction Act as specified in the Agricultural Act of 2014 (Pub. L. 113-79, Title II, Subtitle G, Funding and Administration).  The provisions of appropriate criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.  RETURN THIS COMPLETED FORM AD-1026 TO YOUR COUNTY FARM SERVICE AGENCY (FSA) OFFICE.*

*The U.S. Department of Agriculture (USDA) prohibits discrimination against its customers, employees, and applicants for employment on the basis of race, color, national origin, age, disability, sex, gender identity, religion, reprisal, and where applicable, political beliefs, marital status, familial or parental status, sexual orientation, or all or part of an individual's income is derived from any public assistance program, or protected genetic information in employment or in any program or activity conducted or funded by the Department.  (Not all prohibited bases will apply to all programs and/or employment activities.)  Persons with disabilities, who wish to file a program complaint, write to the address below or if you require alternative means of communication for program information (e.g., Braille, large print, audiotape, etc.) please contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). Individuals who are deaf, hard of hearing, or have speech disabilities and wish to file either an EEO or program complaint, please contact USDA through the Federal Relay Service at (800) 877-8339 or (800) 845-6136 (in Spanish).*

*If you wish to file a Civil Rights program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, found online at http://www.ascr.usda.gov/complaint_filing_cust.html, or at any USDA office, or call (866) 632-9992 to request the form.  You may also write a letter containing all of the information requested in the form. Send your completed complaint form or letter by mail to U.S. Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, by fax (202) 690-7442 or email at program.intake@usda.gov.  USDA is an equal opportunity provider and employer.*

Case 6:24-cv-02016-CJW-MAR     Document 60-1     Filed 01/29/25     Page 73 of 79



# Delaware County, Iowa





## Legend

| | Non-Cropland | | CRP | | Iowa PLSS |
| | Cropland | | Tract Boundary | | Iowa Roads |

**Wetland Determination Identifiers**
- ● Restricted Use
- ▽ Limited Restrictions
- ☐ Exempt from Conservation
  Compliance Provisions

**Tract Cropland Total: 51.21 acres**

**2023 Program Year**
Map Created October 13, 2022

**Farm 4771**
**Tract 360**

United States Department of Agriculture (USDA) Farm Service Agency (FSA) maps are for FSA Program administration only. This map does not represent a legal survey or reflect actual ownership, rather it depicts the information provided directly from the producer and/or National Agricultural Imagery Program (NAIP) imagery. The producer accepts the data 'as is' and assumes all risks associated with its use. USDA-FSA assumes no responsibility for actual or consequential damage incurred as a result of any user's reliance on this data outside FSA Programs. Wetland identifiers do not represent the size, shape, or specific determination of the area. Refer to your original determination (CPA-026 and attached maps) for exact boundaries and determinations or contact USDA Natural Resources Conservation Service (NRCS).

USDA is an equal opportunity provider, employer, and lender.

DISCLAIMER: This is data extracted from the web farm database. Because of potential messaging failures in MIDAS, this data is not guaranteed to be an accurate and complete representation of data contained the MIDAS system, which is the system of record for Farm Records.

| Producer Name and Address | Recording County Office Name |
|---|---|
| PFAB, CORY JON | Dubuque, Iowa |

Telephone:

| Number of Farms | Number of Tracts | Farmland | Cropland | DCP Cropland | CRP Cropland | Eff DCP Cropland |
|---|---|---|---|---|---|---|
| 18 | 23 | 2195.95 | 1855.49 | 1860.86 | 28.08 | 1832.78 |

| State & County | Farm | Tract | Relationship to Farm Tract | Producer | Farmland | Cropland | DCP Cropland | CRP Cropland | Eff DCP Cropland | HEL Code | Wetland Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Delaware, IA | 4771 | | Operator | KINTZLE, MARK DAVID | | | | | | | |
| | | 360 | Owner | CTM HOLDINGS LLC | 72.47 | 51.21 | 51.21 | 10.55 | 40.66 | N | DNC |
| | | | Other Tenant | PFAB, CORY JON | | | | | | | |
| Delaware, IA | 5755 | 6176 | Operator | PFAB, CORY JON | 130.27 | 129.69 | 129.69 | 0.0 | 129.69 | SA | DNC |
| | | | Owner | CTM HOLDINGS LLC | | | | | | | |
| Dubuque, IA | 1023 | 1075 | Operator | PFAB, CORY JON | 87.13 | 35.9 | 35.9 | 17.53 | 18.37 | SA | N |
| | | | Owner | KEMP, KATHY J | | | | | | | |
| | | | Owner | KEMP, JAMES PETER | | | | | | | |
| Dubuque, IA | 1038 | 1076 | Operator | PFAB, CORY JON | 73.81 | 52.89 | 52.89 | 0.0 | 52.89 | SA | DNC |
| | | | Owner | SOUTHERN HILLS TWO INC | | | | | | | |
| Dubuque, IA | 1470 | 909 | Owner/Operator | PFAB, CORY JON | 141.81 | 139.03 | 139.03 | 0.0 | 139.03 | SA | DNC |
| Dubuque, IA | 3991 | 973 | Operator | PFAB, CORY JON | 203.57 | 195.39 | 195.39 | 0.0 | 195.39 | SA | DNC |
| | | | Owner | KOOS, DONALD | | | | | | | |
| Dubuque, IA | 5841 | 152 | Operator | PFAB, CORY JON | 126.77 | 117.08 | 117.08 | 0.0 | 117.08 | SA | DNC |
| | | | Owner | DECKER, LYNN MARIE | | | | | | | |
| | | 153 | Operator | PFAB, CORY JON | 194.45 | 109.26 | 114.63 | 0.0 | 114.63 | SA | DNC |
| | | | Owner | DECKER, LYNN MARIE | | | | | | | |
| Dubuque, IA | 5890 | 11566 | Operator | PFAB, CORY JON | 18.73 | 18.04 | 18.04 | 0.0 | 18.04 | SA | DNC |
| | | | Owner | AZBELL, KERRY B | | | | | | | |
| | | | Owner | AZBELL, MARCIA | | | | | | | |
| Dubuque, IA | 6559 | 977 | Operator | PFAB, CORY JON | 161.33 | 156.27 | 156.27 | 0.0 | 156.27 | DNC | DNC |
| | | | Owner | PFABCO LLC | | | | | | | |

| HEL Codes | SA = HEL: Sys Applied<br>SNA = HEL: Sys Not Applied | SNR = HEL: Sys Not Required<br>2YR = HEL: 2-yr Implement | DNC = Determination Not Complete<br>N = Not HEL | Wetland Codes | WL = Wetland<br>N = No Wetland | DNC = Determination Not Complete |
|---|---|---|---|---|---|---|

DISCLAIMER: This is data extracted from the web farm database. Because of potential messaging failures in MIDAS, this data is not guaranteed to be an accurate and complete representation of data contained the MIDAS system, which is the system of record for Farm Records.

| State & County | Farm | Tract | Relationship to Farm Tract | Producer | Farmland | Cropland | DCP Cropland | CRP Cropland | Eff DCP Cropland | HEL Code | Wetland Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dubuque, IA | 6559 | 13030 | Operator | PFAB, CORY JON | 37.14 | 16.6 | 16.6 | 0.0 | 16.6 | DNC | DNC |
| | | | Owner | MUEHLENKAMP, JUSTIN D | | | | | | | |
| | | | Owner | MUEHLENKAMP, MARISSA R | | | | | | | |
| | | 13031 | Operator | PFAB, CORY JON | 117.86 | 94.57 | 94.57 | 0.0 | 94.57 | DNC | DNC |
| | | | Owner | PFABCO LLC | | | | | | | |
| Dubuque, IA | 6955 | 877 | Operator | PFAB, CORY JON | 71.94 | 70.28 | 70.28 | 0.0 | 70.28 | SA | DNC |
| | | | Owner | CALLAHAN CONSTRUCTION INC | | | | | | | |
| | | 12596 | Operator | PFAB, CORY JON | 40.68 | 34.76 | 34.76 | 0.0 | 34.76 | SA | DNC |
| | | | Owner | B & C LLC | | | | | | | |
| Dubuque, IA | 7501 | 13200 | Operator | PFAB, CORY JON | 4.83 | 4.83 | 4.83 | 0.0 | 4.83 | SA | DNC |
| | | | Owner | PFABCO LLC | | | | | | | |
| Dubuque, IA | 7558 | 13236 | Operator | PFAB, CORY JON | 72.51 | 63.38 | 63.38 | 0.0 | 63.38 | SA | DNC |
| | | | Owner | PFABCO LLC | | | | | | | |
| Jackson, IA | 194 | 615 | Operator | PFAB, CORY JON | 111.73 | 95.17 | 95.17 | 0.0 | 95.17 | SA | DNC |
| | | | Owner | B & C LLC | | | | | | | |
| Jackson, IA | 198 | | Operator | ENGLISH FAMILY FARM, INC. | | | | | | | |
| | | 569 | Owner | ENGLISH FAMILY FARM, INC. | 189.52 | 177.51 | 177.51 | 0.0 | 177.51 | SA | DNC |
| | | | Other Tenant | PFAB, CORY JON | | | | | | | |
| Jackson, IA | 909 | 665 | Operator | PFAB, CORY JON | 137.86 | 92.09 | 92.09 | 0.0 | 92.09 | SA | DNC |
| | | | Owner | BECHEN, DENNIS J | | | | | | | |
| Jackson, IA | 6248 | 4836 | Operator | PFAB, CORY JON | 25.88 | 25.88 | 25.88 | 0.0 | 25.88 | SA | DNC |
| | | | Owner | PFABCO LLC | | | | | | | |
| | | 7116 | Operator | PFAB, CORY JON | 31.01 | 31.01 | 31.01 | 0.0 | 31.01 | SA | DNC |
| | | | Owner | PFABCO LLC | | | | | | | |
| Jackson, IA | 6371 | 6552 | Operator | PFAB, CORY JON | 108.49 | 108.49 | 108.49 | 0.0 | 108.49 | N | DNC |
| | | | Owner | REISS, ANTHONY J | | | | | | | |
| | | | Owner | REISS, KATHLEEN R | | | | | | | |
| Linn, IA | 2364 | 442 | Operator | PFAB, CORY JON | 36.16 | 36.16 | 36.16 | 0.0 | 36.16 | N | DNC |
| | | | Owner | B & C LLC | | | | | | | |

| HEL Codes | SA = HEL: Sys Applied | SNR = HEL: Sys Not Required | DNC = Determination Not Complete | Wetland Codes | WL = Wetland | DNC = Determination Not Complete |
|---|---|---|---|---|---|---|
| | SNA = HEL: Sys Not Applied | 2YR = HEL: 2-yr Implement | N = Not HEL | | N = No Wetland | |



**USDA** United States
Department of
Agriculture

**Natural Resources Conservation Service**

Monday, January 23, 2023

NRCS Field Office
200 S 12TH ST
Manchester, IA 52057-2306
Phone: (563) 927-4250
Fax: (855) 208-8590

CTM Holdings LLC

████████████████

SUBJECT: Wetland Preliminary Technical Determination

TRACT: 360
Administrative County: Delaware, Iowa

This is to notify you the Natural Resources Conservation Service (NRCS) has made a certified wetland determination on the tract listed above. This preliminary technical determination (PTD) is made in accordance with the wetland conservation provisions of the Food Security Act of 1985, as amended, and was made in response to the completion of form AD-1026 dated on October 14, 2022.

In order to maintain USDA program eligibility, program participants must not produce an agricultural commodity on wetlands converted after December 23, 1985 and must not convert a wetland after November 28, 1990 for the purpose or to have the effect of making the production of an agricultural commodity possible.

The results of the PTD are shown on the enclosed NRCS-CPA-026-WC "Certified Wetland Determination" form. The determination was conducted in accordance with the National Food Security Act Manual, 1987 US Army Corps of Engineers (USACE) Wetland Delineation Manual, corresponding USACE Regional Supplements, and/or State Offsite Methods for Wetland Identification.

Wetlands are identified through the confirmation of three factors:

> Presence of Hydrophytic Vegetation:
> Hydrophytic vegetation means plants growing in water or in a substrate that is at least periodically deficient in oxygen during a growing season as a result of excessive water content (7 CFR § 12.31(b)).
>
> Presence of Hydric Soils:
> Hydric soil means soil that, in its undrained condition, is saturated, flooded, or ponded long enough during a growing season to develop an anaerobic condition that supports the growth and regeneration of hydrophytic vegetation (7 CFR § 12.31(a)).
>
> Presence of Wetland Hydrology:
> Wetland hydrology means inundation or saturation by surface or groundwater during a growing season at a frequency and duration sufficient to support a prevalence of hydrophytic vegetation (7 CFR § 12.31(c)).

The 2014 Farm Bill connected producer eligibility for Federal crop insurance premium subsidy to compliance with the wetland conservation provisions. Eligibility for most USDA programs is lost for any wetland conversions that have occurred after December 23, 1985. However, only wetland conversions that occur after February 7, 2014 result in ineligibility for the Federal crop insurance premium subsidy.

**If you agree** with this PTD, it will become final 30 calendar days after you receive this notification, and no further action is required.

1 | P a g e

USDA is an equal opportunity provider, employer, and lender.

**If you do not agree** with this PTD, you may request a reconsideration field visit OR mediation within thirty days of receipt of this letter. Your request should be made in writing to the above office address and Designated Conservationist and should state clearly what you are appealing and why you believe the determination is in error. For further information on the appeals process, please see the attached Appeals Information sheet. If no reconsideration field visit or mediation is requested within thirty days of receipt of this letter, this PTD will become a final technical determination (FTD) with further appeal rights as described in the attached Appeals Information sheet.

This certified wetland determination has been conducted for the purpose of implementing the Wetland Conservation Provisions of the Food Security Act of 1985, as amended. This determination may not be valid for identifying the extent of Clean Water Act jurisdiction for this site. If you intend to conduct any activity that constitutes a discharge of dredged or fill material into wetlands or other waters, you should contact the local district office of the U.S. Army Corps of Engineers prior to starting work.

If you are the owner of this tract of land and have a tenant, I urge you to discuss this preliminary determination with your tenant. Likewise, if you are the tenant of this tract of land, you are urged to discuss this letter with your landlord.

If you have any questions, please contact me at:

Russ Wolf

Designated Conservationist

200 S 12TH ST
Manchester, IA 52057-2306
Phone: (563) 927-4250

Sincerely,

Russ Wolf - Wetland Specialist

Enclosures:
NRCS-CPA-026-WC
Wetland Determination Map
Appeals Information

Cc: Natural Resources Conservation Service
Farm Service Agency
Cory Pfab,

# Appeals Information

This preliminary technical determination (PTD) will become final 30 days after your receipt of this letter, unless you request either of the following options:

> 1. You may request a reconsideration field visit for NRCS to review the basis for the PTD with you and gather additional information concerning the certified determination. This request must be in writing and addressed to the Designated Conservationist who made this determination.

OR

> 2. Mediation may be used to assist you and NRCS in trying to reach a mutually agreeable resolution or settlement regarding this PTD. Through mediation, the parties have the opportunity to work together with the assistance of the mediator to improve communications, understand the relevant issues, develop and explore alternatives, and reach a mutually satisfactory resolution. In order to request mediation, the request must be in writing and addressed to the Designated Conservationist who made this determination and the Iowa Mediation Service at the address below. Mediation may be used in an attempt to settle your concerns with the preliminary wetland technical determination.

> Iowa Mediation Service
> 1025 Ashworth Road, Suite 504
> West Des Moines, IA 50265
> (515) 331-8081

If you choose to use mediation, the NRCS will pay up to one-half of the costs that are appropriate and reasonable which are associated with securing the services of a trained mediator when the services are provided on other than a voluntary basis. The NRCS will have final discretion over what is considered appropriate and reasonable.

If you choose a reconsideration field visit or mediation, a final technical determination (FTD) will be issued at the conclusion of either process. If reconsideration or mediation is not requested, this certifed determination becomes an FTD 30 days after your receipt of this letter, at which time you may exercise appeal rights to the Farm Service Agency County Committee or the National Appeals Division.

To appeal an FTD, write to the Farm Service Agency County Committee or the National Appeals Division within 30 days at the appropriate address below.

| | |
|---|---|
| Delaware FSA County Committee | Telephone: (563) 927-4250 |
| 200 S 12TH ST | Fax: (855) 208-8590 |
| Manchester , IA 52057-2306 | |

Or

| | |
|---|---|
| National Appeals Division | Toll Free Phone: (800) 541- 0457 |
| Box 68806 | TTY: (800) 791-3222 |
| Indianapolis , Indiana 46268-0806 | Fax: (317) 875-9674 |

A request for any of the above appeal options must be in writing and should state clearly what you are appealing and why you believe the determination is erroneous.

3 | P a g e

USDA-000008