IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF IOWA, EASTERN DIVISION

| | |
|---|---|
| CTM HOLDINGS, LLC, an Iowa limited liability company,<br><br>*Plaintiff*,<br><br>vs.<br><br>THE UNITED STATES DEPARTMENT OF AGRICULTURE; THOMAS J. VILSACK, in his official capacity as the Secretary of the United States Department of Agriculture; THE NATURAL RESOURCES CONSERVATION SERVICE; TERRY COSBY, in his official capacity as Chief of the Natural Resources Conservation Service; and JON HUBBERT, in his official capacity as Iowa State Conservationist,<br><br>*Defendants*,<br><br>IOWA FARMERS UNION, IOWA ENVIRONMENTAL COUNCIL, FOOD & WATER WATCH, and DAKOTA RURAL ACTION,<br><br>*Intervenors*. | CIVIL NO. 6:24-cv-02016-CJW-MAR<br><br><br><br>**PLAINTIFF'S COMBINED RESISTANCE TO DEFENDANTS' AND INTERVENORS' MOTIONS FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................................................iii

ARGUMENT ..................................................................................................................1

    I.    This Court can reach the merits of the case .................................................1

        A.  CTM has standing ..............................................................................1

        B.  There is final agency action this Court can review.......................4

        C.  The APA provides the cause of action for all of CTM's claims....................................7

    II.    Swampbuster imposes an unconstitutional condition on farmers.......................8

        A.  Swampbuster requires farmers to give up their interests protected by the Commerce Clause ..............................................9

        B.  Swampbuster requires farmers to give up their rights under the Takings Clause .......10

        C.  Swampbuster is not a constitutional exercise of Congress's Spending Power...........13

    III.    Agencies may not issue regulations that contradict the plain text of the statute ...............15

        A.  The Review Regulation is inconsistent with the text of the Swampbuster Statute......15

        B.  The converted wetlands rule contradicts the plain text of the statute .........................19

CONCLUSION..............................................................................................................20

CERTIFICATE OF SERVICE .......................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*B & D Land & Livestock Co. v. Veneman*,
332 F. Supp. 2d 1200 (N.D. Iowa)..................................................................................14, 18

*Ballanger v. Johanns*,
495 F.3d 866 (8th Cir. 2007) ..............................................................................................20

*Bennett v. Spear*,
520 U.S. 154 (1997)..........................................................................................................4–5

*Bob Jones Univ. v. United States*,
461 U.S. 574 (1983)...........................................................................................................17

*Bond v. United States*,
564 U.S. 211 (2011)......................................................................................................14–15

*Branstad v. Veneman*,
212 F. Supp. 2d 976 (N.D. Iowa 2002)...........................................................................18–19

*Caminetti v. United States*,
242 U.S. 470 (1917)...........................................................................................................10

*Carpenters Indus. Council v. Zinke*,
854 F.3d 1 (D.C. Cir. 2017) .................................................................................................3

*Cedar Point Nursery v. Hassid*,
594 U.S. 139 (2021).......................................................................................................10–12

*Collins v. Yellen*,
594 U.S. 220 (2021)..............................................................................................................8

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024).........................................................................................................6–7

*Czyzewski v. Jevic Holding Corp.*,
580 U.S. 451 (2017)..............................................................................................................3

*Dolan v. City of Tigard*,
512 U.S. 374 (1994).......................................................................................................2, 11

*Foster v. Dep't of Agric.*,
144 S. Ct. 2707 (2024)..........................................................................................................6

*Foster v. U.S. Dep't of Agric.*,
68 F.4th 372 (8th Cir. 2023) ................................................................................................6

*Foster v. U.S. Dep't of Agric.*,
609 F. Supp. 3d 769 (D.S.D. 2022) ......................................................................................6

*Foster v. U.S. Dep't of Agric.*,
No. 22-2729, 2024 WL 4717247 (8th Cir. Nov. 7, 2024) .......................................................6

iii

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) ..................................................................................8

*Frozen Food Express v. United States*,
   351 U.S. 40 (1956) ....................................................................................6

*Heart of Atlanta Motel, Inc. v. United States*,
   379 U.S. 241 (1964) ................................................................................10

*Horn Farms, Inc. v. Johanns*,
   397 F.3d 472 (7th Cir. 2005) ..................................................................13

*Houston, E. & W. Tex. Ry. Co. v. United States*,
   234 U.S. 342 (1914) ................................................................................10

*Intel Corp. Inv. v. Pol'y Comm. v. Sulyma*,
   589 U.S. 178 (2020) ..........................................................................17, 19

*Kaiser Aetna v. United States*,
   444 U.S. 164 (1979) ................................................................................11

*Katzenbach v. McClung*,
   379 U.S. 294 (1964) ................................................................................10

*Knick v. Twp. of Scott*,
   588 U.S. 180 (2019) ..................................................................................3

*Koontz v. St. Johns River Water Mgmt. Dist.*,
   570 U.S. 595 (2013) ...................................................................2–3, 12, 15

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 369 (2024) ..........................................................................16, 20

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982) ................................................................................11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................1

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ..................................................................................7

*Meyer v. CUNA Mut. Ins. Soc'y*,
   648 F.3d 154 (3d Cir. 2011) ....................................................................20

*Milligan v. City of Red Oak*,
   230 F.3d 355 (8th Cir. 2000) ..................................................................12

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
   567 U.S. 519 (2012) ...........................................................................13–14

*New York v. United States*,
   505 U.S. 144 (1992) ................................................................................13

*Nixon v. Missouri Mun. League*,
    541 U.S. 125 (2004)...................................................................................18–19

*Nollan v. California Coastal Comm'n*,
    483 U.S. 825 (1987)...................................................................................11–12

*Perry v. Sindermann*,
    408 U.S. 593 (1972).........................................................................................9

*Planned Parenthood of Mid-Missouri & E. Kansas, Inc. v. Dempsey*,
    167 F.3d 458 (8th Cir. 1999) ........................................................................8–9

*Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*,
    400 U.S. 62 (1970)...........................................................................................5

*Preferred Risk Mut. Ins. Co. v. United States*,
    86 F.3d 789 (8th Cir. 1996) ..........................................................................7–8

*Public Citizen v. U.S. Dep't of Justice*,
    491 U.S. 440 (1989)........................................................................................18

*Rapanos v. United States*,
    547 U.S. 715 (2006)........................................................................................17

*Sackett v. EPA*,
    566 U.S. 120 (2012).........................................................................................5

*Sackett v. EPA*,
    598 U.S. 651 (2023)........................................................................................12

*Smith v. U.S. Dep't of Agric.*,
    888 F. Supp. 2d 945 (S.D. Iowa 2012) .........................................................7

*South Dakota v. Dole*,
    483 U.S. 203 (1987)........................................................................................14

*Speiser v. Randall*,
    357 U.S. 513 (1958).........................................................................................9

*Steward Machine Co. v. Davis*,
    301 U.S. 548 (1937)........................................................................................13

*Taylor v. Huerta*,
    856 F.3d 1089 (D.C. Cir. 2017)......................................................................19

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2016)......................................................................................4, 6

*United States v. Butler*,
    297 U.S. 1 (1936)...........................................................................................15

*United States v. Cress*,
    243 U.S. 316 (1917)....................................................................................11–12

*United States v. Darby,*
    312 U.S. 100 (1941).............................................................9–10

*United States v. Dierckman,*
    201 F.3d 915 (7th Cir. 2000) .........................................14

*United States v. Gen. Motors Corp.,*
    323 U.S. 373 (1945)........................................................12

*United States v. Lopez,*
    514 U.S. 549 (1995)....................................................9–10

*United States v. Naftalin,*
    441 U.S. 768 (1979).........................................................17

*Utility Air Regul. Grp. v. EPA,*
    573 U.S. 302 (2014)............................................16–17, 19

*Village of Euclid v. Ambler Realty Co.,*
    272 U.S. 365 (1926)...........................................................3

*Wallace v. ConAgra Foods, Inc.,*
    747 F.3d 1025 (8th Cir. 2014) ........................................3

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.,*
    586 U.S. 9 (2018)...............................................................3

*Wickard v. Filburn,*
    317 U.S. 111 (1942)........................................................10

**Statutes**

5 U.S.C. § 551(13) ..................................................................5

5 U.S.C. § 701(b)(2) ..............................................................5

5 U.S.C. § 702 ..........................................................................7

5 U.S.C. § 706(2)(A) ..............................................................8

5 U.S.C. § 706(2)(B) ..............................................................8

16 U.S.C. § 3801(a)(7)(A) ...................................................19

16 U.S.C. § 3821 ..................................................................14

16 U.S.C. § 3821(b) ..............................................................14

16 U.S.C. § 3821(d) ........................................................1–2, 13

16 U.S.C. § 3822(a)(1)............................................................1

16 U.S.C. § 3822(a)(3)..........................................................18

16 U.S.C. § 3822(a)(4)..................................................4, 16–18

Pub. L. No. 99-198, 99 Stat. 1508 (Dec. 23, 1985) ....................................................17

Iowa Code Ann. § 457A.1 ...........................................................................................11

Iowa Code Ann. § 457A.2 ...........................................................................................11

**Regulations**

7 C.F.R. § 12.2(a)................................................................................................19–20

7 C.F.R. § 12.9(a)(1)(i) ................................................................................................1

7 C.F.R. § 12.9(a)(1)(ii) ...............................................................................................1

7 C.F.R. § 12.30(c)(6)................................................................................................17

**Other Authority**

USDA, *History of RMA: History of the Crop Insurance Program*,
    https://www.rma.usda.gov/about-rma/history-
    rma#:~:text=History%20of%20the%20Crop%20Insurance,to%2
    0carry%20out%20the%20program (last visited Feb. 13, 2025).............................14

Plaintiff CTM Holdings, LLC (CTM) submits this combined response to Defendants and Intervenors' Motions for Summary Judgment.

## ARGUMENT

**I.    This Court can reach the merits of the case.**

**A.   CTM has standing.**

Defendants argue that CTM lacks standing because it cannot be injured until it actually loses eligibility for programs by converting a wetland. ECF 59 at 7–12. Intervenors argue that any injury is incurred by CTM's tenants. ECF 54-1 at 10. Both arguments are incorrect.

Where "the legality of government action or inaction" is being challenged "there is ordinarily little question" of standing for the "object of the action (or forgone action)." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992). Here, CTM is the object of Swampbuster and Defendants' regulations because Defendants' regulations apply to the land owned by CTM. 16 U.S.C. § 3822(a)(1) (certifications delineate "all wetlands located on subject land on a farm"); Plaintiff's Appendix in support of Summary Judgment (CTM App.) at 8–9. And a violation by a tenant on farmland can affect a landlord's eligibility for USDA programs with respect to that farm. *See* 7 C.F.R. § 12.9(a)(1)(i). Additionally, a tenant's violation can result in the reduction of the landlord's federal crop insurance. *id.* § 12.9(a)(1)(ii).

It is not speculative that Swampbuster's provisions injure CTM because Swampbuster prevents CTM from using portions of the property unless it gives up eligibility for USDA programs. 16 U.S.C. § 3821(d). Neither Defendants nor Intervenors cite 16 U.S.C. § 3821(d), which provides:

> any person who in any crop year beginning after November 28, 1990, converts a wetland by draining, dredging, filling, leveling, or any other means for the purpose, *or to have the effect*, of making the production of an agricultural commodity possible on such converted wetland shall be ineligible for those payments, loans, or programs specified in subsection (b) for that crop year and all

1

subsequent crop years.

*Id.* (emphasis added). In other words, if CTM converts a wetland on the property in a manner that makes agricultural production possible—even if it does not actually use it for agricultural production—it will lose eligibility for all benefits. *Id.*; *see also* Intervenors' Appendix in support of Summary Judgment (Int. App.) at 219. Thus, it is irrelevant what CTM's ultimate plans are for the property. If CTM converts the wetlands at issue in this case, then it will lose access to all future benefits.[1] This was reiterated by USDA officials to CTM. CTM App. at 8–9. As a result, CTM changed its behavior because of Swampbuster. *Id.*

The Supreme Court has recognized, in the unconstitutional conditions context, that the choice between foregoing a benefit or surrendering a constitutional right is an injury sufficient to show standing. A plaintiff suffers a "constitutionally cognizable injury" whenever the government succeeds in pressuring the plaintiff into forfeiting a constitutional right in exchange for a benefit or the government withholds a benefit based on the plaintiff's refusal to surrender a constitutional right. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606–07 (2013); *id.* at 607 (holding that the plaintiff suffered a "constitutionally cognizable injury" where he refused to waive his constitutional rights and was therefore denied a discretionary benefit); *cf. Dolan v. City of Tigard*, 512 U.S. 374, 379 (1994) (reversing lower court's rejection of an unconstitutional-conditions claim where the government had "granted [the] petitioner's permit application subject to conditions" requiring the petitioner to waive her Fifth Amendment rights). That is, "regardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions doctrine forbids burdening the

---

[1] Regardless, a statement by CTM when acquiring the property does not necessarily reflect current or future plans.

Constitution's enumerated rights by coercively withholding benefits from those who exercise them." *Koontz*, 570 U.S. at 606.[2] CTM has alleged unconstitutional condition claims and need not forego any USDA benefits to have standing to bring those claims.

Finally, CTM has suffered economic injury because of Swampbuster. Where a plaintiff demonstrates an economic injury there is ordinarily little question that a constitutionally sufficient injury in fact has been established. *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014) ("The consumers' alleged economic harm—even if only a few pennies each—is a concrete, non-speculative injury."); *see also Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ("Economic harm to a business clearly constitutes an injury-in-fact."); Moreover, where economic injury is at issue "the amount is irrelevant," and "a dollar of economic harm" is still an injury in fact. *Id.*; *see Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("a loss of even a small amount of money is ordinarily an 'injury.'");

This principle—that economic injury of any amount is constitutionally sufficient—is well recognized where the market value or salability of property is impacted. *See Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 19 n.1 (2018) (holding that a "decrease in the market value of ... land" resulting from a critical habitat designation under the ESA was "sufficiently concrete injury for Article III purposes"); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 386 (1926) (holding that a zoning ordinance that "of its own force ... greatly ... reduce[d] the value of appellee's lands" constituted a "present invasion of appellee's property rights").

---

[2] Contrary to Defendants' argument, CTM does not need to request just compensation before alleging a violation of the Takings Clause. *Knick v. Twp. of Scott*, 588 U.S. 180, 190 (2019). Nor does CTM need to bring an unconstitutional conditions claim under the Tucker Act because it is seeking equitable relief from an unconstitutional condition rather than damages. *Id.* at 201–02 (while damages are the presumptive relief for a taking, it is not the only relief); *Koontz*, 570 U.S. at 609 (The Supreme Court has had "no occasion to discuss what remedies might be available for a *Nollan/Dolan* unconstitutional conditions violation ....").

Here, Swampbuster prevents CTM from leasing 9 acres of property to a farmer, affecting the value of the property and any lease it issues. CTM App. at 8–9; CTM App. 89–96; Int. App. 31–39. So even if Intervenors were correct that Swampbuster only affects how CTM's tenants farm, Swampbuster still injures CTM because the statute prevents CTM from leasing all its land. That loss of income—no matter how small—is sufficient injury to support CTM's standing.

### B. There is final agency action this Court can review.

Defendants also incorrectly argue that there is no final agency action for this Court to review. In order for agency action to be final, first, "the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). Courts take a "pragmatic" approach to determining whether there is final agency action. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016).

Defendants incorrectly argue that CTM never requested review of the 2010 certification. But CTM specifically requested a new certification because Swampbuster's Review Provision provides that Final certifications "remain valid and in effect … until such time as the person affected by the certification requests review of the certification by the Secretary" of the USDA. 16 U.S.C. § 3822(a)(4); CTM App. at 79. Defendants responded by quoting its Review Regulation, which allows for a review only if a natural event has altered the topography or hydrology of the land, or if the NRCS agrees that an error exists. CTM App. at 79. Thus, Defendants put its Review Regulation at issue by stating that CTM must comply with its Review Regulation to request review.

The NRCS also stated that a Certified Wetland Determination was completed in April

4

2010, that the 2010 Wetland Determination may be relied upon when making decisions involving current and future drainage projects, and that it did not offer CTM appeal rights because the appropriate time-period to request an appeal of the April determination had expired.

Here, "[t]here is no doubt [this] is agency action, which the APA defines as including even a 'failure to act.'" *Sackett v. EPA*, 566 U.S. 120, 126 (2012) (citing 5 U.S.C. §§ 551(13), 701(b)(2)). CTM requested a new certification, and the NRCS denied that request. The NRCS made its decision and has acted within the meaning of the APA. *See id.*

The NRCS's decision is also final. The NRCS's denial of the request is "the consummation of the Agency's decisionmaking process" because the decision is "not subject to further Agency review." *Sackett*, 566 U.S. at 127 (quotations omitted); *see* CTM App. at 79 ("You have not been offered appeal rights as the appropriate time-period to request an appeal of the 4/16/2010 determination has expired.). Defendants suggest that the NRCS might process CTM's request for review if they can provide different information, *id.*, but "[t]he mere possibility that an agency might reconsider in light of 'informal discussion' and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal." *Sackett*, 566 U.S. at 127.

The NRCS has also "determined" "rights or obligations." *Bennett*, 520 U.S. at 178 (quotation omitted). Because of the NRCS's action, the 2010 Certification remains in place. CTM App. at 79. CTM is unable to use 9 acres of property without risking the loss of various benefits. In short, "legal consequences ... flow" as result of the NRCS's decision not to review the 2011 Certification. *Bennett*, 520 U.S. at 178 (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). Thus, the agency's decision is final. *See Sackett*, 566 U.S. at 126.

5

This case is similar to other cases where the Supreme Court has held that there is final agency action. *See Hawkes*, 578 U.S. at 599–600 (citing *Frozen Food Express v. United States*, 351 U.S. 40 (1956)). In *Frozen Food Express*, at issue was the finality of an order specifying which commodities the Interstate Commerce Commission believed were exempt by statute from regulation, and which it believed were not. 351 U.S. at 41. "Although the order had no authority except to give notice of how the Commission interpreted the relevant statute," and "would have effect only if and when a particular action was brought against a particular carrier," the Court held "that the order was nonetheless immediately reviewable." *Hawkes*, 578 U.S. at 599–600 (cleaned up).

Similarly, the 2010 Certification, and the NRCS's refusal to issue a new certification, gives notice of how it will interpret Swampbuster as it applies to CTM's property. And "while no administrative ... proceeding can be brought for failure to conform" with the Certification itself, the certification "warns" that if CTM converts the wetlands it "do[es] so at the risk" of losing its benefits. *See Hawkes*, 578 U.S. at 600. Thus, as the U.S. District Court for the District of South Dakota held in a similar challenge to Swampbuster, a "denial of … requests for review" is "final agency action[]" because "[t]he refusals … ensure[] that the enforcement provisions of the Swampbuster Act remain in place[.]" *Foster v. U.S. Dep't of Agric.*, 609 F. Supp. 3d 769, 787 (D.S.D. 2022), *aff'd*, 68 F.4th 372 (8th Cir. 2023), *cert. granted, judgment vacated*, 144 S. Ct. 2707 (2024), *and vacated*, No. 22-2729, 2024 WL 4717247 (8th Cir. Nov. 7, 2024).

Finally, the promulgation of the implementing regulations is final agency action that CTM can challenge. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 809 (2024). Although these regulations were promulgated decades ago "[a]n APA plaintiff does not have a complete and present cause of action until she suffers an injury from final agency

action, so the statute of limitations does not begin to run until she is injured." *Id.* CTM was not injured until it purchased the property in 2022. That is when its claims against the agency first accrued.

### C. The APA provides the cause of action for all of CTM's claims.

Intervenors incorrectly argue that CTM has not stated a cause of action for its constitutional claims. ECF 54-1 at 11–14. CTM brings this claim under 5 U.S.C. § 702 and alleged that Defendants' actions in implementing Swampbuster are *ultra vires*—in part because the statute is unconstitutional. *See* Complaint ¶¶ 6, 55–83.

5 U.S.C. § 702 waives sovereign immunity for a person seeking injunctive relief who "suffer[ed] legal wrong because of agency action, or [was] adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Section 702's waiver of sovereign immunity "contains two separate requirements: 1) the person claiming a right to review must identify some agency action," and "2) the party seeking review must show that he has suffered a legal wrong or been adversely affected by that action within the meaning of a relevant statute." *Preferred Risk Mut. Ins. Co. v. United States*, 86 F.3d 789, 792 (8th Cir. 1996). An "agency action" is defined "as the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (cleaned up). "A legal wrong is any invasion of a legally protected right." *Smith v. U.S. Dep't of Agric.*, 888 F. Supp. 2d 945, 954 (S.D. Iowa 2012) (citing *Preferred Risk Mut. Ins. Co.*, 86 F.3d at 793 n.5).

Here, CTM meets both requirements. First, as demonstrated above, CTM is affected or aggrieved by Defendants' actions. *See* Sections I-B, *supra*. Second, CTM alleges an invasion of legally protected rights under the Constitution. While these rights are not statutory rights, the

court in *Preferred Risk Mutual* looked to APA section 706 to hold that, in order to bring a claim under the APA, "the plaintiff must identify a substantive statute or regulation that the agency action had transgressed *and* establish that the statute or regulation applies to the United States." 86 F.3d at 792 ("Section 706 provides that the reviewing court shall set aside agency action found to be 'arbitrary, capricious, an abuse of discretion, *or otherwise not in accordance with law*.'" (quoting 5 U.S.C. § 706(2)(A))). Section 706 also provides that "the reviewing court shall" "hold unlawful and set aside agency action" "contrary to constitutional right, power, privilege, or immunity[.]" 5 U.S.C. § 706(2)(B).

Thus, CTM has stated a cause of action for its constitutional claims. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010) (noting that equitable relief has long been recognized as the proper means for preventing agencies from acting unconstitutionally); *See also Collins v. Yellen*, 594 U.S. 220, 263 n.1 (2021) (Thomas, J., concurring) ("We have indicated that individuals may have an implied private right of action under the Constitution to seek equitable relief to 'preven[t] entities from acting unconstitutionally.'" (quoting *Free Enter. Fund*, 561 U.S. at 491 n.2)); 594 U.S. at 263 n.1(Thomas, J., concurring) (noting that plaintiffs in the case argued that their constitutional claim is cognizable under the APA); 594 U.S. at 276 (Gorsuch, J., concurring: "In response to such a showing [of unconstitutional action], a court would normally set aside the Director's *ultra vires* actions as 'contrary to constitutional right[.]'" (quoting 5 U.S.C. § 706(2)(b))).

## II. Swampbuster imposes an unconstitutional condition on farmers.

Defendants and Intervenors argue that Swampbuster cannot be unconstitutional because Swampbuster awards benefits to farmers that they can choose to forego. ECF 59 at 13; ECF 54-1 at 16. But "[n]either Congress nor the states may condition the granting of government funds on

the forfeiture of constitutional rights." *Planned Parenthood of Mid-Missouri & E. Kansas, Inc. v. Dempsey*, 167 F.3d 458, 461 (8th Cir. 1999). And "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons … [i]t may not deny a benefit to a person on a basis that infringes his constitutionally protected interests[.]" *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

### A. Swampbuster requires farmers to give up their interests protected by the Commerce Clause.

The purpose of the unconstitutional conditions doctrine is to prevent the government from producing "'a result which (it) could not command directly.'" *Perry*, 408 U.S. at 597 (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)). Here, the federal government could not regulate the wetlands directly.

The 9 acres of wetlands do not contain any standing water, are not visibly wet, are not connected to any water body, and are not permanently or seasonally saturated or inundated by water at any time of the year. CTM App. 10, 122–130. The Property contains a small seasonal stream that runs through one portion of the upland portion of the Property, but the wetlands units on the Property are a significant distance away from the small seasonal stream and are not connected to any water body. CTM App. 122–130, 132.

Thus, Congress could not directly regulate these wetlands under the Commerce Clause. Congress's Commerce Clause power is limited to regulating the channels of interstate commerce, the instrumentalities of interstate commerce and goods in interstate commerce, and intrastate activity that has a substantial effect on interstate commerce. *United States v. Lopez*, 514 U.S. 549, 558–59 (1995). Swampbuster does not fall into any of the above categories. First, these wetlands are not channels of interstate commerce because they are solely intrastate and are not connected to any interstate waterways. CTM App. 9–10; s*ee, e.g.*, *United States v. Darby*, 312

U.S. 100, 114 (1941); *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241 (1964). Second these wetlands are not instrumentalities of interstate commerce because they cannot transport the goods of interstate commerce. CTM App. at 9–10; *Houston, E. & W. Tex. Ry. Co. v. United States*, 234 U.S. 342 (1914) (railcars); *Caminetti v. United States*, 242 U.S. 470, 491 (1917) (railcars). Wetlands like those regulatable under Swampbuster are not like railcars, and thus are not instrumentalities of interstate commerce. Finally, these wetlands do not "substantially effect" interstate commerce. CTM App. at 9–10; *Lopez*, 514 U.S. at 559; *Darby*, 312 U.S. at 119–20; *Wickard v. Filburn*, 317 U.S. 111, 125 (1942); *Katzenbach v. McClung*, 379 U.S. 294, 299–300 (1964).

Because Congress could not regulate the wetlands on CTM's property directly, it cannot produce the same regulatory effect by offering a benefit to farmers to "voluntarily" comply with the regulation.

**B. Swampbuster requires farmers to give up their rights under the Takings Clause.**

Nor could the federal government demand CTM place the wetlands in a conservation easement without paying just compensation. "When the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021) (citation omitted). "The government commits a physical taking when it uses its power of eminent domain to formally condemn property[,]" "takes possession of property without acquiring title to it[,]" or "occupies property—say, by recurring flooding as a result of building a dam." *Id.* at 147–48 (citations omitted). "These sorts of physical appropriations constitute the clearest sort of taking, and we assess them using a simple, *per se* rule: The government must pay for what it takes." *Id.* at 148 (cleaned up).

Appropriation of an easement can effectuate a taking. *Id.* at 150–51 (citing *Kaiser Aetna v. United States*, 444 U.S. 164 (1979)). "[A] permanent physical occupation constitutes a *per se* taking regardless whether it results in only a trivial economic loss." *Id.* at 151 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 423 (1982)). Compelled dedication of an easement for public use constitutes a taking. *Id.* at 151–52 (citing *Dolan v. City of Tigard*, 512 U.S. 374 (1994); *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987)).

Swampbuster, in effect, requires farmers to transfer a conservation easement to the government that limits farmers' use of wetlands. In Iowa, a conservation easement is "an easement in, servitude upon, restriction upon the use of, or other interest in land owned by another, created for any of the purposes set forth in section 457A.1" Iowa Code Ann. § 457A.2. One of the purposes listed in section 457A.1 is "to preserve … riparian lands[ and] wetlands[.]" *Id.* § 457A.1. And, under Iowa law, conservation easements can be temporary. *Id.* § 457A.2.

Thus, Swampbuster in effect requires farmers to place land in a conservation easement. That Swampbuster does not require farmers to record a literal conservation easement is irrelevant. A government cannot "absolve itself of takings liability by appropriating [a property right] in a form that is a slight mismatch from state easement law." *Cedar Point*, 594 U.S. at 155.

Defendants and Intervenors argue that Swampbuster does not effectuate a taking because the statute does not grant anyone access to farmland. ECF 59 at 17; ECF 54-1 at 17 (citing *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021)). But this is too narrow an understanding of what constitutes physical occupation. Fo example, the Court has held that a physical occupation occurs when the government causes recurring flooding on a property, even though flooding does not allow anyone to access the property but rather prevents the property owner from utilizing his or her land. *Cedar Point*, 594 U.S. at 148 (citing *United States v. Cress*, 243 U.S. 316, 327–28

11

(1917)).

Furthermore, while *Cedar Point* focused on the right to exclude, that right is not the only stick in the bundle of property rights. *See United States v. Gen. Motors Corp.*, 323 U.S. 373, 377–78 (1945) ("'[P]roperty' … denote[s] the group rights inhering in the citizen's relation to the physical thing[.]"); *cf. Nollan*, 483 U.S. at 833 n.2 ("[T]he right to build on one's own property … cannot remotely be described as a 'governmental benefit.'"). A negative easement is no less a property interest than any other interest. Indeed, the Eighth Circuit reviewed an Iowa city's proposed condemnation of a negative easement over farmland. *Milligan v. City of Red Oak*, 230 F.3d 355, 358 (8th Cir. 2000). In *Milligan*, no one argued that such a condemnation would not be a taking, but only whether the taking was for a public use. *Id.*

In *Nollan* and *Dolan*, the Court stated "'a special application' of [the unconstitutional conditions] doctrine that protects the Fifth Amendment right to just compensation for property the government takes when owners apply for land-use permits." *Koontz*, 570 U.S. at 604 (citation omitted). Under *Nollan* and *Dolan*, the government can condition approval of a permit on the dedication of property to the public only if there is a "nexus" and "rough proportionality" between the property that the government demands and the social costs of the applicant's proposal. *Id.* at 605–06.

The nexus and rough proportionality standard is not applicable here because the federal government has no general police power to issue land-use permits. *Sackett v. EPA*, 598 U.S. 651, 679 (2023) ("Regulation of land and water use lies at the core of traditional state authority."). Instead, because the taking of an easement without is a *per se* taking of property, *Cedar Point*, 594 U.S. at 148, Swampbuster imposes an unconstitutional condition on farmers.

But even if *Nollan* and *Dolan* apply, Swampbuster imposes an unconstitutional condition

because under 16 U.S.C. § 3821(d) there is no proportionality between a farmer's impact on wetlands and what the farmer is required to give to the federal government. This disproportionality is demonstrated by the history of Swampbuster. "The initial version of this statute, 16 U.S.C. §§3821-24, enacted in 1985 and dubbed 'Swampbuster,' made the loss proportional to the amount of wetland converted." *Horn Farms, Inc. v. Johanns*, 397 F.3d 472, 474 (7th Cir. 2005). However, "[a]n amendment in 1990 provided that converting *any* wetland would cause the farmer to lose *all* agricultural use." *Id.* (emphasis in original).

### C. Swampbuster is not a constitutional exercise of Congress's Spending Power.

Both Defendants and Intervenors rely on the Spending Clause to defend Swampbuster's constitutionality. ECF 59 at 13; ECF 54-1 at 15. But Congress's authority under the Spending Clause does not transform an unconstitutional condition into a constitutional condition.

Congress cannot, consistent with the spending power, use "financial inducements to exert a 'power akin to undue influence.'" *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 577 (2012) (quoting *Steward Machine Co. v. Davis*, 301 U.S. 548, 590 (1937)). In that instance, "pressure turns into compulsion." *Steward Machine Co.*, 301 U.S. at 590.

Legislation enacted under the Spending Power is unduly coercive when it leaves potential recipients of federal funds with no real alternative but to accept. *Sebelius*, 567 U.S. at 578; *New York v. United States*, 505 U.S. 144, 149 (1992). In *Sebelius*, twenty-six states challenged the requirement in the Affordable Care Act that they choose between Medicaid expansion or loss of all Medicaid funding. *Sebelius*, 567 U.S. at 542. The Court held that this portion of the Affordable Care Act violated the Spending Clause because the risk of losing all Medicaid funding meant that Congress had not provided the states with a meaningful choice. *Id.* at 581. Rather, the Court concluded, "the financial 'inducement' Congress has chosen is much more than

'relatively minor encouragement'—it is a gun to the head." *Id.*

Swampbuster is unduly coercive under the reasoning articulated in *Dole* and *Sebelius*. A person who is found to have violated Swampbuster is disqualified from several federally authorized agricultural benefit programs and could lose all their USDA benefits. 16 U.S.C. § 3821; *B & D Land & Livestock Co. v. Veneman*, 332 F. Supp. 2d 1200, 1204 (N.D. Iowa) (Plaintiffs faced with total loss of USDA benefits from the year of the alleged violation onward). And many of the programs covered by Swampbuster, *see* 16 U.S.C. § 3821(b), were around prior to the adoption of Swampbuster, *see* USDA, *History of RMA: History of the Crop Insurance Program*.[3] As a result, farmers are left with little alternative but to submit to Swampbuster's coercive regulatory scheme. By threatening eligibility for USDA programs, Swampbuster does not act like the "financial inducements," previously upheld by the Court as valid exercises of the spending power, but rather operates as "compulsion," *South Dakota v. Dole*, 483 U.S. 203, 211 (1987), and a "gun to the head." *Sebelius*, 567 U.S. at 581.

Defendants ignore the importance that coercion plays in any Spending Clause analysis, merely asserting that Swampbuster cannot be coercive. ECF 59 at 14. Instead, Defendants cite to *United States v. Dierckman*, 201 F.3d 915 (7th Cir. 2000), and *Horn Farms, Inc. v. Johanns*— which are not binding on this Court and were decided before *Sebelius*—for the proposition that Swampbuster is a valid exercise of the spending power. ECF 59 at 13–14.

In an attempt to distinguish *Sebelius*, Defendants argue that individuals have no sovereignty that is protected by the Commerce Clause. But "[t]he limitations that federalism entails are not … a matter of rights belonging only to the States." *Bond v. United States*, 564 U.S.

---

[3] https://www.rma.usda.gov/about-rma/history-rma#:~:text=History%20of%20the%20Crop%20Insurance,to%20carry%20out%20the%20program (discussing history of crop insurance) (last visited Feb. 13, 2025).

211, 222 (2011). "Federalism also protects the liberty of all persons within a State by ensuring that laws enacted in excess of delegated governmental power cannot direct or control their actions." *Id.*

Finally, the Supreme Court has held that a nearly identical program to Swampbuster exceeds Congress's power under the Commerce Clause. *See United States v. Butler*, 297 U.S. 1, 71 (1936); *see also Koontz*, 570 U.S. at 608 (citing *Butler*). In *Butler*, the Court struck down the Agricultural Adjustment Act of 1933 which imposed a tax on processors of farm products, the proceeds of which to be paid to farmers who would reduce their area under cultivation and consequently their crops yields. *Butler*, 297 U.S. at 55–57.

The Court held that "the act invades the reserved rights of the states" because "[i]t is a statutory plan to regulate and control agricultural production, a matter beyond the powers delegated to the federal government." *Butler*, 297 U.S. at 68. In reaching that holding, the Court rejected the government's argument that the statute was constitutional under the Spending Clause because "appropriations and expenditures under contracts for proper governmental purposes cannot justify contracts which are not within federal power" and "contracts for the reduction of acreage and the control of production are outside the range of that power." *Id.* at 72–73.

Similarly, Swampbuster is a statutory plan to regulate intrastate wetlands, a matter beyond the powers delegated to the federal government. And like the Agricultural Adjustment Act of 1933, Swampbuster pays farmers to reduce the acreage of land farmed. But, as the Court said in *Butler*, Defendants cannot defend their unconstitutional statutory plan by appealing to the Spending Clause.

III. **Agencies may not issue regulations that contradict the plain text of the statute.**

A. **The Review Regulation is inconsistent with the text of the Swampbuster Statute.**

Defendants' and Intervenors' argument that Congress empowered NRCS to issue the

Review Regulation cannot save their atextual interpretation of the statute. ECF 59 at 21; ECF 54-1 at 20. In support of their argument, Defendants and Intervenors point to a general rulemaking provision as proof that Congress delegated to NRCS the authority to fill in perceived gaps in 16 U.S.C. § 3822(a)(4). *Id.* This Court should reject that argument for two reasons.

First, the rulemaking provision in Swampbuster is nothing like the examples the Supreme Court recently cited as gap filling delegations. *See, e.g.*, *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 395 n.5 (2024). To be sure, the Court in *Loper Bright* recognized that there may be some instances where Congress provided the agency "a degree of discretion" to "give meaning to a particular statutory term." *Id.* at 394. As examples, the Court cited statutes where Congress expressly delegated to an agency the power to define specific terms. *Id.* at 395 n.5. By contrast, the Swampbuster provision at issue here contains no language indicating that the agency should have discretion to add any requirements for individuals who request review. *See* 16 U.S.C. § 3822(a)(4) ("A final certification ... shall remain valid and in effect as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification by the Secretary.").

Second, even assuming NRCS may regulate pursuant to the general rulemaking provision, it does not follow that the review regulation is permissible. This Court is still required to exercise its independent judgment and determine if the review regulation comports with the best reading of the statute. *See, e.g.*, *Loper Bright*, 603 U.S. at 395 (stating that courts must "independently interpret the statute and effectuate the will of Congress subject to constitutional limits"). And it is axiomatic that agencies may not rewrite statutory text. *See, e.g.*, *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014) (It is a "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should

operate."). Here, the text contains no limits on the right to request review of a wetland certification. 16 U.S.C. § 3822(a)(4). The Review Regulation, by contrast, creates several barriers to review. 7 C.F.R. § 12.30(c)(6). Despite Defendants' claim that the Review Regulation is "reasonable," ECF 59 at 21–22, it is never reasonable, much less permissible, to contradict the plain text of the statute. Ultimately, the problem with the Review Regulation is that "Congress did not write the statute that way, *United States v. Naftalin*, 441 U.S. 768, 773 (1979), and the extra-textual limitations cannot be harmonized with 16 U.S.C. § 3822(a)(4).

Despite Defendants' and Intervenors' arguments to the contrary, ECF 59 at 23; ECF 54-1 at 22, the 1996 amendments do not support the Review Regulation. The 1996 amendments effected an important change in the statute by stripping the agency of discretion to decide when review is warranted. *Compare* Pub. L. No. 99-198, 99 Stat. 1508, § 1222 (Dec. 23, 1985), *with* 16 U.S.C. § 3822(a)(4). Rather than giving effect to the 1996 amendments, the Review Regulation renders them a nullity by giving the agency discretion to decide when review is warranted. *See* 7 C.F.R. § 12.30(c)(6). If Congress intended the agency to have this discretion, it could have retained the original language of the statute—but it did not. And this congressional choice is entitled to respect, not modification. *See, e.g.*, *Intel Corp. Inv. v. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 189 (2020) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.") (quotations omitted).[4]

Defendants' and Intervenors' also incorrectly assert that Swampbuster's appeal provision

---

[4] Even less persuasive is Intervenors' suggestion that Congress has acquiesced to the Review Regulation. ECF 54-1 at 23. Courts have only "relied on congressional acquiescence when there is evidence that Congress considered and rejected the '*precise* issue' presented before the Court[.]" *Rapanos v. United States*, 547 U.S. 715, 750 (2006) (plurality opinion) (quoting *Bob Jones Univ. v. United States*, 461 U.S. 574, 600 (1983) (emphasis added)). Intervenors have not made such a showing.

17

undermines CTM's argument. ECF 59 at 23–24; ECF 54-1 at 22. The fact that Swampbuster also contains an appeal provision for farmers to administratively appeal adverse findings, 16 U.S.C. § 3822(a)(3), does not mean that farmers are barred from future review unless the NRCS already agrees that a change is warranted. Indeed, that argument was rejected by this court in *B & D Land & Livestock Co.*, 332 F. Supp. 2d at 1213.[5] In *B & D Land & Livestock Co.*, the court explained that the § 3822(a)(3) appeal provision, "expressly provides for an administrative appeal process prior to final certification of a wetland." *Id.* at 1213. Moving to § 3822(a)(4), the court explained that this section: "expressly provides for a *second administrative challenge* to a wetland determination, *after* the final certification of the wetland has become final, when a person affected by the certification requests review of the certification by the Secretary." *Id.* Thus, the appeal provision is not inconsistent with CTM's interpretation that § 3822(a)(4) nullifies wetland determinations and initiates new review.

Equally unavailing is Defendants' and Intervenors' contention that CTM's interpretation of the statute is absurd. ECF 59 at 24; ECF 54-1 at 22. The absurdity canon is not a get-out-of-consequences-free card and should only be applied "where the result of applying the plain language would be, in a genuine sense, absurd, *i.e.*, where it is quite impossible that Congress could have intended the result ... and where the alleged absurdity is so clear as to be obvious to most anyone." *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 470–71 (1989) (Kennedy, J., concurring in judgment); *Nixon v. Missouri Mun. League*, 541 U.S. 125, 141 (2004) (Scalia, J., concurring in judgment) ("avoidance of unhappy consequences" is an adequate basis for

---

[5] Notably, neither Defendants nor Intervenors cite—much less address—*B & D Land and Livestock Co.* or *Branstad v. Veneman*, 212 F. Supp. 2d 976 (N.D. Iowa 2002). Both cases were decided by this Court and squarely support CTM's interpretation of the statute. *See* ECF 57-1 at 21–22.

interpreting a text). The fact that this Court adopted the view of the statute in *Branstad v. Veneman*, 212 F. Supp. 2d 976 (N.D. Iowa 2002), and *B & D Land and Livestock Co.* that CTM advances here undermines both Defendants' and Intervenors' absurdity arguments. *See* ECF 57-1 at 21–22 (explaining in detail both cases). Simply put, the absurdity canon cannot be stretched to prevent results that an agency simply dislikes.

The Review Regulation likewise cannot be justified by the various policy concerns advanced by Defendants or Intervenors. ECF 59 at 21, 24; ECF 54-1 at 22. Both suggest that the Review Regulation is necessary to the efficient operation of the statute. *Id.* But the duty of this Court is to "follow the statute as written," *Taylor v. Huerta*, 856 F.3d 1089, 1093 (D.C. Cir. 2017), not to speculate on how the agency's job could be easier or to second guess Congress's policy choices. *See, e.g.*, *Utility Air Regul. Grp.*, 573 U.S. at 325 ("An agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms."). To the extent that "policy considerations suggest that the current scheme should be altered, Congress must be the one to do it." *Intel Corp. Inv. Pol'y Comm.*, 589 U.S. at 188.

**B. The converted wetlands rule contradicts the plain text of the statute.**

The converted wetlands rule is also contrary to the plain text of the statute. ECF 57-1 at 22. Defendants and Intervenors attempt to downplay the effect of the rule by describing it as a clarification of the statute. ECF 59 at 24–25; ECF 54-1 at 23. The converted wetlands rule, however, is contrary to the definition provided by Congress. *Compare* 16 U.S.C. § 3801(a)(7)(A) (congressional definition of "converted wetland") *with* 7 C.F.R § 12.2(a) (agency definition of "converted wetland"). The statute makes clear that "otherwise manipulated" is restricted to activities that "result[] in impairing or reducing the flow, circulation, or reach of water[.]" 16 U.S.C. § 3801(a)(7)(A). The agency definition, however, goes farther by allowing "otherwise

manipulated" to include activities beyond those that result in "impairing or reducing the flow and circulation of water[.]" 7 C.F.R. § 12.2(a). This is clear by the use of the word "or" in the agency definition, which separates the "removal of woody vegetation" from the rest of the parenthetical and thus adds another activity to the definition that Congress did not include. Indeed, "the commonly used and understood definition of 'or' suggests an alternative between two or more choices." *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 165 (3d Cir. 2011) (analyzing an insurance policy and consulting the dictionary definition of "or" as well as state law.). If additions to statutory text can be classified as mere "clarifications," then there is nothing preventing agencies from making an end run around statutory text and limitations.

To the extent that this Court looks to *Ballanger v. Johanns*, 495 F.3d 866 (8th Cir. 2007), for guidance on the woody vegetation question, that court's use of deference strongly counsels this Court to take a fresh look at the issue. Defendants' are correct that *Ballanger* analyzed the parenthetical in the statute and regulatory definition of "converted wetland." ECF 59 at 26. But the Court in *Ballanger* also upheld the regulation on deference grounds, stating that "[w]hether we, as a matter of first impression, would have interpreted the statute in the same manner as the agency is of no consequence." *Ballanger*, 495 F.3d at 872. That is not true after *Loper Bright*, 603 U.S. at 400 (stating that "[i]t [] makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best"). And here, the best interpretation of the statute does not allow for the addition of the woody vegetation regulation.

**CONCLUSION**

This Court should deny Defendants' and Intervenors' Motions for Summary Judgment.

Respectfully submitted this 18th day of February 2025.

_/s/ Jeffrey W. McCoy_

Jeffrey W. McCoy*
California Bar No. 317377
JMcCoy@pacificlegal.org
Paige Gilliard*
California Bar No. 330051
PGilliard@pacificlegal.org
PACIFIC LEGAL FOUNDATION
555 Capital Mall, Suite 1290
Sacramento, CA 95814
(916) 419-7111

Loren A. Seehase*
Hawaii Bar No. 10414
lseehase@libertyjusticecenter.org
Reilly Stephens*
Maryland Bar No.
rstephens@libertyjusticecenter.org
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
(512) 481-4400

James V.F. Dickey
Iowa AT Pin AT0014073
UPPER MIDWEST LAW CENTER
8421 Wayzata Boulevard, Suite 300
Golden Valley, MN 55426
(612) 428-7000
James.Dickey@umwlc.org

_Counsel for Plaintiffs_

* _Admitted Pro Hac Vice_

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2025, that I submitted the foregoing Plaintiff's

Combined Resistance to Defendants' and Intervenors' Motions for Summary Judgment to the

Clerk of Court via the District Court's CM/ECF system.

Respectfully submitted this 18th day of February, 2025.

*/s/ Jeffrey W. McCoy*

Jeffrey W. McCoy*
California Bar No. 317377
JMcCoy@pacificlegal.org
Paige Gilliard*
California Bar No. 330051
PGilliard@pacificlegal.org
PACIFIC LEGAL FOUNDATION
555 Capital Mall, Suite 1290
Sacramento, CA 95814
(916) 419-7111

Loren A. Seehase*
Hawaii Bar No. 10414
lseehase@libertyjusticecenter.org
Reilly Stephens*
Maryland Bar No.
rstephens@libertyjusticecenter.org
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
(512) 481-4400

James V.F. Dickey
Iowa AT Pin AT0014073
UPPER MIDWEST LAW CENTER
8421 Wayzata Boulevard, Suite 300
Golden Valley, MN 55426
(612) 428-7000
James.Dickey@umwlc.org

*Counsel for Plaintiffs*

* *Admitted Pro Hac Vice*

22