IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| CTM HOLDINGS, LLC, an Iowa limited liability company, | Case No. 24-CV-2016-CJW-MAR |
| Plaintiff, | |
| vs. | |
| THE UNITED STATES DEPARTMENT OF AGRICULTURE; THOMAS J. VILSACK, in his official capacity as the Secretary of the United States Department of Agriculture; THE NATURAL RESOURCES CONSERVATION SERVICE; TERRY COSBY, in his official capacity as Chief of the Natural Resources Conservation Service; and JON HUBBERT, in his official capacity as Iowa State Conservationist, | **INTERVENORS' BRIEF IN RESISTANCE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |
| IOWA FARMERS UNION, IOWA ENVIRONMENTAL COUNCIL, FOOD & WATER WATCH, and DAKOTA RURAL ACTION, | |
| Intervenors. | |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 2

    I.    Plaintiff's motion is not supported by relevant, admissible evidence. ........................ 2

    II.   This Court does not have jurisdiction to decide Plaintiff's case because Plaintiff has suffered no injury. ................................................................................................. 3

    III.  Plaintiff failed to exhaust administrative remedies. .................................................. 6

    IV.  Swampbuster is a valid exercise of Congress's Spending Power. ............................. 9

        A.  *South Dakota v. Dole* provides the correct framework for analyzing Swampbuster. ........................................................................................ 9

        B.  Swampbuster does not violate the "independent constitutional bar" that would limit Spending Clause authority ...................................................... 11

    V.   Swampbuster does not effect a taking. ................................................................... 13

    VI.  Swampbuster does not violate the Commerce Clause. ............................................ 16

    VII.  The Swampbuster regulations align with USDA's statutory authority. .................... 17

        A.  The certification review rule (Claim V) comports with the Farm Bill. .......... 17

        B.  The converted wetland rule (Claim IV) also comports with the Farm Bill. ... 18

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992 (8th Cir. 2006) .................. 7, 9

*Agred Found. v. United States Army Corps of Eng'rs*, 3 F.4th 1069 (8th Cir. 2021) ................... 5

*B&D Land & Livestock Co. v Veneman*, 332 F. Supp. 2d 1200  (N.D. Iowa 2004) ................... 18

*Ballanger v. Johanns*, 495 F.3d 866 (8th Cir. 2007) ...................................................... 8

*Bedford v. Doe*, 880 F.3d 993 (8th Cir. 2018) ............................................................... 2

*Bond v. United States*, 564 U.S. 211 (2011) ................................................................. 12

*Branstad v. Veneman*, 212 F.Supp.2d 976 (N.D. Iowa 2002) .................................... 18

*Citizens for Honesty & Integrity in Reg'l Planning v. Cnty. of San Diego*, 258 F. Supp. 2d 1132
  (S.D. Cal. 2003) ......................................................................................... 10

*Davidson & Assocs. v. Jung*, 422 F.3d 630 (8th Cir. 2005)....................................... 2, 3

*Doe v. Nebraska*, 345 F.3d 593 (8th Cir. 2003).......................................... 10, 11, 13

*Frost & Frost Trucking Co. v. R.R. Com. of Cal.*, 271 U.S. 583 (1926) ..................... 12

*Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985 (8th Cir. 2010)..... 4, 6

*Hawse v. Page*, 7 F.4th 685 (8th Cir. 2021) ............................................................. 17

*Horn Farms, Inc. v. Johanns*, 397 F.3d 472 (7th Cir. 2005) ..................................... 10

*In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995 (8th Cir. 2019)........................... 2

*Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000) (en banc), *cert. denied*, 533 U.S. 949
  (2001)........................................................................................... 10, 11, 13

*Kansas v. United States*, 214 F.3d 1196 (10th Cir. 2000) ..................................... 9, 10

*Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013)....................... 11, 12

*Lac Enters., Inc. v. Wholesale Tree Inc.*, 712. F. Supp. 3d 1201 (D. Minn. 2024) ...................... 3

*Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005)......................................... 13, 15

*Lucas v. South Carolina Coastal Couns.*, 505 U.S. 1003, 112 S. Ct. 2886 (1992) ..................... 16

*Mays v. Rhodes*, 255 F.3d 644 (8th Cir. 2001) .......................................................... 2

*Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250 (1974).............................................. 12

*Murr v. Wisconsin*, 582 U.S. 383  (2017) ........................................................... 6, 14

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001).............................................. 14, 15

*Penn. Central Transp. Co. v. New York City*, 438 U.S. 104 (1978) ........................... 14

*Perry v. Sindermann*, 408 U.S. 593 (1972) ........................................................... 12

*Rust v. Sullivan*, 500 U.S. 173 (1991) ................................................................. 11

*Sackett v. Env't Prot. Agency*, 598 U.S. 651 (2023) ............................................... 16

*South Dakota v. Dole*,  483 U.S. 203 (1987) ...................................... 9, 10, 11

*State of Mo. v. Bowen*, 813 F.2d 864 (8th Cir. 1987) ............................................... 8

*Tahoe-Sierra Preservation Council*, 535 U.S. 302 (2002) .................................. 14, 15

*Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134 (2014) ........................... 5

*United States v. American Library Ass'n*, 539 U.S. 194 (2003)............................... 11

*United States v. Butler*, 297 U.S. 1 (1936).......................................................... 9

ii

*United States v. Dierckman*, 201 F.3d 915 (7th Cir. 2000) .................................................. 10

*Van Wyhe v. Reisch*, 581 F.3d 639 (8th Cir. 2009)................................... 9, 10, 11, 12

**Statutes**

16 U.S.C. § 3822(a)(4)................................................................................. 17, 18

7 U.S.C. § 6912(e) ............................................................................................. 8

**Rules**

Fed. R. Evid. 402 ................................................................................................. 3

**Regulations**

7 C.F.R. § 12.30 ............................................................................................... 17

7 C.F.R. § 12.30(c)(6) ................................................................................. 17, 18

7 C.F.R. § 12.5(b) ............................................................................................... 8

# INTRODUCTION

After unsuccessfully moving for judgment on the pleadings (ECF No. 29), Plaintiff now asks this Court to grant summary judgment on all of its claims. *See* ECF No. 57 ("Plaintiff's MSJ" or "Motion"). In denying judgment on the pleadings, this Court identified that, "[i]f there is some version of the facts in which plaintiff has not been injured or will not be injured—as would be the case if defendants' denials all prove true—then the Court cannot grant plaintiff judgment as a matter of law." ECF No. 45, at n.1. Discovery is complete and the evidence is clear. Plaintiff has not been injured and will not be injured because:

- Plaintiff has never had its Farm Benefits [1] terminated for noncompliance with Swampbuster (or for any other reason);
- In September 2024, Plaintiff voluntarily stopped participating in any Farm Benefits;
- While Plaintiff was enrolled in Farm Benefits and maintaining Swampbuster compliance, it earned significant financial benefits from the Property including:
  - $500/acre/month in rental payments from a tenant,
  - $250/acre/month in Farm Benefits under a Conservation Reserve Program ("CRP") contract, and
  - $26,500 from a timber sale which included trees cut down from the Wetland.
- Plaintiff's long-term plan for the Property is—and has always been—to convert it to commercial, non-agricultural use.

Plaintiff does not contest these facts or even directly address them. Instead, Plaintiff attempts to justify its factual claims with inadmissible evidence, urges that there should be "little question of standing," and even floats a new theory of injury not reflected in Plaintiff's Complaint or any of Plaintiff's previous filings. These efforts are too little too late. Plaintiff has not suffered and will not suffer any injury related to Swampbuster. As a result, this Court does not have jurisdiction to hear this case. Plaintiff's legal theories also all fail on the merits, and Plaintiff's Motion should be denied.

---

[1] Intervenors use the same defined terms ("Farm Benefits," "Swampbuster," etc.) in the same manner as they are defined in Intervenors' Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 54-1.

1

For the reasons described below, pursuant to Local Rules 7(e) and 56(b), Intervenors resist Plaintiff's Motion for Summary Judgment on every ground.

## ARGUMENT

**I.    Plaintiff's motion is not supported by relevant, admissible evidence.**

A court may only grant a motion for summary judgment "if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018). At the summary judgment stage, "[a] plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (internal quotations omitted). In the Eighth Circuit, "district courts [must] rely only on admissible evidence at the summary judgment stage." *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019); *see also Mays v. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001).

Plaintiff's statement of facts, however, relies on self-serving legal conclusions and inadmissible evidence. For instance, Plaintiff cites the Declaration of James F. Conlan, Plaintiff's managing member, for 75 percent of its "facts". *See generally* Plaintiff's Statement of Material Facts in Support of Motion for Summary Judgment, ECF No. 57-2 ("Pl. SOMF") (citing Conlan's declaration for 27 out of 36 "facts"). While no rule precludes the use of a party's declaration as evidence, Plaintiff repeatedly cites the Conlan declaration for legal conclusions and opinion testimony that would have required Mr. Conlan to be disclosed as an expert witness. *See, e.g.*, Intervenors' Response to Plaintiff's Statement of Material Facts ("Int. Resp. to SOMF"), ¶¶ 24

(Conlan's declaration used as sole basis for legal conclusion that Plaintiff cannot productively use wetland without violating Swampbuster), 32 (Conlan opining on scientific conclusion as to whether wetlands are indistinguishable from non-wetlands). Such testimony is irrelevant, inadmissible, and cannot support Plaintiff's claims. *See Lac Enters., Inc. v. Wholesale Tree Inc.*, 712. F. Supp. 3d 1201, 1208 (D. Minn. 2024) (lay witnesses may not provide opinion testimony "based on scientific, technical, or other specialized knowledge"); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). Similarly, Plaintiff's attempt to support its factual assertions with inadmissible hearsay, *see* Int. Resp. to SOMF at ¶ 26, does not constitute sufficient probative evidence that would permit a finding in Plaintiff's favor. *See Davidson & Assocs.*, 422 F.3d at 638.

## II. This Court does not have jurisdiction to decide Plaintiff's case because Plaintiff has suffered no injury.

As explained in Intervenors' Brief in Support of Summary Judgment (ECF No. 54-1) ("Int. MSJ"), the Court does not have jurisdiction to hear this case because Plaintiff: (1) has not suffered any legal injury (pp. 3−6), and (2) failed to identify a valid federal cause of action that gives this Court jurisdiction (pp. 7−10). Defendants' Memorandum in Support of Motion for Summary Judgment (ECF No. 55-1) ("Def. MSJ") also identifies Plaintiff's numerous jurisdictional problems, including that Plaintiff "has not been harmed by the provisions it now challenges." Def. MSJ at 3. Plaintiff's Motion for Summary Judgment (ECF No. 57-1) ("Pl. MSJ") only highlights these deficiencies.[2]

Plaintiff's summary judgment motion must be denied because Plaintiff has suffered no injury that can be traced to Swampbuster. "The burden of proving federal jurisdiction [] is on the party seeking to establish it." *See Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615

---

[2] Plaintiff's MSJ only addresses the first issue (standing) and is silent on the second (no cause of action). This resistance motion, accordingly, addresses only standing, but Intervenors note for the record that this Court also lacks jurisdiction because Plaintiff has failed to identify a valid federal cause of action for its claims.

3

F.3d 985, 988 (8th Cir. 2010). Plaintiff asserts that "CTM Holdings has [s]tanding," because "Defendants' regulations apply to the land owned by CTM." Pl. MSJ, at 5. Plaintiff is wrong. First, Swampbuster is not a "regulation[]"; it is an eligibility requirement. *See* Int. MSJ at 1–2. Regardless, the record clearly demonstrates that Swampbuster does not "apply" to Plaintiff because Plaintiff voluntarily stopped receiving Farm Benefits in September 2024. (Int. MSJ at 4; *see also* Intervenors' Proposed Statement of Additional Material Facts, filed contemporaneously with this resistance brief, ("Int. SOAMF") at ¶¶ 41, 47). As a result, Plaintiff is free to comply with Swampbuster (or not) and there will be no consequences either way. Indeed, Plaintiff's long-term plan is to sell the Property for commercial development, not to farm it. Int. SOAMF ¶¶ 65–74. Plaintiff has not been—and will not likely be—injured by Swampbuster, and Swampbuster no longer "appl[ies]" to Plaintiff.

The single piece of evidence Plaintiff relies on for its assertion that Swampbuster "appl[ies] to" the Property is a one-page warranty deed (plus signature page) reflecting the transfer of ownership of a parcel of land in Delaware County. *See* Pl. MSJ at 5 (citing CTM App. 002–03). The warranty deed is silent about Swampbuster, Farm Benefits, or anything related to the USDA. The document may be sufficient to establish that Plaintiff owns the Property, but it has no bearing on whether Swampbuster "appl[ies] to" it. Plaintiff urges that standing should be assumed, arguing: "Where the legality of government action or inaction is being challenged there is ordinarily little question of standing for the object of the action (or forgone action)." Pl. MSJ at 5 (cleaned up). But Plaintiff is not "the object" of the government's actions here because, as described above, the USDA has never revoked Plaintiff's Farm Benefits nor could it now that Plaintiff no longer receives any.

Plaintiff next argues that it has standing because "a tenant's violation can result in the reduction of the landlord's federal crop insurance" or other Farm Benefits. Pl. MSJ at 5. Even if this were true, it is irrelevant because Plaintiff has presented no evidence that it receives crop insurance or any other Farm Benefits. To the contrary, Plaintiff has admitted that neither it nor any of its affiliates receive Farm Benefits. *See* Int. Resp. to SOMF ¶ 19. Plaintiff's apparent fear that an unnamed non-party might, at some point in the future, interfere with Farm Benefits that Plaintiff does not currently receive is too speculative of an injury to establish Article III standing. *See Agred Found. v. United States Army Corps of Eng'rs*, 3 F.4th 1069, 1074 (8th Cir. 2021) (being "under threat of future enforcement" was too "speculative and not imminent" to confer standing).

Plaintiff's "decrease in market value" theory of injury does not confer standing, either. *See* Pl. MSJ at 6. Plaintiff asserts—for the first time—that it is "injured by Swampbuster because it reduces the value of the farmland and reduces potential rental income on the farmland." *Id.* First, the Complaint does not say a word about the Property's market or rental value, let alone suggest that reduced market or rental values are the source of any injury. *See* Plaintiff's Complaint (Int. App. 126–156) (no mention of market value); *see also* ECF No. 29 (Plaintiff's Motion for Judgment on the Pleadings) (same). Plaintiff's failure to amend the Complaint and give Defendants notice of this theory of injury robbed them (as well as Intervenors) of the opportunity to conduct discovery about Iowa farmland market and rental values. This failure alone is sufficient grounds to reject it. *See Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1140 (2014) (a plaintiff may not amend its complaint through a memorandum or brief but must instead follow the procedures of Federal Rule of Civil Procedure 15).

Additionally, Plaintiff was fully aware of the Wetland's existence and Swampbuster's operation when it purchased the Property. CTM App. 49–50 (email from Plaintiff to USDA

employee on July 16, 2022, two months prior to closing, acknowledging that "9 acres of farm appear to have been designated wetlands in 2010."). As a result, whatever impact the Wetland may have had on the overall value of the Property, Plaintiff's purchase price already reflected it. *See Murr v. Wisconsin*, 582 U.S. 383, 405 (2017) (no takings claim where "Petitioners cannot claim that they reasonably expected to sell or develop their lots separately given the regulations which predated their acquisition of both lots"). Plaintiff has therefore suffered no harm that can be traced to Swampbuster. *See id.* (affirming denial of summary judgment where "governmental action was a reasonable land-use regulation, enacted as part of a coordinated [] effort to preserve the river and surrounding land"). If Plaintiff believes the price it paid for the Property was somehow unfair, then it only has itself or the prior owner to blame. Because Plaintiff has not met its burden to establish Article III injury, this Court lacks jurisdiction and the Complaint should be dismissed.

### III.     Plaintiff failed to exhaust administrative remedies.

Plaintiff's motion for summary judgment must also be rejected because Plaintiff failed to exhaust administrative remedies. *See Great Rivers Habitat*, 615 F.3d at 991 (affirming dismissal "because appellants failed to exhaust their administrative remedies by filing a proper appeal with FEMA."). As explained in both Intervenors' and Defendants' Motions for Summary Judgment, Plaintiff failed to exhaust the administrative remedies provided by the agency under the Farm Bill. *See* Int. MSJ at 15−16; Def. MSJ at 9−11. Plaintiff's motion does not compel a different conclusion.

Plaintiff nonetheless insists that it "exhausted all administrative remedies," because "Defendants specifically stated that its decision was not appealable." Plaintiff's own evidence (two different letters from USDA) directly contradicts that. *See* Pl. MSJ at 6.[3] Both letters give explicit

---

[3] Plaintiff also cites to its own declaration (CTM App. 6−7), but for the reasons described above, this self-serving affidavit carries little evidentiary value. Regardless, the declaration's assertion that the USDA letter "informed me [] that I could not appeal the 2010 determination" is not accurate, as described above.

6

instructions for Plaintiff's next steps to exhaust administrative remedies. *See* CTM App. 71 ("If you do not agree with this [wetland determination], you may request a reconsideration field visit OR mediation within thirty days of this letter"); CTM App. 79 ("If you feel that NRCS's decision to deny appeal rights is in error, you may request a review of this decision from the Director of the National Appeals Division (NAD)."). USDA provided Plaintiff straightforward appeal options but Plaintiff chose not to pursue them.

Instead, Plaintiff argues the Court should excuse its failure to exhaust because Plaintiff "challenges Defendants actions and regulations solely on the basis that they are unconstitutional or otherwise not in accordance with the law," relying on *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992 (8th Cir. 2006). Pl. MSJ at 6. But *Ace Property* did not hold that all constitutional or "primarily legal" claims were automatically excused from exhaustion; in fact, the case emphasized that the "legal issues exception is extremely narrow" and does not apply when both legal and factual issues are at issue. *Ace Prop. & Cas. Ins. Co.*, 440 F.3d at 1001. Here, like the party in *Ace* Property, Plaintiff raises both legal and factual claims, including a direct challenge to the accuracy of USDA's wetland determination. *See* Pl. SOMF ¶¶ 32–36 (asserting that, in Plaintiff's opinion, the Wetland is "indistinguishable" from the rest of the Property).

Indeed, the Ace Property court declined to excuse the plaintiff's failure to exhaust because "[e]ven though some of the issues involved are admittedly legal in nature, that does not necessarily mean they are questions that should excuse exhaustion." *Id.*[4] As the court noted, "the purpose of exhaustion is to prevent premature interference with agency processes" so that an agency "may have an opportunity to correct its own errors," and "to complete a record which is adequate for judicial review." *Id.* "Moreover, requiring exhaustion discourages the 'frequent and deliberate

---

[4] The *Ace Property* court also declined to excuse exhaustion even though exhaustion was non-jurisdictional under the relevant statute. *See Ace Prop. & Cas. Ins. Co.*, 440 F.3d at 996.

flouting of the administrative processes.'" *State of Mo. v. Bowen*, 813 F.2d 864, 871 (8th Cir. 1987).[5] At the end of the day, "[t]he basic concept underlying the requirements of the exhaustion doctrine is that of judicial economy." *Id.*

None of these goals would be furthered by the Court excusing exhaustion here. This case is based on a highly technical wetland determination which Plaintiff insists was wrong. *See* Plaintiff's Claim V, Int. App. 154; *see also* Pl. SOMF at ¶¶ 32−36. But because the administrative record was not developed, this Court cannot adequately assess Plaintiff's claim. Indeed, it is precisely for this reason the Eighth Circuit requires issue exhaustion in cases involving challenges to wetlands determinations. *See Ballanger v. Johanns*, 495 F.3d 866, 870 (8th Cir. 2007) ("a general exhaustion of remedies is insufficient in the context of a wetlands determination, and specific issue exhaustion is required"). The administrative appeals process could have led to any number of potential outcomes which could have avoided litigation. The agency could have determined that Plaintiff qualifies for one of the myriad exemptions from Swampbuster (*see* USDA App. 2−3 (citing regulatory exemptions at 7 C.F.R. § 12.5(b) and providing examples)), or it could have reversed the wetland determination altogether. Judicial economy is not served by a federal court deciding fact-intensive issues that have not been fully vetted by the agency with the relevant technical expertise. *See Ballanger*, 495 F.3d at 870 ("By requiring issue exhaustion at the administrative level, where litigants may introduce evidence and fully develop the record, parties to subsequent court proceedings will not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.") (cleaned up).

---

[5] Plaintiff's reliance on *Bowen* is misplaced. There, "the governing statutes and regulations d[id] not *require* a party to exhaust its administrative remedies prior to obtaining judicial review." *Bowen*, 813 F.3d at 871 (emphasis in original). By contrast, the statute at issue here unequivocally does require exhaustion: "Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the [USDA] Secretary or required by law before the person may bring an action in a court of competent jurisdiction." 7 U.S.C. § 6912(e).

8

There is no dispute that Plaintiff failed to exhaust its remedies, and Plaintiff provides no valid basis to excuse this failure. The Court should dismiss the Complaint. *See Ace Prop. & Cas. Ins. Co*, 440 F.3d at 994.

## IV. Swampbuster is a valid exercise of Congress's Spending Power.

*A.* South Dakota v. Dole *provides the correct framework for analyzing Swampbuster.*

Swampbuster is a valid exercise of Congress's spending power and Plaintiff's constitutional claims (Claims I–III) must be dismissed. *See* Int. MSJ at 11–13, Defs. MSJ at 12–20. Plaintiff wrongly insists that "Defendants cannot defend the constitutionality of Swampbuster by appealing to the Spending Clause," relying on *United States v. Butler*, 297 U.S. 1 (1936). *Butler* was decided 89 years ago, and it does not reflect the current standard for analyzing Congress's spending power. *South Dakota v. Dole*—which Plaintiff ignores—is the proper authority for analyzing statutes passed pursuant to the Spending Clause. *See* 483 U.S. 203 (1987). Under that standard*,* "Congress may, in the exercise of its spending power, condition its grant of funds to the States upon their taking certain actions that Congress could not require them to take." *Id.* at 207. So long as a statute is valid under *Dole*, arguments about whether it exceeds the Commerce Clause are irrelevant. *See Van Wyhe v. Reisch*, 581 F.3d 639, 652 (8th Cir. 2009) (declining to address Commerce Clause arguments because statute was "constitutional under the Spending Clause"); *see also Kansas v. United States*, 214 F.3d 1196, 1203 (10th Cir. 2000) (distinguishing commerce power cases as "inapposite").

Under *Dole*, an exercise of spending power is valid as long as:

> (1) the legislation must be in the pursuit of the general welfare, (2) conditions on the state's receipt of federal funds must be [unambiguous], (3) conditions … must be related to the federal interest …, (4) conditions must not be prohibited by other constitutional provisions, and finally, (5) the circumstances must not be so coercive that pressure turns into compulsion.

9

*Van Wyhe*, 581 F.3d at 650.

Against this backdrop, Swampbuster is unquestionably valid, as discussed in further detail in Intervenors' MSJ at 11–20 and Defendants' MSJ at 12–20. Courts have repeatedly declined to invalidate an act of Congress on the theory that an exercise of the spending power exceeds Congress's authority in some other way. *See Dole*, 483 U.S. at 205 (as a condition of funding, Congress could require states to set a drinking age of 21 even though the "Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system"); *Doe v. Nebraska*, 345 F.3d 593, 599 (8th Cir. 2003) (as a condition of funding, Congress may require states to waive Eleventh Amendment sovereign immunity); *Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000) (en banc), *cert. denied*, 533 U.S. 949 (2001) (same, even though the state stood to lose 100% of its federal education funding); *Van Wyhe*, 581 F.3d at 649 (as a condition of funding, Congress may require state to submit to judicial proceedings to enforce the statute); *Kansas*, 214 F.3d at 1198 (as a condition of funding, Congress may require states to pass laws facilitating genetic testing and paternity establishment, develop child support databases statewide databases, among other things).

Indeed, federal courts have repeatedly upheld Swampbuster as a constitutional exercise of Congress's spending power. *See Horn Farms, Inc. v. Johanns*, 397 F.3d 472, 476–77 (7th Cir. 2005) (Swampbuster is a valid exercise of the Spending Clause); *United States v. Dierckman*, 201 F.3d 915, 922 (7th Cir. 2000) (same); *see also Citizens for Honesty & Integrity in Reg'l Planning v. Cnty. of San Diego*, 258 F. Supp. 2d 1132, 1136 (S.D. Cal. 2003) (because Swampbuster was enacted under the Spending Clause, it did not preempt local law). Because Swampbuster is constitutional, Plaintiff is not entitled to summary judgment on Claims I–III.

10

## B. Swampbuster does not violate the "independent constitutional bar" that would limit Spending Clause authority.

Instead of engaging with *Dole*, Plaintiff insists that the "unconstitutional conditions doctrine" invalidates Swampbuster because Congress supposedly cannot impose conditions which would violate an "enumerated right" in the Constitution. *See* Pl. MSJ at 8. That is not the applicable standard articulated in *Dole*, which applies an "independent constitutional bar" test to limit spending power. *Dole*, 483 U.S. at 208. Importantly, an "independent constitutional bar" is not "a prohibition on the indirect achievement of objectives which Congress is not empowered to achieve directly." *Id.* at 210. Again, "objectives not thought to be within Article I's enumerated legislative fields may nevertheless be attained through the use of the spending power and the conditional grant of federal funds." *Id.* at 207. Rather, this restriction stands for the general proposition "that the power may not be used to induce the States to engage in activities that would themselves be unconstitutional." *Id.* Plaintiff has not asserted that Swampbuster "induce[s] the States to engage in activities that would themselves be unconstitutional," nor could it plausibly do so, as Swampbuster does not induce the States to do anything.

As noted above, the Supreme Court and the Eighth Circuit have repeatedly upheld conditions that Congress has placed on the receipt of federal funding. *See Dole*, 483 U.S. at 211–12 (1987), *Rust v. Sullivan*, 500 U.S. 173 (1991), *United States v. American Library Ass'n*, 539 U.S. 194 (2003); *Doe*, 345 F.3d at 599; *Jim C.*, 235 F.3d at 1082; *Van Wyhe*, 581 F.3d at 649. Plaintiff does not cite to a single case decided since *Dole* where an act of Congress was held to violate the spending clause, and instead relies primarily on *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013). *See* Pl. MSJ at 8.[6] But *Koontz* had nothing to do with Congress's spending

---

[6] In a footnote, Plaintiff also references (without discussion) a handful of other pre-*Dole* cases, most of which also involve state, not federal, laws. *See* Pl. MSJ at 8, n.1 (citing, e.g., *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250 (1974)

11

power. *Koontz* involved a local land-use permit, not a federal benefits program—a critical distinction which Plaintiff refuses to acknowledge but which was central to the Supreme Court's holding. *See Koontz*, 570 U.S. at 599 ("Our decisions in [*Nollan* and *Dolan*] provide important protection **against the misuse of the power of land-use regulation.**") (emphasis added). Indeed, the decision is expressly intended to be a backstop against land-use regulations that seek to avoid the requirements of *Nollan* and *Dolan*, *id.* at 599, and the Court's holding was both narrow and expressly tied to *Nollan/Dolan:* "We hold that the government's demand for property from a land-use permit applicant must satisfy the requirements of *Nollan* and *Dolan* even when the government denies the permit and even when its demand is for money." *Koontz*, 570 U.S. at 619.[7]

Plaintiff acknowledges that Swampbuster is not a regulatory taking and that *Nollan* and *Dolan* do not apply, but insists, without legal support, that *Koontz* somehow still applies. *See* Pl. MSJ at 9–11. Plaintiff's (accurate) concession that *Nollan* and *Dolan* do not apply forecloses any argument that *Koontz* is relevant. Plaintiff cites to no authority applying *Koontz* outside of the land-use permit context and provides no principled basis for asking this Court to do so. Cases like *Koontz* that do not directly address Congress's spending power are inapposite. *See Van Wyhe v. Reisch*, 581 F.3d at 652 (declining to consider Commerce Clause cases because the statute was constitutional under the Spending Clause).

---

(Arizona state law); *Perry v. Sindermann*, 408 U.S. 593 (1972) (contract dispute involving state college professor); *Frost & Frost Trucking Co. v. R.R. Com. of Cal.*, 271 U.S. 583 (1926) (California state law)).

[7] Plaintiff's citation to *Bond* does not help Plaintiff's cause. Plaintiff asserts that "the Commerce Clause protects an individual right as much as those rights enumerated in the Bill of rights," Pl. MSJ at 15, but the *Bond* Court did not put individuals' rights under the Commerce Clause on equal footing as those enumerated in the Bill of Rights. *See Bond v. United States*, 564 U.S. 211, 222 (2011). Rather, the case involved the narrow question of whether a defendant could challenge a federal criminal statute "on grounds that, by enacting it, Congress exceeded its powers under the Constitution." *Bond* is neither here nor there for Plaintiff who is not a criminal defendant and has not had any federal statute enforced against it. Either way, any Commerce Clause-based defense "cannot be vindicated by the Judiciary in the absence of a proper case or controversy." *See* 564 U.S. at 221–22. Unlike *Bond*, whose incarceration established a "concrete injury," *id.* at 216, Plaintiff has no injury. *See* Section II, supra.

12

Plaintiff's insistence that Swampbuster somehow forces farmers to "waive" their rights under the Commerce Clause and/or Takings Clause is also misguided. *See* Pl. MSJ at 8, 15. Courts have repeatedly rejected arguments that a statute is invalid under the Spending Clause if it forces a state to "waive" a right. *See Doe v. Nebraska*, 345 F.3d 593 (8th Cir. 2003) (upholding statute that conditioned receipt of federal funds on states waiving sovereign immunity); *Jim C.*, 235 F.3d at 1081 (same).

*Dole*—not *Koontz,* not *Nollan* and *Dolan*, not *Butler*—provides the framework under which this Court must analyze Swampbuster. Under *Dole*, Swampbuster is unquestionably a valid and constitutional exercise of Congress's spending power, as multiple courts have held. *See* Int. MSJ at 11, Def. MSJ at 13. Plaintiff's arguments that Swampbuster "violates" the Takings clause or otherwise "exceeds" Congress's authority are irrelevant to the Spending Clause analysis, and Plaintiff is not entitled to summary judgment on any of its constitutional claims (Claims I–III).

## V. Swampbuster does not effect a taking.

For the reasons described in Intervenors' MSJ at 12–15 and Defendants' MSJ at 12–20, Swampbuster does not effect a taking. The Takings Clause of the Fifth Amendment is drafted in straightforward language: "nor shall private property be taken for public use, without just compensation." U.S. Const. Amend. V. Plaintiff's takings claim fails under the plain language of the Fifth Amendment. Plaintiff's land has not been appropriated or invaded, nor has Plaintiff been denied just compensation. *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005).

Importantly, Plaintiff argues that Swampbuster results in a *per se,* as opposed to a regulatory, taking. *See* Pl. MSJ at 7, 10; *see also* Int. App. 128, 150 (Pl.'s Complaint).[8] Plaintiff,

---

[8] Even though Plaintiff has waived any argument that Swampbuster effects a regulatory (as opposed to a *per se*) taking, Plaintiff also fails to demonstrate a taking under the Supreme Court's regulatory takings jurisprudence, as explained in further detail in Intervenors' MSJ at 13–15 and Defendants' MSJ at 11–20.

however, ignores that the Supreme Court has declined to extend the concept of *per se* takings to anything short of "permanent obliteration of the value of a fee simple estate." *See Tahoe-Sierra Preservation Council*, 535 U.S. 302, 330 (2002) (cleaned up) (temporary moratoria are not a *per se* taking even though they prohibit all economic development for a period of time). Rather, "[a]nything less than a complete elimination of value, or a total loss [] would require the kind of [regulatory taking] analysis applied in *Penn Central*." *Id*.

The record is clear that Plaintiff has suffered far less than total "obliteration of the value" of the Property, *see id.*, and that Swampbuster does not "den[y] all economically beneficial or productive use of land." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). To the contrary, Plaintiff earned $26,500 from a timber sale on the Property—including logs that were cut from the Wetland—and is currently renting out the Property for $500/acre per month. Int. SOAMF ¶¶ 10, 57-64.[9] Indeed, when conducting a takings analysis, courts must define the parcel at issue "in a manner that reflects reasonable expectations about the property." *Murr*, 582 U.S. at 405. Here, Plaintiff intends to stop farming the Property altogether and convert it to commercial development. Int. SOAMF ¶¶ 65, 67, 73. As a result, Swampbuster does not impact Plaintiff's reasonable expectations about the property in any way. *See Murr*, 582 U.S. at 405; *see also Penn. Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978) (a regulatory takings claim depends on economic impact to the landowner and the extent to which the regulation interferes with investment-backed expectations for the property).

---

[9] Plaintiff's complaint that it "cannot use t**he 9 acres of wetland** in an economically beneficial or productive manner without violating [S]wampbuster" is factually incorrect, *see* Int. SOAMF ¶¶ 57–64, but also presumes an incorrect legal standard. Under the Supreme Court's well-established taking precedent, whether a taking has occurred depends on the economic impact on the "parcel as a whole," not on the narrower piece of land that may be impacted by the government's action. *See Murr*, 582 U.S. at 405 ("The State Court of Appeals was correct in analyzing petitioners' property as a single unit.").

Moreover, as Defendants noted, Plaintiff is free to engage in any number of other lucrative endeavors on the Wetland, including building a road, building a residence, or cultivating cranberries, while remaining eligible for Farm Benefits. Defs. SOMF ¶¶ 29−30. *See Palazzolo*, 533 U.S. at 631 ("A regulation permitting a landowner to build a substantial residence does not leave the property economically idle") (cleaned up). Because Plaintiff can (and does) make economic use of the Property, Plaintiff cannot establish a *per se* taking. *See Tahoe-Sierra Preservation Council*, 535 U.S. at 341−42; *see also Palazzolo*, 533 U.S. at 616 (affirming denial of takings claim where "all economically beneficial use was not deprived because the uplands portion of the property can still be improved").

Plaintiff's assertion that "Plaintiff does not receive compensation from the USDA for its compliance with wetland conservation" is sleight of hand. It may be true that Plaintiff does not *currently* receive Farm Benefits payments from USDA, but that is because Plaintiff voluntarily withdrew from all Farm Benefits programs in September 2024. Defendants paid Plaintiff[10] $250 per month in Farm Benefits for two years and, so long as Plaintiff remains compliant with Swampbuster, Plaintiff will remain eligible for the myriad Farm Benefits programs the USDA administers. That is more than sufficient compensation under the relevant precedent. *See Lingle*, 544 U.S. at 537 (the Takings Clause "is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking"); *see also Lucas v. South Carolina Coastal Couns.*, 505 U.S. 1003, 1019, n.8, 112 S. Ct. 2886 (1992) (suggesting that even a landowner with 95 percent loss of value may not recover under takings theory). If Plaintiff believes that amount of compensation is

---

[10] Technically, Plaintiff assigned its rights under the CRP contract to its tenant, who received the USDA checks in exchange for paying Plaintiff $250.00 per acre in rent. Int. Resp. to SOMF at ¶ 23.

insufficiently "just," it is free to stop receiving Farm Benefits and do whatever it wants with the Property. Indeed, as of October 2024, Plaintiff has done precisely that. *See* Int. SOAMF ¶¶ 45–47.

Plaintiff's attempt to analogize Swampbuster to a "conservation easement" does not change the analysis. It simply builds a longer, more circuitous road leading to the same end. Even if Swampbuster was akin to an easement (and it is not, *see* Def. MSJ at 16–17), Plaintiff's takings claim would still fail for the reasons discussed above. *See also* Int. MSJ at 13–15, Def. MSJ at 12–20. Plaintiff's Takings arguments fail as a matter of law and Plaintiff is not entitled to summary judgment on Claim III.

## VI. Swampbuster does not violate the Commerce Clause.

Plaintiff's insistence that Swampbuster violates the Commerce Clause because it "regulates private property, specifically wetlands" is wrong. As described above, Swampbuster is not a regulation, and farmers do not need the government's permission to farm their land as they see fit, as Plaintiff concedes. *See* Pl. MSJ at 10 ("CTM Holdings is not requesting a land use permit from" Defendants, and "CTM Holdings already has the right to farm on its land, and does not need a permit from the federal government to do so."). Pl. MSJ at 10. Accordingly, Swampbuster is not a regulation, and Plaintiff's analysis of the Commerce Clause is built on a faulty premise.[11]

In any event, for the reasons noted above, even if Swampbuster *was* a regulation and it *did* exceed Congress's Commerce Clause powers, it is still a valid exercise of Congress's spending powers under *Dole*. *See*, supra at section IV; *see also* Int. MSJ at 11–13. Plaintiff's Commerce

---

[11] Plaintiff's reliance on *Sackett* is misplaced. *See* Pl. MSJ at 12. That case involved the U.S. EPA's interpretation of the term "waters of the United States" as defined in the Clean Water Act; it did not interpret the Commerce Clause, nor did it examine Congress's authority to protect wetlands via the Spending Clause. *See generally*, majority opinion in *Sackett v. Env't Prot. Agency*, 598 U.S. 651, 678 (2023).

16

Clause arguments fail as a matter of law and Plaintiff is not entitled to summary judgment on Claims I or II.

## VII.     The Swampbuster regulations align with USDA's statutory authority.

### A.     The certification review rule (Claim V) comports with the Farm Bill.

Plaintiff's arguments about the proper interpretation of 7 C.F.R. § 12.30(c)(6)—the certification review rule—should be rejected. As noted above at section III. and as detailed in Defendants' MSJ at 7–12, Plaintiff never sought administrative review of the 2010 wetland determination 16 U.S.C. § 3822(a)(4), and therefore the USDA has not yet had occasion to interpret 7 C.F.R. § 12.30(c)(6) with respect to Plaintiff. *See* USDA App. 12 (declaration of Julie McMichael, USDA's Iowa Assistant State Conservationist for Compliance) ("Upon review of the appropriate USDA records, I have determined that CTM Holdings has never requested a review of the 2010 Wetland Determination"); *see also* CTM App. 70–78, 79–88 (no reference to 7 C.F.R. § 12.30 or 16 U.S.C. § 3822(a)(4)). As a result, a ruling from this Court invalidating that provision would not only be premature, but it would not redress any of Plaintiff's alleged injuries. *See Hawse v. Page*, 7 F.4th 685, 688 (8th Cir. 2021). Plaintiff's request for summary judgment on Claim V should be rejected on that basis alone.

Additionally, Plaintiff challenges the USDA rule which specifies that "[a] person may request review of a certification only if a natural event alters the topography or hydrology of the subject land to the extent that the final certification is no longer a reliable indication of site conditions, or if NRCS concurs with an affected person that an error exists in the current wetland determination." 7 C.F.R. § 12.30(c)(6). Plaintiff's interpretation would allow a landowner to request a review on the exact same facts immediately after a determination has been upheld, which

17

could lead to countless review requests. This proposed interpretation is not supported by statutory context, legislative history, or long-standing agency interpretation. Int. MSJ at 17–19.

Instead, Plaintiff mischaracterizes *Branstad* and *B&D Land and Livestock*, arguing that this Court has held the certification review provision "allows a farmer to request a review at any time." Pl. MSJ at 17. But neither case interpreted—or even referenced—7 C.F.R. § 12.30(c)(6). The *Branstad* case held that a new owner is a "person affected by the determination" under 16 U.S.C. § 3822(a)(4) and therefore, could request review of a determination made under a previous landowner. *Branstad v. Veneman*, 212 F.Supp.2d 976, 997 (N.D. Iowa 2002). Here, Plaintiff does not assert (nor does the evidence show) that Plaintiff's review request was rejected because Plaintiff was not the previous landowner. Similarly, *B&D Land and Livestock* merely confirmed that 16. U.S.C. § 3822(a)(4) grants a second "bite at the apple" for administrative review when somebody loses their Farm Benefits. *B&D Land & Livestock Co. v Veneman*, 332 F. Supp. 2d 1200, 1215 (N.D. Iowa 2004). Here, Plaintiff's Farm Benefits have never been revoked. Neither *Branstad* nor *B&D Land and Livestock* support Plaintiff's argument that 7 C.F.R. § 12.30(c)(6) exceeds the agency's statutory authority under 16 U.S.C. § 3822(a)(4).

For the reasons laid out in Intervenors' MSJ (pp. 17–19) and Defendants' MSJ (pp. 20–24), the certification review rule is a valid exercise of the agency's rulemaking authority; it avoids absurd results and wasted resources; and it is consistent with the Farm Bill and cases interpreting it. The Court should uphold the rule and deny Plaintiff's Motion on Claim V.

### B. The converted wetland rule (Claim IV) also comports with the Farm Bill.

For the reasons laid out in Intervenors' MSJ at 19–20, as well as those noted in Defendants' MSJ at 24–26, the "converted wetland" definition does not conflict with the Farm Bill, Plaintiff's request for summary judgment on Claim V should be rejected.

## CONCLUSION

For the reasons explained above, Plaintiff's Motion for Summary Judgment should be denied.

Dated: February 18, 2025               Respectfully submitted,

*/s/ Joshua T. Mandelbaum*
Joshua T. Mandelbaum (AT0010151)
Kathleen Garvey, *admitted pro hac vice*
Environmental Law & Policy Center
505 5th Ave. Suite 333
Des Moines, IA 50309
jmandelbaum@elpc.org
kgarvey@elpc.org
(515) 244-0253
(312) 673-6500

*Attorneys for Intervenor Iowa Farmers Union*

*/s/ Michael R. Schmidt*
Michael R. Schmidt (AT0013962)
Iowa Environmental Council
505 5th Avenue, Suite 850
Des Moines, IA 50309
schmidt@iaenvironment.org
(515) 244-1194 x212

*Attorney for Intervenor Iowa Environmental Council*

*/s/ Dani Replogle*
Dani Replogle, *admitted pro hac vice*
Food & Water Watch
1616 P Street, NW Suite 300
Washington, D.C. 20036
dreplogle@fwwatch.org
(202) 683-4947

*Attorney for Intervenors Food & Water Watch and Dakota Rural Action*

19